**TOGUT, SEGAL & SEGAL LLP**
Albert Togut
Kyle J. Ortiz
Brian F. Moore
One Penn Plaza, Suite 3335
New York, NY 10119
Phone: (212) 594-5000
Email: altogut@teamtogut.com
      kortiz@teamtogut.com
      bmoore@teamtogut.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**SHEARMAN & STERLING LLP**
Fredric Sosnick
William S. Holste
Jacob S. Mezei
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4000
Email: fsosnick@shearman.com
      william.holste@shearman.com
      jacob.mezei@shearman.com

**SHEARMAN & STERLING LLP**
Ian E. Roberts (*pro hac vice* pending)
2601 Olive Street, 17th Floor
Dallas, TX 75201
Phone: (214) 271-5777
Email: ian.roberts@shearman.com

*Proposed Special Counsel to the Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. 23-10738 (__) |
| Debtors.[1] | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR PREPETITION INSURANCE COVERAGE AND PAY PREPETITION OBLIGATIONS THEREUNDER, (B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES, (C) CONTINUE TO PAY INSURANCE BROKERAGE COMMISSIONS, AND (II) GRANTING RELATED RELIEF

Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

---

[1] The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice. The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

(the "Chapter 11 Cases"), respectfully represent in support of this motion

(the "Motion") as follows:

## Relief Requested

1.      The Debtors request entry of an interim order in the form attached hereto

as **Exhibit A** (the "Proposed Interim Order") and a final order in the form attached

hereto as **Exhibit B** (the "Proposed Final Order" and, together with the Proposed

Interim Order, the "Proposed Orders") (i) authorizing, but not directing, the Debtors to

(a) continue their prepetition insurance coverage and pay all prepetition obligations

thereunder, (b) renew, amend, supplement, extend, or purchase insurance coverage in

the ordinary course of business on a postpetition basis, and (c) satisfy payment of

prepetition obligations on account of, and continue to pay, Insurance Brokerage

Commissions (as defined herein) in the ordinary course, and (ii) setting the date of a

final hearing and granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and

the *Amended Standing Order of Reference from the United States District Court for the*

*Southern District of New York*, dated January 31, 2012 (Preska, C.J.) (the "Amended

Standing Order").

3.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The bases for relief are sections 105(a), 362(d), 363(b), 364(c)(2), and 503(b) of title 11 of

the United States Code (the "Bankruptcy Code"), Rules 2002, 4001(d), 6003, and 6004 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1

and 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York

(the "Local Rules").

4.     This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  The

Debtors confirm their consent to the Court's entry of a final order in connection with

this Motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with

Article III of the United States Constitution.

## Background

5.     On the date hereof (the "Petition Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code with this Court, and

contemporaneously herewith have requested joint administration of the Chapter 11

Cases for procedural purposes only, pursuant to Bankruptcy Rule 1015(b).  The Debtors

are operating their businesses and managing their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the

appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no

official committees have been appointed or designated.

6.     From their humble beginnings as a niche magazine, the Debtors and their

non-Debtor affiliates (collectively, "*VICE*") have grown into a global media company

that focuses on content centered around news and culture, serving a largely global

youth audience.  Today, *VICE* is a global, multiplatform media company that has a

powerful brand, diversified financial profile, premium content, and rich engagement

with its youth-targeted audience.  With production hubs around the world, *VICE*

creates thousands of pieces of content a week globally, including editorial, digital and

social video, experiential events, commercials, music videos, scripted and unscripted

television, feature documentaries, and movies.  Additional facts relating to the Debtors'

businesses and capital structure, and the commencement of these Chapter 11 Cases, are

set forth in the *Declaration of Frank A. Pometti in Support of the Debtors' Chapter 11*

*Petitions and First Day Relief* (the "<u>First Day Declaration</u>"), which was filed contemporaneously with this Motion and is incorporated herein by reference.[2]

## <u>Prepetition Insurance</u>

7.    In the ordinary course of business, the Debtors maintain approximately 30 insurance policies (collectively, the "<u>Insurance Policies</u>") that are administered by a variety of third-party carriers (the "<u>Insurers</u>"), providing to, among other things, general liability coverage, excess liability, employer's liability, property coverage, production coverage (including coverage for producer liability, cast issues, imminent peril, extra expenses, event cancellation and other production related issues), directors' and officers' liability, employment practices liability, fiduciary liability, crime/theft, international general liability, cyber and technology, errors and omissions, business travel accident and security incident response coverage.  A list of the Debtors' Insurance Policies and Insurers is attached as **<u>Exhibit C</u>** (the "<u>Insurance Schedule</u>").[3]

