**TOGUT, SEGAL & SEGAL LLP**
Albert Togut
Kyle J. Ortiz
Brian F. Moore
One Penn Plaza, Suite 3335
New York, NY 10119
Phone: (212) 594-5000
Email: altogut@teamtogut.com
         kortiz@teamtogut.com
         bmoore@teamtogut.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**SHEARMAN & STERLING LLP**
Fredric Sosnick
William S. Holste
Jacob S. Mezei
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4000
Email:  fsosnick@shearman.com
         william.holste@shearman.com
         jacob.mezei@shearman.com

**SHEARMAN & STERLING LLP**
Ian E. Roberts (*pro hac vice* pending)
2601 Olive Street, 17th Floor
Dallas, TX 75201
Phone: (214) 271-5777
Email:  ian.roberts@shearman.com

*Proposed Special Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. 23-10738 (__) |
| Debtors.[1] | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, REIMBURSABLE EXPENSES, AND OTHER OBLIGATIONS ARISING FROM COMPENSATION AND BENEFITS PROGRAMS AND (B) CONTINUE COMPENSATION AND BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

---

[1] The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://https://cases.stretto.com/vice/. The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

(the "Chapter 11 Cases"), respectfully represent as follows in support of this motion (the "Motion"):

**Relief Requested**

1.      The Debtors request entry of an interim order in the form attached hereto as **Exhibit A** (the "Proposed Interim Order") and a final order in the form attached hereto as **Exhibit B** (the "Proposed Final Order") and, together with the Proposed Interim Order, the "Proposed Orders") (i) authorizing the Debtors to (a) pay prepetition wages, salaries, reimbursable expenses, and other obligations arising from the Compensation and Benefits Programs (as defined herein) in the ordinary course of business as provided herein and (b) continue to administer the Compensation and Benefits Programs, and (ii) setting the date of a final hearing and granting related relief.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.) (the "Amended Standing Order").

3.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for relief are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

4.      This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

2

enter final orders or judgments in connection herewith consistent with Article III of the
United States Constitution.

## Background

5.      On the date hereof (the "Petition Date"), the Debtors filed voluntary
petitions for relief under chapter 11 of the Bankruptcy Code with this Court, and
contemporaneously herewith have requested joint administration of the Chapter 11
Cases for procedural purposes only, pursuant to Bankruptcy Rule 1015(b).  The Debtors
are operating their businesses and managing their properties as debtors in possession
pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the
appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no
official committees have been appointed or designated.

6.      From their humble beginnings as a niche magazine, the Debtors and their
non-Debtor affiliates (collectively, "_VICE_") have grown into a global media company
that focuses on content centered around news and culture, serving a largely global
youth audience.  Today, _VICE_ is a global, multiplatform media company that has a
powerful brand, diversified financial profile, premium content, and rich engagement
with its youth-targeted audience.  With production hubs around the world, _VICE_
creates thousands of pieces of content a week globally, including editorial, digital and
social video, experiential events, commercials, music videos, scripted and unscripted
television, feature documentaries, and movies.  Additional facts relating to the Debtors'
businesses and capital structure, and the commencement of these Chapter 11 Cases, are
set forth in the _Declaration of Frank A. Pometti in Support of the Debtors' Chapter 11_

*Petitions and First Day Relief* (the "<u>First Day Declaration</u>"), which was filed

contemporaneously with this Motion and is incorporated herein by reference.[2]

### The Debtors' Workforce

7.        As of the Petition Date,[3] the Debtors directly employ approximately 679

employees (collectively, the "<u>Employees</u>" or "<u>Workforce</u>"), of which five are part-time

Employees.[4]  All of the Debtors' Employees that are the subject of the relief requested in

this Motion are employed in the United States.[5]  The majority of the Employees are

salaried; however, approximately six Employees are paid on an hourly basis.

Approximately 151 of the Employees (the "<u>Union Employees</u>") are members of various

labor unions, including the Writers Guild of America ("<u>WGA</u>") and the Motion Pictures

Editors Guild.  Debtor Vice Media LLC is party to the following collective bargaining

agreements (the "<u>CBAs</u>"), pursuant to which they maintain various programs and

benefits on behalf of covered Employees: (i) a CBA with WGA; and (ii) a CBA with the

International Alliance of Theatrical Stage Employees, and its Local 700**.**  The Debtors

---

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

[3]    The numbers in this paragraph reflect a recent reduction in force.  After implementing certain cost-cutting initiatives and an operational restructuring, in part due to the termination of the VWN agreement, the Debtors reduced their workforce through a series of reductions.  On May 5, 2023, the Debtors reduced their workforce by approximately 32 employees, following an initial reduction in force of approximately 32 employees in April 2023 (collectively, the "<u>RIF</u>").

[4]    In addition to the Debtors' Employees, the Debtors' non-debtor affiliates employ approximately 684 individuals at various locations throughout the world.

[5]    Debtor entity Vice Europe Holding Limited, is incorporated in the Bailiwick of Jersey and has one employee.  However, this individual is paid by, and receives all of his employment benefits from, non-debtor entity Vice UK Limited.  Accordingly, the Debtors do not seek relief to pay the compensation and benefits of this employee pursuant to this Motion.

request authority to continue to honor all obligations to Union Employees under the terms of the existing CBAs to which the Debtors are party.[6]

8.    The Debtors' Workforce is critical to preserving the value of the Debtors' estates.  Failure to maintain the continued, uninterrupted services of their Workforce would upend the Debtors' restructuring and jeopardize their businesses as a going concern.  The Employees rely on their compensation and benefits to pay their daily living expenses.  The individuals that comprise the Workforce would experience significant financial hardship if the Court does not permit the Debtors to continue paying their compensation and provide them with health and other benefits.  Accordingly, the relief requested herein is necessary and appropriate under the facts and circumstances of these Chapter 11 Cases.

### Compensation and Benefits Programs

9.    The Debtors pay wages and salaries to their Employees (the "Employee Wages").  In addition, the Debtors pay Payroll Processing Fees, honor Withholding Obligations and reimburse the Workforce for Reimbursable Business Expenses (all as defined below).  Like many similarly situated companies, the Debtors also maintain various health and welfare programs and pay various related administrative fees and premiums (collectively, the "Health and Welfare Programs" and, together with Employee Wages, Payroll Processing Fees, Withholding Obligations, Reimbursable Business Expenses, Commissions, Health and Welfare Programs, Non-Insider Severance Practices, and Non-Insider Discretionary Bonuses, the "Compensation and Benefits Programs").

---

[6]    By requesting authority to honor obligations relating to any CBAs in this Motion, the Debtors are not assuming or affirming any contracts, agreements, programs, or applicability of any law related to the CBAs, and the Debtors reserve all of their rights with regard to any CBAs.

10.     To minimize the personal hardship that Employees would suffer if Employee-related obligations pursuant to prepetition Compensation and Benefits Programs are not paid or remitted to such parties when due or expected, the Debtors seek authority to pay and honor certain prepetition claims and continue to honor obligations on a postpetition basis, as applicable, relating to the Compensation and Benefits Programs, on an interim and final basis.  Subject to Court approval of the relief requested herein, the Debtors intend to continue the prepetition Compensation and Benefits Programs in the ordinary course of business on a postpetition basis and consistent with past practices.  Out of an abundance of caution, the Debtors further request the right to modify, change, or discontinue any of their Compensation and Benefits Programs and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases and without the need for further Court approval, subject to applicable law.