8.    From time to time, the Company takes out limited Insurance Policies for specific, time-defined projects ("<u>Project-Based Insurance Policies</u>").[4]  As of the Petition Date, the Debtors are current on all obligations owing under such Project-Based Insurance Policies.  The Debtors are seeking authority, but not direction, to continue to take out such Project-Based Insurance Policies as needed for their projects in the ordinary course of business.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

[3]    The descriptions of the Insurance Policies set forth in this Motion, including on **Exhibit C**, constitute a summary only. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the description in this Motion. The Debtors request authority to honor existing Insurance Policies and renew Insurance Policies, as applicable, regardless of whether the Debtors inadvertently failed to include a particular Insurance Policy on **Exhibit C**, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Order.

[4]    The Project-Based Insurance Policies are covered under the Media E&O Liability Policy.

9.      Continuation and renewal of the Insurance Policies and entry into new insurance policies, as applicable, is essential to managing risk and preserving the value of the Debtors' business and operations.  Moreover, in many instances, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the requirement of the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. The Debtors request authority to maintain their existing Insurance Policies, pay any prepetition obligations related thereto, and to renew, supplement, or enter into new Insurance Policies in the ordinary course of business on a postpetition basis consistent with past practice.[5]

## I.      Premium Payments.

10.     The Debtors are required to pay premiums under the Insurance Policies (the "Premiums"), based on rates established and billed by each Insurer.  With respect to Debtors' current Insurance Policies, the Premiums total approximately $4.7 million annually.  The Debtors will owe approximately $2.5 million in Premiums that will be due and payable in the first 30 days of the case, on June 1, 2023.  The Debtors seek authority to continue honoring all payment obligations under the Insurance Policies in the ordinary course of business to ensure uninterrupted coverage thereunder.

## II.     Deductibles and Reimbursements.

11.     Certain of the Insurance Policies require the Debtors to pay a deductible (collectively, "Deductibles"). Generally, if a claim is made against the Insurance

---

[5]   The Debtors do not currently finance premiums or anticipate using any insurance premium financing arrangements during the pendency of these cases.

Policies, the Debtors' applicable Insurer will administer the claim and make payments in connection therewith, against which the Deductibles are offset. The Debtors seek authority to continue honoring any Deductible that may exist currently or arise under the Insurance Policies in the ordinary course of business and to ensure uninterrupted coverage under the Insurance Policies.

12.     Certain of the Insurance Policies are structured on an indemnification or reimbursement basis, requiring the Debtors to pay a claim in advance before settling with the applicable Insurer and seeking payment. The Debtors seek authority to continue honoring all reimbursement payment obligations under the Insurance Policies in the ordinary course of business.

13.     Certain of the Insurance Policies provide for mitigation credits, calculated as a percentage of the overall Premium of an applicable policy, and to be applied only to mitigation training or services. These credits are on a reimbursement basis requiring the Debtors to pay the mitigation in advance before submitting the credit amount to the applicable Insurer. Insurer will administer the credit amount and make payments in connection therewith, against which the total mitigation credit amounts are offset. The Debtors seek authority to continue maintaining and fully utilizing all reimbursement-based mitigation credits under the Insurance Policies in the ordinary course of business consistent with past practice, including payment of approximately $150,000 in prepetition invoices for which they will be reimbursed.

### Insurance Brokers

14.     The Debtors typically obtain their Insurance Policies through their insurance brokers, Marsh USA Inc., Marsh UK, and Arthur J. Gallagher & Co., Insurance for Ltd. (collectively with any other brokers whose services the Debtors may use after the Petition Date, the "Insurance Brokers"). The Insurance Brokers assist the

Debtors with: (i) obtaining comprehensive, cost-effective insurance coverage for their operations; (ii) negotiating policy terms, provisions, and premiums; (iii) administering claims; and (iv) providing ongoing support throughout policy periods.

15.    The Insurance Brokers are paid for their services through standard commissions that are built into the price of the Insurance Premiums and become due and payable simultaneously with the payment of the Insurance Premiums (the "Insurance Brokerage Commissions"). The Debtors pay the Insurance Brokers the entire amount of the Insurance Premium due under certain Insurance Policies, from which the Insurance Broker deducts a percentage of the Insurance Premium as compensation for its services, and direct payment of the remaining funds to the applicable Insurer.