11.     The Debtors do not seek to pay any prepetition amounts to Employees in excess of the priority wages cap imposed by section 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Statutory Cap").  Should the Debtors seek to pay amounts that exceed the Statutory Cap imposed by section 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the Debtors will seek such relief pursuant to a separate motion.

12.     In the aggregate, the Debtors estimate that they owe approximately $4.3 million on account of their Compensation and Benefits Programs, of which $1.3 million may become due to be remitted during the period between the Petition Date and the final hearing on the Motion (the "Interim Period").  As described in more detail herein, the Debtors estimate that, as of the Petition Date, they owe the aggregate amounts, and the amounts due during the Interim Period in respect of each of the Compensation and Benefits Programs:

| Compensation and Withholdings | Interim Amount | Final Amount |
|---|---|---|
| Employee Wages | - | - |
| Commissions | $350,000 | $550,000 |
| Withholding Obligations | - | - |
| Payroll Processing Fees | $76,500 | $1,286,000 |
| Reimbursable Business Expenses | $35,000 | $70,000 |
| **Health and Welfare Programs** | **Interim Amount** | **Final Amount** |
| Medical, Dental, and Vision Insurance | $255,600 | $255,600 |
| Flexible Spending Account Programs | $2,600 | $2,600 |
| Other Health Benefits | $1,330 | $1,330 |
| Life and AD&D | $40,000 | $40,000 |
| Disability Benefits | $180,000 | $360,000 |
| 401(k) and Pension Plans | $2,000 | $2,000 |
| Time Off Policies | - | $1,038,400 |
| Miscellaneous Benefits | $2,500 | $2,500 |
| **Severance and Incentive Programs** | **Interim Amount** | **Final Amount** |
| Non-Insider Severance Practices | - | $700,000 |
| Non-Insider Discretionary Bonuses | - | $10,000 |
| **Total** | **$945,530** | **$4,318,430** |

I.    **Employee Wages, Withholding Obligations, and Reimbursable Business Expenses and Commissions**

    A.    **Employee Wages**

    13.    In the ordinary course of business, Employee Wages are paid by the Debtors semi-monthly in the United States, through direct deposits or checks issued to Employees on the 15th and last days of each month, or the preceding workday if the normal payday falls on a holiday or weekend.  On average, the Debtors' monthly gross Employee Wages are approximately $8.7 million.

14.    All paychecks received include earnings for the work performed through the end of the pay date.  In the ordinary course the Debtors typically pre-fund payroll to ADP by several days.  The Debtors' next semi-monthly payroll date of May 15, 2023 will cover the pay period from May 1, 2023 through May 15, 2023.  This payroll was pre-funded prior to the Petition Date.  Accordingly, as of the Petition Date, the Debtors estimate they do not owe any prepetition Employee Wages.  However out of an abundance of caution, the Debtors request authorization to pay any miscellaneous amounts to Employees in respect of prepetition Employee Wages pursuant to the Interim Order.

15.    Considering the substantial benefits that the Employees will continue to provide to the Debtors and the cost attendant to filling sudden vacancies, it is critical that the Debtors maintain their Workforce to the maximum extent possible.  Accordingly, pursuant to the Final Order, the Debtors request authority, but not direction, to pay any unpaid amounts owed in Employee Wages and not paid through the Interim Order in the ordinary course of business and consistent with past practice, and to continue paying the Employee Wages in the ordinary course during the Chapter 11 Cases.

**B.    Withholding Obligations**

16.    Federal and state laws in the United States require the Debtors to withhold amounts (collectively, the "Withheld Amounts") and directly make employer contributions for federal, state, and local taxes based on a percentage of gross payroll and other required statutory payments such as social security and Medicare taxes.  The Withheld Amounts are paid by the Debtors from their own funds, typically contemporaneous with the payment of their payroll.  In the aggregate, the Debtors remit approximately $2.6 million of Withheld Amounts per month.  The Debtors

8

estimate that as of the Petition Date there are no accrued and unpaid Withheld Amounts.

17.    The Debtors also regularly deduct certain amounts from paychecks (the "Deductions"), including, without limitation, union dues (where applicable), wage garnishments, child support, retirement savings (such as 401(k)) contributions, pension payments, and other pre- and post-tax deductions payable pursuant to certain of the Benefit Programs.  The Deductions are forwarded directly to various third-party recipients on behalf of the applicable Employee. In the aggregate, the Debtors withhold and remit approximately $3.5 million of Deductions per month. The Debtors estimate that as of the Petition Date there are no accrued and unpaid Deduction amounts.

18.    As of the Petition Date, the Debtors estimate that they do not have accrued and outstanding Deductions and Withheld Amounts (together, the "Withholding Obligations").  Out of an abundance of caution, the Debtors seek authority, but not direction, to pay or deduct in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course of business.

### C.    Payroll Processing Fees

19.    The Debtors utilize ADP, Inc. ("ADP") and Workday, Inc. ("Workday")[7] to administer payroll and several other employee-related benefit programs (collectively, the Payroll Processors").  The Payroll Processors provide various services to efficiently manage the Debtors' payroll, including, among other things, ensuring proper tax and

---

[7]    Workday administers payroll for the Debtors in the United States, including facilitating gross and net calculations.  ADP, processes payroll, provides back-end compliance services and calculations relating to employment taxes, employment verifications, wage garnishment processing, and unemployment claims.

benefits withholding, and providing electronic timesheet management for Employees paid on an hourly basis.  On average, the Debtors pay Payroll Processors administration fees of approximately $76,000 (the "Payroll Processing Fees") each month.  As of the Petition Date, the Debtors estimate that they owe Payroll Processing Fees of approximately $1.3 million, some of which may be due to be remitted within the Interim Period.  The Debtors hereby seek authority, but not direction, to pay any outstanding Payroll Processing Fees.

### D.    Reimbursable Business Expenses

20.     In the ordinary course of business, the Debtors reimburse Employees in cash and provide corporate credit cards to Employees for qualifying expenses incurred in carrying out their employment responsibilities (the "Reimbursable Business Expenses").  Reimbursable Business Expenses include work-related travel expenses, certain business expenses, and other qualifying expenses.  To receive approval of Reimbursable Business Expenses, Employees must submit their expenditures in accordance with the Debtors' expense policies to qualify for reimbursement.

21.     To avoid financial harm to their Workforce, the Debtors request authority to continue reimbursing the Reimbursable Business Expenses in accordance with their prepetition practices, including paying Reimbursable Business Expenses that have accrued as of the Petition Date.  The Debtors estimate they owe approximately $70,000 on account of prepetition Reimbursable Business Expenses, of which $35,000 may become due and payable within the Interim Period.

### E.    Commissions

22.     Certain non-Insider (as such term is defined in section 101(31) of the Bankruptcy Code) Employees are entitled to payments in addition to their base compensation under the Debtors' commissions program (the "Commission Programs,"

and payments thereunder, the "<u>Commissions</u>").  The maximum commission payout under the Commission Program is 200% of an Employee's base salary.  Commissions are paid through payroll and appear on Employee statements separately from base pay.  The Commission Programs motivate the Debtors' Employees to meet defined targets, and the Commissions constitute part of their ordinary course compensation on which they depend.