16.    The Insurance Brokers' services are necessary to the Debtors' ability to obtain Insurance Policies on advantageous terms and at competitive rates. The Insurance Brokers' services will also facilitate the proper maintenance of the Debtors' Insurance Policies postpetition and ensure adequate protection of the Debtors' property.

17.    As of the Petition Date, the Debtors do not believe there are any unpaid prepetition obligations in connection with the Insurance Brokerage Commissions.  By this Motion, the Debtors seek authority, but not direction, to (i) honor any prepetition amounts owed in connection with the Insurance Brokerage Commissions, (ii) pay any Insurance Brokerage Commissions that may arise on a postpetition basis in the ordinary course of business, and (iii) replace or supplement any of the Insurance Brokers as may be necessary.

**Basis for Relief**

### I.   The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors to Maintain Insurance Coverage and Satisfy Their Insurance Obligations.

18.    The Debtors' existing Insurance Policies provide a comprehensive range of protection for the Debtors' business, properties, and assets.  As such, it is essential that the Debtors' insurance coverage continue in full force and effect during the course of these Chapter 11 Cases. Under section 1112(b)(4)(C) of the Bankruptcy Code, "failure [of a debtor] to maintain appropriate insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the U. S. Trustee (the "U.S. Trustee Guidelines").  In order to ensure that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy Code, applicable state and federal regulations, and the U.S. Trustee Guidelines, the Debtors respectfully request the authority, but not direction, to:  (i) pay the prepetition amounts currently due and owing under the Insurance Policies in the ordinary course of business, including any prepetition amounts due or that may come due in connection with the insurance expenses and Insurance Brokerage Commissions; (ii) continue to honor obligations arising under the Insurance Policies; and (iii) to renew, supplement, modify, or purchase insurance coverage in the ordinary course of business on a prepetition basis.

II.     **Renewing, Supplementing, Entering into New Policies, and Paying Obligations Under the Insurance Policies in the Ordinary Course of Business Are Each Warranted.**

19.     Section 363(c)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  Here, the Debtors seek to continue their existing Insurance Policies and continue to honor their obligations thereunder in the ordinary course of their business on a postpetition basis.  Such obligations include, among other things, renewing the Insurance Policies when they expire, and paying the Premiums when they come due.  Moreover, the Insurance Policies cover obligations that are required by law or regulation, as described above.  The Debtors' failure to maintain, renew, or timely replace existing Insurance Policies may jeopardize the Debtors' ability to conduct their operations.  The Debtors, therefore, submit that obligations on account of the Insurance Policies are within the ordinary course of business and thus may be continued in the Debtors' discretion under section 363(c)(1) of the Bankruptcy Code.

20.     Although the Debtors believe that it is within their authority to continue the Insurance Policies in the ordinary course of business, out of an abundance of caution, and to ensure that they have authority to pay any prepetition obligations related to the Insurance Policies, the Debtors are seeking Court approval to maintain, continue, renew, revise, and supplement the Insurance Policies under sections 105(a) and 363(b) of the Bankruptcy Code.  Under section 363(b)(1) of the Bankruptcy Code "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  The use of estate property should be authorized under section 363(b) so long as a sound business purpose exists for the transaction. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr.

S.D.N.Y. 1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property).

21.     The relief requested herein can be authorized under section 105(a) of the Bankruptcy Code.  Pursuant to section 105(a) of the Bankruptcy Code, the Court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 105(a) therefore authorizes a bankruptcy court to issue injunctions or take other necessary steps in aid of its jurisdiction.  *See, e.g., MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988).  Such orders are appropriate where, as here, they are essential to the debtor's reorganization efforts and do not burden creditors.  *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) (holding that, as courts of equity, bankruptcy courts are empowered to invoke equitable principles to achieve fairness and justice in the reorganization process).

22.     More particularly, under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999).  Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g., Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing

such payment"); *see also Matter of Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to the continued operation of the business).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. R. Co.*, 106 U.S. 286 (1882)).  Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

23.     The Debtors submit that it is in the best interests of their estates to have the ability to revise, extend, supplement, or change insurance coverage, as necessary, on a postpetition basis.  Indeed, the Debtors' Insurance Policies are essential to the preservation of the value of the Debtors' business, properties, and assets and their ability to successfully administer these Chapter 11 Cases.  Accordingly, if any of the Insurance Policies lapse or new coverage is required or necessary, it is imperative that the Debtors are able to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business. The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events.