23.    Commissions are paid quarterly and included as part of a particular Employee's regular compensation.  In Q4, 2022, the total Commissions paid to Employees was approximately $1.6 million.  As of the Petition Date, the Debtors estimate that they owe approximately $550,000 on account of accrued but unpaid Commissions, of which $350,000 may come due to be remitted in the Interim Period.  The Debtors seek authority to pay any outstanding Commissions and to continue the Commissions Programs in the ordinary course of business on a postpetition basis consistent with past practices.

## II.    Health and Welfare Programs

24.    In the ordinary course of business, the Debtors offer various Health and Welfare Programs to their Employees for medical, dental, vision care, and certain other benefits, including:

a)    Medical insurance programs;

b)    Dental insurance programs;

c)    Vision care program;

d)    Flexible spending account programs;

e)    Other health benefits;

f)    Life and AD&D insurance;

g)    Short-term and long-term disability benefits;

h)   Workers' compensation program (the "<u>Workers' Compensation Program</u>")

i)   401(k) and pension plans;

j)   Time off policies; and

k)   Miscellaneous benefits.

Health and Welfare Programs generally are only available for Employees who work more than 16 hours per week and for variable-hour Employees if they work an average of 30 hours per week during a 12-month look-back measurement period.

25.   Employees (and in many instances their families) rely on the Health and Welfare Programs, and, therefore, any disruption in the Health and Welfare Programs would be detrimental to the morale and well-being of the Employees.  Accordingly, by this Motion, the Debtors request authority to pay and remit any outstanding prepetition amounts due under the Health and Welfare Programs in the ordinary course of business on a postpetition basis and consistent with past practices.  In addition, the Debtors hereby seek authority to modify their Health and Welfare Programs in the ordinary course of business, including to comply with changes to applicable law.

**A.   Medical, Dental and Vision Insurance; Flexible Spending Accounts**

**1)   Medical Insurance Programs**

26.   The Debtors offer Employees the opportunity to participate in a number of health benefit plans, including the Medical Insurance Programs, the Dental Insurance Program, and the HCSA (each as defined below and collectively, the "<u>Health Benefit Programs</u>").  On average, the Debtors pay approximately $673,000 per month in respect of the Health Benefit Programs.  As of the Petition Date, the Debtors estimate that they owe approximately $255,600 in respect of their Health Benefit Programs.

27.     The Debtors offer medical insurance and prescription medication coverage to all full-time and eligible part-time U.S. Employees (the "Medical Insurance Program").  The Medical Insurance Program is a self-insured program administered by Cigna Health and Life Insurance Company ("Cigna") with respect to medical coverage and RxBenefits, Inc. ("Rx" and collectively with Cigna, the "Medical Insurance Providers") with respect to prescription drug coverage.  Each covered Employee contributes a percentage of the cost for the Medical Insurance Program, depending on their status as a full-time or part-time Employee, the type of coverage they select and the applicable laws of the jurisdictions in which the Employee lives.  The Medical Insurance Providers adjudicate and pay claims to healthcare providers, pharmacies, or Employees, as applicable.  On a weekly basis, the Debtors reimburse the Medical Insurance Providers for the claims they pay, and also pay administrative fees to the Medical Insurance Providers.  On average, the Debtors pay approximately $625,000 per month in respect of the Medical Insurance Programs, inclusive of both reimbursement payments and administrative fees owed to the Medical Insurance Providers.  As of the Petition Date, the Debtors estimate that they owe approximately $220,000 in respect of the Medical Insurance Programs, inclusive of both reimbursement payments and administrative fees owed to the Medical Insurance Providers.

**2)     Dental Insurance**

28.     The Debtors also offer certain eligible Employees the option to participate in a self-insured dental insurance program (the "Dental Programs") administered by Cigna (the "Dental Insurance Provider").  The Dental Insurance Provider adjudicates and pays claims to dental providers or Employees, as applicable.  On average, the Debtors pay approximately $43,000 per month in respect of the Dental Programs, inclusive of both reimbursement payments and administrative fees owed to the Dental

Insurance Providers.  As of the Petition Date, the Debtors estimate that they owe approximately $21,700 in respect of the Dental Programs, inclusive of both reimbursement payments and administrative fees owed to the Dental Insurance Provider.

### 3)   Vision Care Program

29.     Certain of the Debtors' Employees are eligible to participate in group vision insurance plans (the "Vision Care Program"), which are offered through Vision Service Plan Insurance ("VSPI").  The Vision Care Program is fully insured, with the Debtors paying premiums for the coverage provided by the Vision Care Program on a [monthly] basis.  On average, the Debtors pay approximately $5,000 per month to VSPI in premiums for the Vision Care Program.  As of the Petition Date, the Debtors estimate that they owe approximately $13,900 in respect of respect of the Vision Care Program.

### B.   Flexible Spending Account Programs

30.     The Debtors provide full-time Employees with access to flexible spending accounts (the "FSAs"), which are administered by Discovery Benefits, Inc. ("DBI"), a third-party administrator.  The FSAs include a Health Care Spending Account ("the HCSA") and Dependent Day Care Spending Account (the "DCSA").  Each Employee may contribute pre-tax dollars to an FSA and use such funds to pay eligible expenses. Employees that elect to participate in the FSAs establish a dependent care spending account or health care spending account with DBI to keep a record of the reimbursements such Employee is entitled to, as well as the contributions such Employee has elected to withhold during the plan year.  No actual account is established; it is merely a bookkeeping entry.  Contributing Employees may apply for a consumer card with DBI that can be used for eligible expenses or submit a request for reimbursement for eligible expenses directly to DBI.  The Debtors estimate that, on a

monthly basis, they pay approximately $1,700 in respect of the FSAs, which includes
any administrative fees to DBI (the "FSA Expenses").  As of the Petition Date, the
Debtors believe that they owe approximately $2,600 on account of FSA Expenses.

### C.    Other Health Benefits

31.    The Debtors provide other benefits to U.S. Employees as well, including
an employee assistance program ("EAP") which is fully insured through Corporate
Counseling Associates, Inc. ("CCA"), and a fertility benefit plan (the "Fertility
Benefits"), which is self-insured and administered by Progyny.  The EAP is a resource
provided by CCA and offered to all Employees, which provides various levels of
support for Employees both work and/or personal related ("EAP Benefits").  The EAP
is intended to give Employees the information and support they need to manage their
daily lives—from prenatal information to adult care, from summer camps to childcare
services, from emotion well-being to health and wellness, and more.  On average, the
Debtors pay CCA approximately $6,165 per month for the EAP.  As of the Petition Date,
the Debtors estimate that they owe approximately $1,030 in respect of respect of the
EAP Benefits.

32.    The Fertility Benefits offered to eligible Employees through Progyny are
self-insured by the Debtors.  On average, the Debtors pay approximately $300 per
month in respect of the Fertility Benefits, inclusive of both reimbursement payments
and administrative fees owed to Progyny.  As of the Petition Date, the Debtors estimate
that they owe approximately $300 in respect of the Fertility Benefits, inclusive of both
reimbursement payments and administrative fees owed to the Progyny.