24.     There is also sufficient basis to permit the Debtors to pay any prepetition obligations related to the Insurance Policies.  The failure to pay Premiums, Insurance Brokerage Commissions, and related insurance expenses when due may harm the Debtors' estates in a number of ways.  Specifically, the Insurers may refuse to renew the Debtors' Insurance Policies, which will require the Debtors to obtain replacement policies and possibly reconfigure their risk management program. That scenario would

require the commitment of significant resources and could result in less favorable

coverage or terms from the Debtors' Insurers. Additionally, the Insurers could attempt

to terminate the Debtors' existing Insurance Policies, which could threaten the Debtors'

ability to continue operating their business given the Debtors' myriad regulatory and

contractual obligations to maintain specific amounts and types of insurance coverage.

25.    The Debtors' ability to maintain the Insurance Policies, to renew,

supplement, and modify the same as needed, and to enter into new insurance policies

as needed in the ordinary course of business, is essential to preserving the value of the

Debtors' businesses, operations, and assets. In many instances, insurance is required by

statutes, rules, regulations, and contracts that govern the Debtors' commercial activities,

including the requirements of the U.S. Trustee that a debtor maintain adequate

coverage given the circumstances of its chapter 11 case. In particular, for the Debtors, it

is critical that they maintain their production coverage in order to complete content

driven projects on a timely and uninterrupted basis. Accordingly, the Debtors seek

authorization to maintain the Insurance Policies, to pay related prepetition obligations,

to renew, supplement, or modify the Insurance Policies as needed, and to enter into

new insurance policies in the ordinary course of business.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

26.    The Debtors have sufficient funds to pay the amounts described in this

Motion in the ordinary course of business. In addition, under the Debtors' existing cash

management system, which is described in further detail in a separate motion, the

Debtors can readily identify checks or wire transfer requests as relating to an authorized

payment in respect of the relief requested herein. Accordingly, the Debtors believe that

checks or wire transfer requests that are not related to authorized payments will not be

honored inadvertently. Therefore, the Debtors respectfully request that the Court

authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

27.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' chapter 11 process. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Request for Waiver of Bankruptcy Rules 6004(a) and 6004(h)

28.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, any delay in paying the Insurance Obligations would be detrimental to the Debtors, their estates, and their creditors, as the Debtors' ability to manage and run their businesses without any unexpected or inopportune interruptions requires, in part, that the Debtors remain current with such obligations. For this reason and those set forth above, the Debtors submit that ample

cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

29.    To implement the foregoing relief requested in this Motion immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) and the Local Rules, to the extent they are deemed applicable to the Proposed Orders.

## Reservation of Rights

30.    Nothing contained herein is or should be construed as:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an admission that any particular claim is of a type specified or defined hereunder; (v) a request to assume any executory contract or unexpired lease; or (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.  The authorization to pay amounts on account of the Insurance Policies should not affect the Debtors' rights to contest the amount or validity of such obligations.  If the Court authorizes the payments described herein, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts, and the authorization to pay amounts on account of the insurance premiums and insurance deductibles should not affect the Debtors' right to contest the amount or validity of such obligations.

## Motion Practice

31.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion.  Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

32.    Notice of this Motion will be provided to:  (i) the Office of the United
States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006,
New York, NY 10014 (Attn:  Andrea B. Schwartz); (ii) the parties identified on the
Debtors' consolidated list of 30 largest unsecured creditors; (iii) Gibson, Dunn &
Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn:  David M. Feldman,
Michael S. Neumeister, and Tommy Scheffer), counsel to the DIP/First Lien Group;
(iv) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019
(Attn:  Scott K. Charles and Neil M. Snyder), counsel to TPG Virat Holdings 1, L.P., and
Sixth Street Virat Holdings 3, LLC; (v) Shipman & Goodwin LLP (Attn:  Marie C.
Pollio), counsel to Wilmington Trust, National Association; (vi) the Internal Revenue
Service; (vii) the Office of the United States Attorney for the Southern District of New
York; (viii) the offices of the attorneys general in the states in which the Debtors operate;
and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002
(collectively, the "Notice Parties").  The Debtors respectfully submit that, in light of the
nature of the relief requested, no other or further notice need be given.

## No Previous Request

33.    No prior motion for the relief requested herein has been made to this or
any other Court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the

Proposed Orders granting the relief requested herein and such other and further relief

as the Court deems just and appropriate.