#### D.    Life, AD&D, and Long- and Short-Term Disability Insurance

33.    The Debtors provide Basic Life Insurance, Short-Term Disability Benefits, Long-Term Disability Benefits and AD&D (each as defined below and collectively, "Life and Disability Benefits") to Employees, which are provided by First Reliance Standard Insurance Company ("First Reliance").

##### 1)    Life and AD&D

34.    The Debtors provide Employees with life and accidental death and dismemberment insurance coverage (the "Life and AD&D Insurance Programs") through First Reliance.  The Life and AD&D Insurance Programs are fully insured, with the Debtors paying premiums for the coverage provided by Life and AD&D Insurance Programs on a monthly basis.  On average, the Debtors pay approximately $8,000 per month in premiums to Reliance for the Life and AD&D Insurance Programs.  As of the Petition Date, the Debtors estimate that they owe approximately $40,000 in respect of the Life and AD&D Insurance Programs.

##### 2)    Disability Benefits

35.    The Debtors provide Employees with short-term disability benefits (the "Short-Term Disability Benefits").  The Debtors' Short-Term Disability Benefits are fully insured and administered through First Reliance.  The Debtors also provide individual disability insurance through the Cavala Group and use Sparrow as a third party leave administrator.  Short-Term Disability begins after seven business days of an Employee's own illness that renders them unable to work for a limited period of time and provides Employees with a supplement to state-provided disability coverage, which varies by jurisdiction.  Under the Debtors' Short-Term Disability Benefits, based on years of service, regular full-time employees will receive an amount above state-provided disability coverage, such that after the state-provide insurance and the Short-

Term Disability Benefits, Employees on short-term disability leave will receive 100% of their salary. Where permissible by applicable law, Employees are required to use one week of sick time or vacation to offset the wait week for Short-Term Disability Benefits. In addition, Employees must complete at least one full year of service to be eligible. Employees with up to two years of service are eligible for a maximum of six weeks of salary continuation in conjunction with a short-term disability in a 12-month period. Employees with greater than two years of service are eligible for a maximum of 12 weeks of salary continuation in conjunction with a short-term disability in a 12-month period.

36.     Certain of the Debtors' Employees are eligible to participate in a long-term disability insurance plan that is fully insured by the Debtors through First Reliance ("Long-Term Disability Benefits" and, together with Short-Term Disability Benefits, the "Disability Benefits"). On average, the Debtors pay approximately $7,000 per month in premiums to Reliance, Cavala Group and Sparrow for the Disability Benefits. As of the Petition Date, the Debtors estimate that they owe approximately $360,000 in respect of the Disability Benefits.

**E.     401(k) and Pension Plans**

37.     The Debtors offer eligible U.S. Employees the opportunity to participate in a 401(k) plan (the "401(k) Plan"). Employees who participate in the 401(k) Plan can make payroll contributions to their 401(k) accounts up to the maximum amount permitted by the Internal Revenue Service. The 401(k) contributions for Employees are deducted automatically from their paychecks (the "401(k) Deductions").

38.     The 401(k) Plan is administered by Sentinel Benefits Group, LLC ("401(k) Plan Administrator"). The 401(k) Plan Administrator is responsible for the day-to-day administration and operation of the 401(k) Plan, including maintaining plan records,

providing forms required for plan participation, and directing payments of accounts at the appropriate time. All amounts contributed to the 401(k) Plan is held in a trust fund that is administered by Charles Schwab Trust Bank ("401(k) Trustee"), and most expenses for maintaining the 401(k) Plan ("401(k) Plan Expenses") are paid directly by the 401(k) Plan itself. The Debtors pay the 401(k) Plan Expenses on an annual basis. The Debtors estimate that they pay approximately $40,000 per year in respect of 401(k) Plan Expenses. As of the Petition Date, the Debtors estimate that they have approximately $1,700 accrued and unpaid 401(k) Plan Expenses, none of which is expected to come due during the Interim Period.

39.     The Debtors match an Employee's 401(k) contributions in a discretionary amount of up to 100% of the first 4% of salary contribution, plus 50% of the next 2% of salary contributions (the "401(k) Matching Contributions"). The 401(k) Matching Contributions are determined on a payroll period basis. The Debtors estimate that they pay approximately $370,000 per month in respect of 401(k) Matching Contributions. As of the Petition Date, the Debtors estimate that there are no accrued amounts owing in 401(k) Matching Contributions. In addition, the Debtors seek authority to pay any prepetition 401(k) Plan Expenses and to continue the 401(k) Plan in the ordinary course of business on a postpetition basis consistent with past practices.

**F.     Time Off Policies**

40.     In the ordinary course of business, the Debtors maintain several paid time off programs, including: Vacation PTO, Personal PTO, Parental Leave, Sick PTO, Holiday PTO, Annual Leave, and for jury duty and bereavement (each as defined below and collectively, the "Time Off Policies"). Time Off Policies generally are available to all full-time Employees. Depending on certain factors such as length of employment and local laws and regulations, Employees may roll unused paid time off of up to five

days into subsequent years. Only Employees in California are entitled to a cash payment for accrued and unused PTO if such Employee's employment is terminated (such payments, the "Cash Out Payments").

41.    The Debtors provide Employees with paid time off: (i) for vacation ("Vacation PTO"); (ii) to attend to personal matters ("Personal PTO"); (iii) for illness ("Sick-Day PTO"); and (iv) for scheduled holidays ("Holiday PTO", and collectively with the Vacation PTO, Personal PTO, Sick-Day PTO, the "PTO").  PTO accrues for certain Employees at specified rates up to maximum amounts based on an Employee's level, area of employment, and length of employment.

42.    The Time Off Policies do not create any material cash flow requirements beyond the Debtors' normal payroll obligations, except where an Employee's employment is terminated.  On average, the Debtors pay approximately $1.2 million annually in Cash Out Payments.  As of the Petition Date, the Debtors owe approximately $1.0 million in Cash Out Payments.

### G.    Miscellaneous Benefits

43.    From time to time, in the ordinary course of business, the Debtors provide certain Employees with various other benefits, including, among others, educational assistance, commuter benefits, and select subscriptions to certain publications (the "Miscellaneous Benefits").  The Miscellaneous Benefits are either paid directly to third-party recipients by the Debtors, or the Employee pays the expense upfront and seeks reimbursement from the Debtors in accordance with the Debtors' reimbursement policies.  The aggregate cost of the Miscellaneous Benefits is *de minimis*.[8]  Nevertheless, the Debtors respectfully request that the Court authorize the Debtors to continue to

---

[8]    The Debtors estimate that the monthly cost of the Miscellaneous Benefits is no more than $2,500.

honor any amounts that come due for the Miscellaneous Benefits in the ordinary course of business.

## III.    Non-Insider Severance Practices (Final Order Only)

44.    In the ordinary course of business, the Debtors provide severance payments to certain non-Insider, rank-and-file former employees in the event of a termination of employment by the Debtors that is not for "cause" (the "Non-Insider Severance Practices").  The Non-Insider Severance Practices are provided on a discretionary basis, and subject to the Debtors receiving a fully executed separation agreement.  Eligible former employees, upon termination, generally are entitled to receive payments equal to a certain number of weeks of their base compensation level (determined by seniority at *VICE* and years of service), which is up to two weeks of severance for every full year of service, with a maximum of 16 weeks.  The Debtors also subsidize the cost of COBRA premiums for eligible former employees for the duration of the negotiated severance period, as well as one month of outplacement services.  All severance benefits are collectively subject to the Statutory Cap.