Dated:  May 15, 2023
       New York, New York

                                          VICE GROUP HOLDING INC., *et al.*
                                          *Debtors and Debtors in Possession*
                                          *By Their Proposed Counsel*
                                          TOGUT, SEGAL & SEGAL LLP,
                                          By:

                                          */s/ Kyle J. Ortiz*
                                          ALBERT TOGUT
                                          KYLE J. ORTIZ
                                          BRIAN F. MOORE
                                          One Penn Plaza, Suite 3335
                                          New York, New York 10119
                                          Telephone: (212) 594-5000
                                          altogut@teamtogut.com
                                          kortiz@teamtogut.com
                                          bmoore@teamtogut.com

## EXHIBIT A

### Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. 23-10738 (__) |
| Debtors.[1] | (Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
THEIR PREPETITION INSURANCE COVERAGE AND PAY PREPETITION
OBLIGATIONS THEREUNDER, (B) RENEW, AMEND, SUPPLEMENT, EXTEND,
OR PURCHASE INSURANCE POLICIES, (C) CONTINUE TO PAY INSURANCE
BROKERAGE COMMISSIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order

(this "Interim Order"), pursuant to sections 105(a), 362(d), 363(b), 364(c), and 503(b) of

the Bankruptcy Code, and Bankruptcy Rules 4001(d), 6003, and 6004 (i) authorizing, but

not directing, the Debtors to (a) continue their prepetition insurance coverage and pay

all prepetition obligations thereunder, (b) renew, amend, supplement, extend, or

purchase insurance coverage in the ordinary course of business on a postpetition basis,

(c) satisfy payment of prepetition obligations on account of, and continue to pay,

Insurance Brokerage Commissions in the ordinary course, and (ii) setting the date of a

final hearing and granting related relief, and the Court having jurisdiction to consider

the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and

the Amended Standing Order; and consideration of the Motion and the requested relief

---

[1]    The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250.  Due to
the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last
four digits of their federal tax identification numbers is not provided herein.  A complete list of such
information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.stretto.com/vice.  The location of the Debtors' service address for purposes of these
chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed
to such terms in the Motion.

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this Court may

enter a final order consistent with Article III of the United States Constitution; and due

and proper notice of the Motion having been provided to the Notice Parties, and such

notice having been adequate and appropriate under the circumstances, and it appearing

that no other or further notice need be provided; and this Court having held a hearing

to consider the relief requested in the Motion; and upon the First Day Declaration; and

the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors, their estates, creditors,

and all parties in interest; and upon all of the proceedings had before the Court and

after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, in the reasonable exercise of

their business judgment, to maintain their Insurance Policies without interruption, on

the same basis and in accordance with the same practices and procedures as in effect

prior to the Petition Date.

3.      The Debtors are authorized, but not directed, to pay Insurance Brokerage

Commissions due to the Brokers under the applicable agreements.

4.      The Debtors are authorized, but not directed, to renew, revise, extend,

supplement, or change their existing Insurance Policies, including, without limitation,

those described in the Motion and **Exhibit C** thereto, or enter into new Insurance

Policies in the ordinary course of business, in each case, as they may deem appropriate

in the exercise of their business judgment.

5.      The Debtors are authorized, but not directed, to pay all amounts necessary to honor their obligations under the existing Insurance Policies, including all Premium payments, claims, deductibles, excess, retrospective adjustments, and all other obligations arising under the Insurance Policies, including those that (i) were due and payable or related to the period before the Petition Date, and (ii) were due and payable after the Petition Date.

6.      The Debtors are authorized, but not directed, to pay all amounts and take other actions as reasonably may be necessary to establish, honor, and maintain any Insurance Policy entered into after the Petition Date, including by granting liens on unearned Premiums, to the extent that the Debtors deem appropriate in the exercise of their business judgment.

7.      Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (i) an admission as to the validity or priority of any claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion (including any exhibits attached thereto); (v) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vii) to create any rights in favor of, or enhance the status of, any claim held by any person or entity.

8.      All banks and other financial institutions are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the Insurance Policies and the Insurance Broker Commissions, regardless of whether the checks were presented or

fund transfer requests were submitted before or after the Petition Date, *provided* that

funds are available in the Debtors' accounts to cover the checks and fund transfers.