45.    The Debtors' maintenance of the Non-Insider Severance Practices and payment of amounts thereunder are critical to maintaining Employee morale and loyalty.  Current Employees expect to rely on the Non-Insider Severance Practices if they are separated from the Debtors, and failure to maintain the Non-Insider Severance Program will result in increased instability in the Debtors' Workforce, which will undermine the Debtors' ability to stabilize and operate their businesses.

46.    Following the RIF, as of the Petition Date, the Debtors believe that approximately 56 former employees are entitled to payments pursuant to the Non-Insider Severance Practices.  The Debtors estimate that, as of the Petition Date, there is approximately $700,000 outstanding under the Non-Insider Severance Practices.

Payment of these amounts is crucial to maintaining and boosting the morale of their current Workforce, but also to attracting and retaining new employees in the ordinary course.  The Debtors respectfully request that the Court authorize the Debtors to continue to pay amounts on account of the Non-Insider Severance Practices in the ordinary course of business, consistent with past practices and pursuant to the Final Order only.

**IV.    Non-Insider Discretionary Bonuses (Final Order Only)[9]**

47.    From time to time the Debtors have historically offered and paid bonuses to certain non-insider Employees (the "Non-Insider Discretionary Bonuses").  Non-Insider Discretionary Bonuses may be paid in connection with referrals, or in connection with a line of business reaching certain target metrics, among other things.

48.    As of the Petition Date, the Debtors estimate that they owe approximately $10,000 on account of Non-Insider Discretionary Bonuses.  The Debtors respectfully request that the Court authorize the Debtors to continue to pay Non-Insider Discretionary Bonuses in the ordinary course of business, consistent with past practices, and pursuant to the Final Order only.

**Basis for Relief**

49.    The ability of the Debtors to maximize their value in these Chapter 11 Cases largely is dependent upon the retention and motivation of their Workforce, whose efforts will be critical to the success of these Chapter 11 Cases.  Absent the uninterrupted continuation of the Compensation and Benefits Programs, many individuals comprising the Workforce may be unable otherwise to meet their personal

---

[9]    The Debtors seek authority only to make postpetition payments under the Non-Insider Incentive Programs for non-insider Employees. Accordingly, the restrictions of section 503(c) of the Bankruptcy Code are not implicated in the Debtors' requested relief.

obligations, which would be expected to make them unwilling to continue providing services to the Debtors.  The disruptive impacts of resignations or lack of morale among the Workforce could have devastating effects on the Debtors' reorganization efforts. Accordingly, in order for the Debtors to retain the services of their Workforce, it is essential that the Debtors be permitted to continue to maintain their Compensation and Benefits Programs.

**I.      Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits Programs**

50.      The Compensation and Benefits Programs are a reasonably limited and competitive set of policies that are necessary to retain the skilled and motivated workforce required to operate the Debtors' businesses.  The importance of a debtor's employees to its operations has been repeatedly recognized by courts granting relief similar to the relief requested herein.  Accordingly, based on the foregoing facts and authorities, the Debtors respectfully submit that the relief requested herein should be granted.

**A.      Certain of the Employee Compensation and Benefits Programs Are Entitled to Priority Treatment**

51.      The prepetition wages and other employee benefits for which the Debtors seek authority to fund hereunder would be entitled to priority treatment under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> (A)      wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual . . . .

11 U.S.C. § 507(a)(4).  Section 507(a)(5) accords priority of payment for:

> allowed unsecured claims for contributions to an employee benefit plan –
>
> (A)   arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)   for each such plan, to the extent of –
>
> >   (i)   the number of employees covered by each such plan multiplied by $15,150; less
> >
> >   (ii)   the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan . . . .

11 U.S.C. § 507(a)(5).

52.   The Debtors believe that the prepetition claims for Compensation and Benefits Programs are entitled to priority status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, up to the applicable caps.  The Debtors, therefore, would be required to pay these claims up to the applicable caps to confirm any plan of reorganization.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries and commissions, and certain allowed unsecured claims for contribution to an employee benefit plan).  As a result, the payment of the prepetition claims under the Compensation and Benefits Programs at this time only would affect the timing, and not the amount, of such claims.  Accordingly, with respect to such prepetition claims, the relief requested herein, if granted, would only affect the timing of payments to Employees and does not have any material negative impact on recoveries for general unsecured creditors.

**B.     Applicable Bankruptcy and Non-Bankruptcy Law Requires Payment and Continuation of Certain Compensation and Benefits Programs.**

53.     The Withholding Obligations principally represent Employee earnings that government entities (in the case of taxes), Employees (in the case of voluntarily withheld amounts), and judicial authorities (in the case of involuntarily withheld amounts) have designated for deduction from Employees' paychecks or that the Debtors are required to pay to government entities on behalf of their Employees.  If the Debtors are unable to remit those amounts, Employees may face legal action and the Debtors may be burdened by inquiries and disputes concerning their failure to submit legally required payments.  *See City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Similarly, state laws require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Payment of all Workers' Compensation Program amounts is therefore crucial to the Debtors' continued operations.

54.     Most, if not all, of the Withheld Amounts constitute monies held in trust and are not property of the Debtors' bankruptcy estates.  With respect to any such amounts held in trust, the Debtors believe that they both are entitled and required to continue directing such funds to the appropriate parties.  *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in statutory trust for the federal government and, as such,

do not constitute property of the estate); *In re Calabrese*, 689 F.3d 312, 314 (3d Cir. 2012) (sale tax required by state law to be collected by debtor from third parties is a "trust fund" tax and not released by bankruptcy discharge).

## II.    Authority for the Requested Relief Herein Has Multiple Additional Statutory Bases.

55.    The relief requested herein is authorized under the Court's general equitable powers, which are codified in section 105(a) of the Bankruptcy Code.  Under section 105(a), the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01, at 105-5 (16th ed. rev. 2011).  Under section 105(a) of the Bankruptcy Code provides that the inherent powers of bankruptcy court under the "necessity of payment" doctrine can be used to authorize payment of debtors' prepetition obligations where, as here, such payment is necessary to maximize the value of the debtors' estates.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages under the necessity of payment doctrine). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition [sic] debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Id.* (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

56.    The Court also may authorize the relief requested herein under section 363(b) of the Bankruptcy Code.  Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Accordingly, under section 363, a court may authorize

a debtor to pay certain prepetition claims.  To obtain relief under section 363(b) of the
Bankruptcy Code, "the debtor must articulate some business justification, other than the
mere appeasement of major creditors."  *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175.  The
Debtors' request to pay prepetition amounts related to Compensation and Benefits
Programs easily meets that standard because the failure to do so could have a material
adverse impact on the Debtors' businesses and efforts to maximize estate value.