Banks and other financial institutions may rely on the representations of the Debtors

with respect to whether any check, item, or other payment order drawn or issued by the

Debtors prior to the Petition Date should be honored pursuant to this or any other order

of this Court and such bank or financial institution shall not have any liability to any

party for relying on such representation by the Debtors as provided for herein.

9.      The Debtors are authorized, but not directed, to issue postpetition checks,

or to effect postpetition fund transfer requests, in replacement of any checks or fund

transfer requests that are dishonored as a consequence of these chapter 11 cases with

respect to prepetition amounts owed in connection with the Insurance Policies and the

Insurance Broker Commissions to the extent payment thereof is authorized pursuant to

the relief granted herein.

10.     The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on

_____, 2023, at__:__ _.m. (prevailing Eastern Time).  Any party in interest objecting

to the relief sought at the Final Hearing or in the Final Order shall file and serve a

written objection, which objection shall be served upon:  (i) proposed counsel for the

Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119

(Attn:  Kyle J. Ortiz and Brian F. Moore); (ii) proposed special counsel for the Debtors,

Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022 (Attn.:  Fredric

Sosnick) and Shearman & Sterling LLP, 2601 Olive Street, 17th Floor, Dallas, TX 75201

(Attn.:  Ian E. Roberts); (ii) the Office of the United States Trustee for Region 2, U.S.

Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:

Andrea B. Schwartz); (iii) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York,

NY 10166 (Attn:  David M. Feldman, Michael S. Neumeister, and Tommy Scheffer),

counsel to the DIP/First Lien Group; (iv) Wachtell, Lipton, Rosen & Katz, 51 West 52nd

Street, New York, NY 10019 (Attn:  Scott K. Charles and Neil M. Snyder), counsel to

TPG Virat Holdings 1, L.P., and Sixth Street Virat Holdings 3, LLC; (v) Shipman &

Goodwin LLP (Attn:  Marie C. Pollio), counsel to Wilmington Trust, National

Association; and (vi) counsel to any statutory committee appointed in these Chapter 11

Cases, in each case so as to be received no later than _____, 2023, at 11:59

p.m. (prevailing Eastern Time).  If no objections to the entry of the Final Order are

timely filed, this Court may enter the Final Order without further notice or a hearing.

11.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the

contents of the Motion.

12.     Notice of the Motion, as provided therein, is deemed good and sufficient

under the circumstances, and the requirements of Bankruptcy Rule 6004(a) and the

Local Rules are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and provisions of

this Interim Order shall be immediately effective and enforceable upon its entry.

14.     Notwithstanding any provision in the Bankruptcy Rules to the contrary,

the Debtors are not subject to any stay in the implementation, enforcement, or

realization of the relief granted in this Interim Order, and the Debtors may, in their

discretion and without further delay, take any action and perform any act necessary to

implement the relief granted in this Interim Order.

15.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

16.     Notwithstanding anything to the contrary contained in the Motion or this

Interim Order, any payment to be made and any relief or authorization granted

hereunder shall be limited by, and shall be subject to, the requirements imposed on the

Debtors in any orders entered by this Court authorizing the Debtors to obtain debtor-in-

possession financing and authorizing the use of cash collateral (any such order, a "DIP Order"), including, for the avoidance of doubt, the debtor-in-possession financing and cash collateral budget.  To the extent of any conflict (but solely to the extent of such conflict) between the terms of this Interim Order and the terms of any DIP Order, the terms of the DIP Order will govern.

17.    This Court shall retain jurisdiction over any and all matters arising from or relating to the interpretation or implementation of this Interim Order.

Dated: _____

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. 23-10738 (__) |
| Debtors.[1] | (Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
THEIR PREPETITION INSURANCE COVERAGE AND PAY PREPETITION
OBLIGATIONS THEREUNDER, (B) RENEW, AMEND, SUPPLEMENT, EXTEND,
OR PURCHASE INSURANCE POLICIES, (C) CONTINUE TO PAY INSURANCE
BROKERAGE COMMISSIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Final

Order"), pursuant to 362(d), 363(b), 364(c)(2), 503(b), and 105(a) of title 11 of the

Bankruptcy Code, and Bankruptcy Rules 4001(d), 6003, and 6004, (i) authorizing, but

not directing, the Debtors to (a) continue their prepetition insurance coverage and pay

all prepetition obligations thereunder, (b) renew, amend, supplement, extend, or

purchase insurance coverage in the ordinary course of business on a postpetition basis,

(c) satisfy payment of prepetition obligations on account of, and continue to pay,