57.    Finally, authority for payments of prepetition obligations also may be
found in sections 1107(a) and 1108 of the Bankruptcy Code, which vest debtors in
possession with authority to continue operating their business.  At times, the need to
continue operating their businesses and the concomitant fiduciary duty to maximize
estate value only may be fulfilled through the pre-plan payment of certain unsecured
claims.  Implicit in the fiduciary duties of any debtor in possession is the obligation to
"protect and preserve the estate, including an operating business's going-concern
value." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Some courts have
noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . .
by the preplan satisfaction of a prepetition claim." *Id.*  The *CoServ* court specifically
noted that satisfaction of prepetition claims would be a valid exercise of the debtor's
fiduciary duty when the payment "is the only means to effect a substantial
enhancement of the estate." *Id.*

58.    Based upon the foregoing, Courts in this district have routinely granted
the same or similar relief as requested in this Motion.  *See, e.g.*, *In re Voyager Digital
Holdings, Inc., et al.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 8, 2022) (order
authorizing debtors to continue employee compensation and benefit programs and pay
certain prepetition obligations related thereto on a postpetition basis); *In re GTT
Commc'ns, Inc.*, Case No. 21-11880 (MEW) (Bankr. S.D.N.Y. Nov. 30, 2021) (same); *In re*

*Grupo Posadas S.A.B. de C.V.*, Case No. 21-11831 (SHL) (Bankr. Nov. 17, 2021) (same); *In re GBG USA Inc.*, Case No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 1, 2021) (same); *In re Lakeland Tours, LLC*, Case No. 20-11647 (JLG) (Bankr. S.D.N.Y. Aug. 13, 2020) (same); *In re Jason Indus. Inc.*, Case No. 20-22766 (RDD) (Bankr. S.D.N.Y. July 27, 2020) (same); *In re Frontier Commc'ns. Corp.*, Case No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020) (same).[10]

## III.   A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate.

59.    Section 362(a) of the Bankruptcy Code operates to stay "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1). The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, for limited relief from the automatic stay to permit their Employees to proceed with their claims against the Workers' Compensation Program in the appropriate judicial or administrative forum. The Debtors believe that cause exists to modify the automatic stay because staying the Employee's workers compensation claims could have a detrimental effect on the financial well-being and morale of the Employees and lead to the departure of certain Employees who are critical at this juncture. Such departures could cause a significant disruption in the Debtors' businesses to the detriment of all stakeholders. In addition, as noted above, if the Debtors fail to maintain the Workers' Compensation Program,

---

[10]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

state laws may prohibit the Debtors from operating in those states. Accordingly, the Debtors request a limited waiver of the automatic stay for purposes of allowing the Debtors' Workers' Compensation Program to proceed.

**IV.   The Court Should Authorize Banks to Honor and Process the Debtors' Payments to the Extent Authorized.**

60.   As a result of the commencement of these Chapter 11 Cases, and in the absence of an order of the Court providing otherwise, the Debtors' checks may be dishonored or rejected by banks (the "Banks") or other financial institutions. The Debtors submit that any banks or other financial institutions should be authorized to debit the Debtors' accounts in the ordinary course of business only for those items authorized by Court order. The Debtors submit that any bank or financial institution should be authorized to rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored. Any and all payments arising under or in connection with or authorized to be made by the Motion or the Order shall be subject to the interim and final orders of the Court in these Chapter 11 Cases approving the Debtors' debtor-in-possession financing facilities and the related budgets as approved by the lenders under such facilities.

**Reservation of Rights**

61.   Nothing contained herein is or should be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an admission that any particular claim is of a type specified or defined hereunder; (v) a request to assume any executory contract or unexpired lease, including without limitation in respect of the CBAs; or (vi) a waiver of the Debtors' rights under the

Bankruptcy Code or any other applicable law.  The authorization to pay amounts in respect of the Employee Wages and Benefits should not affect the Debtors' rights to contest the amount or validity of such obligations and should not be deemed to constitute the postpetition assumption or adoption of any programs, policies, or agreements described herein.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

62.      Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  As set forth in this Motion, the Debtors believe that an immediate and orderly transition into chapter 11 is critical to the viability of their operations and any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' chapter 11 process.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Request for Waiver of Bankruptcy Rules 6004(a) and 6004(h)

63.      Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any delay in paying the Employee Wages and Benefits would be detrimental to the Debtors, their estates, and creditors, as the Debtors' ability to manage and run their businesses without any unexpected or inopportune interruptions requires, in part, that the Debtors remain current with such

obligations.  For this reason and those set forth above, the Debtors submit that ample
cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule
6004(h), to the extent applicable to the Proposed Orders.

64.    To implement the foregoing immediately, the Debtors also respectfully
request a waiver of the notice requirements of Bankruptcy Rule 6004(a), to the extent
they are deemed applicable to the Proposed Orders.

## Motion Practice

65.    This Motion includes citations to the applicable rules and statutory
authorities upon which the relief requested herein is predicated and a discussion of
their application to this Motion.  Accordingly, the Debtors submit that this Motion
satisfies Local Rule 9013-1(a).

## Notice

66.    Notice of this Motion will be provided to:  (i) the Office of the United
States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006,
New York, NY 10014 (Attn:  Andrea B. Schwartz); (ii) the parties identified on the
Debtors' consolidated list of 30 largest unsecured creditors; (iii) Gibson, Dunn &
Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn:  David M. Feldman,
Michael S. Neumeister, and Tommy Scheffer), counsel to the DIP/First Lien Group;
(iv) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019 (Attn:
Scott K. Charles and Neil M. Snyder), counsel to TPG Virat Holdings 1, L.P., and Sixth
Street Virat Holdings 3, LLC; (v) Shipman & Goodwin LLP (Attn:  Marie C. Pollio),
counsel to Wilmington Trust, National Association; (vi) the Internal Revenue Service;
(vii) the Office of the United States Attorney for the Southern District of New York;
(viii) the offices of the attorneys general in the states in which the Debtors operate; and
(ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively,

the "Notice Parties").  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Previous Request

67.    No previous request for relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the

Proposed Orders granting the relief requested herein and such other and further relief

as the Court deems just and appropriate.

Dated:  May 15, 2023
        New York, New York

                                        VICE GROUP HOLDING INC., *et al.*
                                        *Debtors and Debtors in Possession*
                                        *By Their Proposed Counsel*
                                        TOGUT, SEGAL & SEGAL LLP,
                                        By:

                                        */s/ Kyle J. Ortiz*
                                        ALBERT TOGUT
                                        KYLE J. ORTIZ
                                        BRIAN F. MOORE
                                        One Penn Plaza, Suite 3335
                                        New York, New York 10119
                                        Telephone: (212) 594-5000
                                        altogut@teamtogut.com
                                        kortiz@teamtogut.com
                                        bmoore@teamtogut.com

**EXHIBIT A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. 23-10738 (__) |
| Debtors.[1] | (Joint Administration Requested) |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, REIMBURSABLE EXPENSES, AND OTHER OBLIGATIONS ARISING FROM COMPENSATION AND BENEFITS PROGRAMS AND (B) CONTINUE COMPENSATION AND BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Vice Group Holding Inc. and its debtor affiliates, as debtor and debtors in possession (collectively, the "Debtors") in the above-captioned cases for an order (this "Interim Order") authorizing, but not directing, the Debtors, *inter alia*, to (a) pay prepetition wages, salaries, reimbursable expenses, and other obligations arising from the Compensation and Benefits Programs in the ordinary course of business and (b) continue to administer the Compensation and Benefits Programs and (ii) setting the date of a final hearing and granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

---

[1]    The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice/.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11211.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Motion.