Insurance Brokerage Commissions in the ordinary course, and (ii) setting the date of a

final hearing and granting related relief, all as more fully set forth in the Motion; and

the Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order; and

---

[1]    The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250.  Due to
the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last
four digits of their federal tax identification numbers is not provided herein.  A complete list of such
information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.stretto.com/vice.  The location of the Debtors' service address for purposes of these
chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed
to such terms in the Motion.

consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this Court may enter a final order consistent with Article III of the United States Constitution; and due and proper notice of the Motion having been provided to the Notice Parties, and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having held a hearing to consider the relief requested in the Motion on a final basis; and upon the First Day Declaration; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to maintain their Insurance Policies without interruption, on the same basis and in accordance with the same practices and procedures as in effect prior to the Petition Date.

3.      The Debtors are authorized, but not directed, to pay Insurance Brokerage Commissions due to the Brokers under the applicable agreements.

4.      The Debtors are authorized, but not directed, to renew, revise, extend, supplement, or change their existing Insurance Policies, including, without limitation, those described in the Motion and **Exhibit C** thereto, or enter into new Insurance

Policies in the ordinary course of business, in each case, as they may deem appropriate in the exercise of their business judgment.

5.    The Debtors are authorized, but not directed, to pay all amounts necessary to honor their obligations under the existing Insurance Policies, including all Premium payments, claims, deductibles, excess, retrospective adjustments, and all other obligations arising under the Insurance Policies, including those that (i) were due and payable or related to the period before the Petition Date, and (ii) were due and payable after the Petition Date.

6.    The Debtors are authorized, but not directed, to pay all amounts and take other actions as reasonably may be necessary to establish, honor, and maintain any Insurance Policy entered into after the Petition Date, including by granting liens on unearned Premiums, to the extent that the Debtors deem appropriate in the exercise of their business judgment.

7.    Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (i) an admission as to the validity or priority of any claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion (including any exhibits attached thereto); (v) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vii) to create any rights in favor of, or enhance the status of, any claim held by any person or entity.

8.    All banks and other financial institutions are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all fund

transfer requests made by the Debtors related to, the Insurance Policies and the Insurance Broker Commissions, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, *provided* that funds are available in the Debtors' accounts to cover the checks and fund transfers. Banks and other financial institutions may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court and such bank or financial institution shall not have any liability to any party for relying on such representation by the Debtors as provided for herein.

9.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the Insurance Policies and the Insurance Broker Commissions to the extent payment thereof is authorized pursuant to the relief granted herein.

10.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

11.     Notice of the Motion, as provided therein, is deemed good and sufficient under the circumstances, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and provisions of this Final Order shall be immediately effective and enforceable upon its entry.

14.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the Debtors are not subject to any stay in the implementation, enforcement, or

realization of the relief granted in this Final Order, and the Debtors may, in their discretion and without further delay, take any action and perform any act necessary to implement the relief granted in this Final Order.

15.     Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made and any relief or authorization granted hereunder shall be limited by, and shall be subject to, the requirements imposed on the Debtors in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and authorizing the use of cash collateral (any such order, a "DIP Order"), including, for the avoidance of doubt, the debtor-in-possession financing and cash collateral budget. To the extent of any conflict (but solely to the extent of such conflict) between the terms of this Final Order and the terms of any DIP Order, the terms of the DIP Order will govern.

16.     This Court shall retain jurisdiction over any and all matters arising from or relating to the interpretation or implementation of this Final Order.

Dated:_____

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**List of the Debtors' Insurance Policies**

<u>**EXHIBIT C**</u>

**List of the Debtors' Insurance Policies**

| Coverage | Carrier | Policy Number | Effective Date | End Date | Estimated Monthly Premium |
|---|---|---|---|---|---|
| Global Production | Berkley Great Divide | CNA750192015 | 05/01/2023 | 08/01/2023 | $52,900.00 |
| US General Liability | Berkley Great Divide | CNA750192015 | 05/01/2023 | 08/01/2023 | $3,900.00 |
| Automobile Liability | Berkley Great Divide | CAA750780615 | 05/01/2023 | 08/01/2023 | $2,200.00 |
| Inland Marine - Equipment in War Zone | Great Divide Insurance Co. | CIM750791815 | 05/01/2023 | 05/01/2024 | $400.00 |
| US Workers' Compensation | Tri-state Insurance Co of Minnesota | WCA750046518 | 05/01/2023 | 08/01/2023 | $31,200.00 |
| International General Liability. International Auto Liability, Foreign Vol WC | Generali U.S. Branch | NGO0000651 | 05/01/2023 | 05/01/2024 | $26,000.00 |
| Umbrella Liability (Primary) | Berkley Great Divide | CUA750192715 | 05/01/2023 | 08/01/2023 | $5,500.00 |
| Umbrella Liability (1st Excess) | Navigators Insurance Co | LA23EXR903855IV | 05/01/2023 | 08/01/2023 | $4,100.00 |