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided to the Notice Parties, and such notice having been

adequate and appropriate under the circumstances, and it appearing that no other or

further notice need be provided; and this Court having held a hearing to consider the

relief requested in the Motion; and upon the First Day Declaration; and the Court

having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and it appearing that the relief requested in the

Motion is in the best interests of the Debtors, their estates, creditors, and all parties in

interest; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized to continue and/or modify, change, or

discontinue the Compensation and Benefits Programs on a postpetition basis, in the

ordinary course of business, in accordance with the Debtors' prepetition policies and

practices, and, in the Debtors' discretion, to pay and honor prepetition amounts related

thereto, including any Employee Wages, Withholding Obligations, Payroll Processing

Fees, Reimbursable Business Expenses, Commissions, Health and Welfare Programs,

and other obligations incurred in providing the Compensation and Benefits Programs

in the ordinary course and in accordance with the Debtors' prepetition policies; *provide*d

that the Debtors are authorized, but not directed, to pay only amounts due and payable

as of the Petition Date and amounts that are or become due and payable between the

Petition Date and the date that a final order on the Motion is entered, unless otherwise

ordered by the Court.

3.      Notwithstanding anything to the contrary herein, the Debtors are authorized to pay, remit, or reimburse, as applicable, not more than the following to satisfy prepetition amounts arising out of the Compensation and Benefits Programs on an interim basis:

| Compensation and Withholdings | Interim Amount |
|---|---|
| Employee Wages | - |
| Commissions | $350,000 |
| Withholding Obligations | - |
| Payroll Processing Fees | $76,500 |
| Reimbursable Business Expenses | $35,000 |
| **Health and Welfare Programs** | **Interim Amount** |
| Medical, Dental, and Vision Insurance | $255,600 |
| Flexible Spending Account Programs | $2,600 |
| Other Health Benefits | $1,330 |
| Life and AD&D | $40,000 |
| Disability Benefits | $180,000 |
| 401(k) and Pension Plans | $2,000 |
| Time Off Policies | - |
| Miscellaneous Benefits | $2,500 |
| **Severance and Incentive Programs** | **Interim Amount** |
| Non-Insider Severance Practices | - |
| Non-Insider Discretionary Bonuses | - |
| **Total** | **$945,530** |

4.      Pursuant to section 362(d) of the Bankruptcy Code: (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to pay all prepetition amounts relating thereto in the ordinary course of business; and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived.  This modification of the automatic stay

3

pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

5.      Notwithstanding anything herein to the contrary the Debtors shall not honor any obligations under the Compensation and Benefits Programs that are due or owing to U.S. Employees that exceed the priority amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

6.      Payments on account of the Non-Insider Severance Practices and Non-Insider Discretionary Bonuses shall not be made by this Interim Order and shall be made solely pursuant to the Final Order.

7.      The Debtors and any applicable third parties are authorized to continue to allocate and distribute Deductions and Withheld Amounts to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' stated policies and prepetition practices.

8.      Nothing herein shall be deemed to (a) authorize the payment of any amounts subject to section 503(c) of the Bankruptcy Code, including any bonus or severance obligations, or (b) authorize the Debtors to cash out unpaid PTO upon termination of an Employee, unless applicable nonbankruptcy law requires such payment; *provided* that nothing in this Interim Order shall prejudice the Debtors' ability to seek approval of such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

9.      Nothing in this Interim Order should be read to constitute a prohibition on the Debtors' right to seek authority to pay any obligations arising under

4

Compensation and Benefits Programs for which relief is not sought by the Motion or to pay any amounts in the ordinary course of business consistent with the requirements of the Bankruptcy Code.

10.     Notwithstanding the relief granted herein and any actions taken pursuant hereto, nothing herein shall prohibit the Debtors from continuing or modifying, changing, or otherwise discontinuing the Compensation and Benefits Programs or implementing new programs, policies, and benefits, in the ordinary course of business during these Chapter 11 Cases, subject to applicable law, and nothing herein shall be deemed:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an admission that any particular claim is of a type specified or defined hereunder; (v) a request to assume any executory contract or unexpired lease or a postpetition assumption or adoption of any programs, policies, or agreements described herein; or (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

11.     All banks and other financial institutions are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the Compensation and Benefits Programs, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, *provided* that funds are available in the Debtors' accounts to cover the checks and fund transfers.  Banks and other financial institutions may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court and such bank

5

or financial institution shall not have any liability to any party for relying on such representation by the Debtors as provided for herein.

12.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the Compensation and Benefits Programs to the extent payment thereof is authorized pursuant to the relief granted herein.

13.     Notwithstanding the relief granted herein and any actions taken pursuant to this Interim Order, nothing herein is intended to create any rights in favor of, or enhance the status of, any claim held by any person.

14.     The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at__:__ _.m. (prevailing Eastern Time).  Any party in interest objecting to the relief sought at the Final Hearing or in the Final Order shall file and serve a written objection, which objection shall be served upon:  (i) proposed counsel for the Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn:  Kyle J. Ortiz and Brian F. Moore); (ii) proposed special counsel for the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022 (Attn.:  Fredric Sosnick) and Shearman & Sterling LLP, 2601 Olive Street, 17th Floor, Dallas, TX 75201 (Attn.: Ian E. Roberts); (ii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Andrea B. Schwartz); (iii) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn:  David M. Feldman, Michael S. Neumeister, and Tommy Scheffer), counsel to the DIP/First Lien Group; (iv) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019 (Attn:  Scott K. Charles and Neil M. Snyder), counsel to TPG Virat Holdings 1, L.P., and Sixth Street Virat Holdings 3, LLC; (v) Shipman &

6

Goodwin LLP (Attn:  Marie C. Pollio), counsel to Wilmington Trust, National

Association; and (vi) counsel to any statutory committee appointed in these Chapter 11

Cases, in each case so as to be received no later than _____, 2023, at 11:59

p.m. (prevailing Eastern Time).  If no objections to the entry of the Final Order are

timely filed, this Court may enter the Final Order without further notice or a hearing.

15.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the

contents of this Motion.

16.     Notice of the Motion, as provided therein, is deemed good and sufficient

under the circumstances, and the requirements of Bankruptcy Rule 6004(a) and the

Local Rules are satisfied by such notice.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and provisions of

this Interim Order shall be immediately effective and enforceable upon its entry.

18.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

19.     Notwithstanding any provision in the Bankruptcy Rules to the contrary,

the Debtors are not subject to any stay in the implementation, enforcement, or

realization of the relief granted in this Interim Order, and the Debtors may, in their

discretion and without further delay, take any action, and perform any act necessary to

implement the relief granted in this Interim Order.

20.     Notwithstanding anything to the contrary contained in the Motion or this

Interim Order, any payment to be made and any relief or authorization granted

hereunder shall be limited by, and shall be subject to, the requirements imposed on the

Debtors in any orders entered by this Court authorizing the Debtors to obtain debtor-in-

possession financing and authorizing the use of cash collateral (any such order, a "DIP

Order"), including, for the avoidance of doubt, the debtor-in-possession financing and

cash collateral budget. To the extent of any conflict (but solely to the extent of such

7

conflict) between the terms of this Interim Order and the terms of any DIP Order, the terms of the DIP Order will govern.