| Coverage | Carrier | Policy Number | Effective Date | End Date | Estimated Monthly Premium |
|---|---|---|---|---|---|
| Umbrella Liability (2nd Excess) | HDI Global Specialty | 18HX2237 | 05/01/2023 | 08/01/2023 | $1,500.00 |
| Umbrella Liability (3rd Excess) | Lloyds of London | 21ABHX0220 | 05/01/2023 | 08/01/2023 | $500.00 |
| Employment Practices Liability | Endurance Assurance Corporation | MAP30012645700 | 05/01/2023 | 11/01/2023 | $38,900.00 |
| Directors and Officers | Endurance Assurance Co | MAP30001690101 | 05/01/2023 | 11/01/2023 | $16,900.00 |
| Directors and Officers (1st excess) | QBE Insurance Corporation | 130001614 | 05/01/2023 | 11/01/2023 | $13,800.00 |
| Directors and Officers (2nd Excess) | Bowhead (Midvale Indemnity Co) | ECL-145446032-00 | 05/01/2023 | 11/01/2023 | $11,900.00 |
| Directors and Officers (3rd Excess) | Skyward (Houston Specialty Insurance Company) | HPRO-CX-HS-0000245-00 | 05/01/2023 | 11/01/2023 | $10,900.00 |
| Directors and Officers (4th Excess) | Berkshire Hathaway | 47-EMC-310929-02 | 05/01/2023 | 11/01/2023 | $10,100.00 |
| Directors and Officers (5th Excess) | Axis | P-001-000732797-01 | 05/01/2023 | 11/01/2023 | $8,600.00 |

| Coverage | Carrier | Policy Number | Effective Date | End Date | Estimated Monthly Premium |
|---|---|---|---|---|---|
| Directors and Officers (Side A DIC) | Lloyds | B1262FI1939521 | 05/01/2023 | 11/01/2023 | $11,400.00 |
| Fiduciary Liability | Hudson Insurance Company | SFD31211501-02 | 11/01/2023 | 11/01/2024 | $1,100.00 |
| Commercial Crime | Berkley Insurance Company | BCCR-45003890-22 | 05/01/2023 | 08/01/2023 | $1,700.00 |
| Property | Zurich American Insurance Company | PPR0281863-06 | 05/01/2023 | 05/01/2024 | $16,200.00 |
| Non-owned Aircraft Liability | Allianz Global Corporate & Specialty | ALLZWL1400780-06 | 05/01/2023 | 05/01/2024 | $1,100.00 |
| Drone Aircraft Liability | American Alternative Ins. Corp Global Aerospace Inc | 9010355 | 05/01/2023 | 05/01/2024 | $300.00 |
| Cyber & Technology | Chubb | D97200191 | 05/01/2023 | 08/01/2023 | $15,800.00 |
| Media E&O Liability | QBE Insurance Corporation | 100006911 | 05/01/2023 | 08/01/2023 | $35,700.00 |
| Guild Travel Accident | Federal Insurance Company | 9908-50-04 | 05/01/2023 | 08/01/2023 | $500.00 |
| Businesses Travel Accident | National Union Fire Company of Pittsburgh, PA | GTP 0009156124 | 05/01/2023 | 08/01/2023 | $15,200.00 |

| Coverage | Carrier | Policy Number | Effective Date | End Date | Estimated Monthly Premium |
|---|---|---|---|---|---|
| Terrorism | Samphire | B1182SSL2021001/B1182 CHC2022041 | 05/01/2023 | 05/01/2024 | $7,600.00 |
| Emergency Incident Response | Samphire | B1182SSL2021001/B1182 CHC2022039 | 05/01/2023 | 05/01/2024 | $29,400.00 |
| Kidnap and Ransom | Samphire | B1182SSL2021001/B1182 CHC2022040 | 05/01/2023 | 05/01/2024 | $10,500.00 |