21.    This Court shall retain jurisdiction to hear and determine all matters arising from the interpretation or implementation of this Interim Order.

Dated:_____

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. 23-10738 (__) |
| Debtors.[1] | (Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) PAY
PREPETITION WAGES, SALARIES, REIMBURSABLE EXPENSES, AND
OTHER OBLIGATIONS ARISING FROM COMPENSATION AND
BENEFITS PROGRAMS AND (B) CONTINUE COMPENSATION AND
BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>)[2] of Vice Group Holding Inc. and its debtor affiliates, as debtor and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned cases for an order (this "<u>Final Order</u>") authorizing, but not directing, the Debtors, *inter alia*, to (a) pay prepetition wages, salaries, reimbursable expenses, and other obligations arising from the Compensation and Benefits Programs in the ordinary course of business and (b) continue to administer the Compensation and Benefits Programs and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

---

[1] The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice/. The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11211.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Motion.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having held a hearing to consider the relief requested in the Motion; and upon the First Day Declaration; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized to continue and/or modify, change, or discontinue the Compensation and Benefits Programs on a postpetition basis, in the ordinary course of business, in accordance with the Debtors' prepetition policies and practices, and, in the Debtors' discretion, to pay and honor amounts related thereto, including any Employee Wages, Withholding Obligations, Commissions, Payroll Processing Fees, Reimbursable Business Expenses, Commissions, Health and Welfare Programs, Non-Insider Severance Practices, Non-Insider Discretionary Bonuses, and other obligations incurred in providing the Compensation and Benefits Programs in the ordinary course and in accordance with the Debtors' policies, irrespective of whether such obligations arose prepetition or postpetition.

3.      Notwithstanding anything to the contrary herein, the Debtors are authorized to pay, remit, or reimburse, as applicable, not more than the following to

2

satisfy prepetition amounts arising out of the Compensation and Benefits Programs on

a final basis:

| Compensation and Withholdings | Final Amount |
|---|---|
| Employee Wages | - |
| Commissions | $550,000 |
| Withholding Obligations | - |
| Payroll Processing Fees | $1,286,000 |
| Reimbursable Business Expenses | $70,000 |
| **Health and Welfare Programs** | **Final Amount** |
| Medical, Dental, and Vision Insurance | $255,600 |
| Flexible Spending Account Programs | $2,600 |
| Other Health Benefits | $1,330 |
| Life and AD&D | $40,000 |
| Disability Benefits | $360,000 |
| 401(k) and Pension Plans | $2,000 |
| Time Off Policies | $1,038,400 |
| Miscellaneous Benefits | $2,500 |
| **Severance and Incentive Programs** | **Final Amount** |
| Non-Insider Severance Practices | $700,000 |
| Non-Insider Discretionary Bonuses | $10,000 |
| **Total** | **$4,318,430** |

4.     Notwithstanding anything to the contrary herein, no payments made to

Employees on account of prepetition amounts owed pursuant to this Final Order,

including any payments on account of the Non-Insider Severance Practices, shall exceed

the Statutory Cap.  To the extent the Debtors seek to make any payments to Employees

in excess of the Statutory Cap they will do so by separate motion and order of this

Court.

5.     The Debtors shall not make any non-ordinary course bonus, incentive, or

severance payments to their current or former Employees or any Insiders without

3

further order of this Court.  For the avoidance of doubt, no bonus, incentive, or

severance payments shall be made to any Insider without further order of this Court.

Nothing in the Motion or this Final Order shall constitute a determination by the Court

as to whether any individual seeking payment pursuant to this Final Order is or is not

an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  Nothing

in the Motion or this Final Order should be construed as approving any transfer

pursuant to section 503(c) of the Bankruptcy Code, and a separate motion will be filed

for any requests that are governed by section 503(c) of the Bankruptcy Code; *provided*

that nothing herein shall prejudice the Debtors' ability to seek approval for such relief

pursuant to section 503(c) of the Bankruptcy Code at a later time.

6.      Notwithstanding anything to the contrary herein, the Debtors are

authorized, but not directed, to pay amounts that come due in accordance with the

Non-Insider Severance Practices and Non-Insider Discretionary Bonuses in the ordinary

course, in accordance with prepetition practices; *provided* that no payments shall be

made to Employees in excess of the Statutory Cap except by separate motion and order

of this Court.

7.      The Debtors and any applicable third parties are authorized to continue to

allocate and distribute Deductions and Withheld Amounts to the appropriate third-

party recipients or taxing authorities in accordance with the Debtors' stated policies and

prepetition practices.

8.      Pursuant to section 362(d) of the Bankruptcy Code: (a) Employees are

authorized to proceed with their workers' compensation claims in the appropriate

judicial or administrative forum under the Workers' Compensation Program, and the

Debtors are authorized to pay all amounts relating thereto in the ordinary course of

business; and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with

respect to clause (a) are waived.  This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

9.      Nothing in this Final Order should be read to constitute a prohibition on the Debtors' right to seek authority to pay any amounts under the Compensation or Benefits Programs for which relief is not sought by the Motion or to pay any amounts in the ordinary course of business consistent with the requirements of the Bankruptcy Code.

10.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits Programs obligations.

11.     Notwithstanding the relief granted herein and any actions taken pursuant hereto, nothing herein shall prohibit the Debtors from continuing or modifying, changing, or otherwise discontinuing the Compensation and Benefits Programs or implementing new programs, policies, and benefits, in the ordinary course of business during these Chapter 11 Cases, subject to applicable law, and nothing herein shall be deemed: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an admission that any particular claim is of a type specified or defined hereunder; (v) a request to assume any executory contract or unexpired lease or a postpetition assumption or adoption of any programs, policies, or

5

agreements described herein; or (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

12.     All banks and other financial institutions are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the Compensation and Benefits Programs, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, *provided* that funds are available in the Debtors' accounts to cover the checks and fund transfers.  Banks and other financial institutions may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court and such bank or financial institution shall not have any liability to any party for relying on such representation by the Debtors as provided for herein.

13.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the Employee Compensation and Benefits Programs to the extent payment thereof is authorized pursuant to the relief granted herein.

14.     Notwithstanding the relief granted herein and any actions taken pursuant to this Final Order, nothing herein is intended to create any rights in favor of, or enhance the status of, any claim held by any person.

15.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of this Motion.

16.     Notice of the Motion, as provided therein, is deemed good and sufficient under the circumstances, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and provisions of this Final Order shall be immediately effective and enforceable upon its entry.

18.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

19.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Final Order, and the Debtors may, in their discretion and without further delay, take any action, and perform any act necessary to implement the relief granted in this Final Order.

20.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made and any relief or authorization granted hereunder shall be limited by, and shall be subject to, the requirements imposed on the Debtors in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and authorizing the use of cash collateral (any such order, a "DIP Order"), including, for the avoidance of doubt, the debtor-in-possession financing and cash collateral budget. To the extent of any conflict (but solely to the extent of such conflict) between the terms of this Interim Order and the terms of any DIP Order, the terms of the DIP Order will govern.

21.     This Court shall retain jurisdiction to hear and determine all matters arising from the interpretation or implementation of this Final Order.

Dated:_____        _____
                                  UNITED STATES BANKRUPTCY JUDGE

7