**TOGUT, SEGAL & SEGAL LLP**
Albert Togut
Kyle J. Ortiz
Brian F. Moore
One Penn Plaza, Suite 3335
New York, NY 10119
Phone: (212) 594-5000
Email: altogut@teamtogut.com
          kortiz@teamtogut.com
          bmoore@teamtogut.com

*Proposed Counsel to the Debtors and Debtors
in Possession*

**SHEARMAN & STERLING LLP**
Fredric Sosnick
William S. Holste
Jacob S. Mezei
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4000
Email: fsosnick@shearman.com
          dwilliam.holste@shearman.com
          jacob.mezei@shearman.com

**SHEARMAN & STERLING LLP**
Ian E. Roberts (*pro hac vice* pending)
2601 Olive Street, 17th Floor
Dallas, TX 75201
Phone: (214) 271-5777
Email: ian.roberts@shearman.com

*Proposed Special Counsel to the Debtors and Debtors
in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>VICE GROUP HOLDING INC., *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-10738 (__)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN
ORDER (I) PROHIBITING UTILITY PROVIDERS FROM DISCONTINUING,
ALTERING, OR REFUSING SERVICE, (II) APPROVING PROPOSED FORM
OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS,
(III) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS
FOR ADDITIONAL ASSURANCE, AND (IV) GRANTING RELATED RELIEF**

Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in

possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the

---

[1]    The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice. The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

"Chapter 11 Cases"), respectfully represent in support of this motion (the "Motion") as follows:

## Relief Requested

1.      The Debtors request entry of an order in the form attached hereto as **Exhibit A** (the "Proposed Order") (i) prohibiting the Utility Providers and Consenting Foreign Utility Providers (as defined herein) from discontinuing, altering, or refusing service, (ii) approving the proposed form of adequate assurance of payment to the Utility Providers and Consenting Foreign Utility Providers, (iii) establishing procedures for resolving requests for additional adequate assurance of payment, and (iv) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.) (the "Amended Standing Order").  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for relief are sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

3.      This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## **Background**

4.     On the date hereof (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court, and contemporaneously herewith have requested joint administration of the Chapter 11 Cases for procedural purposes only, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

5.     From their humble beginnings as a niche magazine, the Debtors and their non-Debtor affiliates (collectively, "_VICE_") have grown into a global media company that focuses on content centered around news and culture, serving a largely global youth audience.  Today, _VICE_ is a global, multiplatform media company that has a powerful brand, diversified financial profile, premium content, and rich engagement with its youth-targeted audience.  With production hubs around the world, _VICE_ creates thousands of pieces of content a week globally, including editorial, digital and social video, experiential events, commercials, music videos, scripted and unscripted television, feature documentaries, and movies.  Additional facts relating to the Debtors' businesses and capital structure, and the commencement of these Chapter 11 Cases, are set forth in the _Declaration of Frank A. Pometti in Support of the Debtors' Chapter 11 Petitions and First Day Relief_ (the "<u>First Day Declaration</u>"), which was filed contemporaneously with this Motion and is incorporated herein by reference.[2]

---

[2]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed

## Utility Services Utilized by the Debtors

6.      In the ordinary course operation of the Debtors' businesses, the Debtors obtain water, sewer service, telecommunications, electricity, waste disposal, natural gas, and other similar services (collectively, the "Utility Services") from a number of utility providers (collectively, the "Utility Providers").[3]  A list of the Utility Providers that directly provide Utility Services to the Debtors,[4] together with the average monthly payment for each Utility Provider (each, an "Individual Utility Monthly Payment Average Amount"), and where available, the Debtors' account number with each Utility Provider is attached hereto as **Exhibit B** (the "Utility Provider List").[5]

7.      The Debtors' businesses rely on the uninterrupted receipt of Utility Services for their operations.  If a Utility Provider were to refuse or discontinue service, even for a brief period, the Debtors' business operations could be disrupted.  Such a disruption could jeopardize the Debtors' ability to administer the Chapter 11 Cases and adversely affect not only their production of revenue generating content, but also their employee relations and morale, which, in turn, would negatively affect the Debtors'

---

to such terms in the First Day Declaration.

[3]      For the purposes of this Motion, the Debtors have not included as Utility Providers those providers whose services are provided exclusively internationally (each a "Foreign Utility Provider"). As discussed more fully below, the Debtors are proposing a procedure whereby Foreign Utility Providers can consent to the jurisdiction of this Court and receive the treatment proposed herein for Utility Providers.

[4]      In certain instances, Utility Services that the Debtors receive are billed directly to the Debtors' landlords and passed through to the Debtors as part of the Debtors' lease payments in accordance with the applicable lease agreements. For the avoidance of doubt, the relief requested herein is with respect to all Utility Providers supplying Utility Services utilized by the Debtors, including those that indirectly supply services through the applicable landlords.

[5]      The Debtors have endeavored to identify all of the Utility Providers and list them on **Exhibit B** hereto.  However, inadvertent omissions may have occurred, and the omission from **Exhibit B** hereto of any entity providing Utility Services to the Debtors is not an admission, waiver, acknowledgement, or consent that section 366 of the Bankruptcy Code does not apply to such entity.  In addition, the Debtors reserve the right to assert that any of the entities now or hereafter included on the Utility Provider List are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code.

financial and operational condition to the detriment of the Debtors' estates. Accordingly, it is essential that the Utility Services continue uninterrupted during the Chapter 11 Cases.

8.      In the aggregate, the Debtors paid approximately $170,000 per month during the 2022 calendar year for Utility Services.[6]  The Debtors estimate that approximately $650,000 of invoices on account of prepetition Utility Services have accrued and remain payable. The Debtors estimate that the cost for Utility Services that will need to be paid by the Debtors to the Utility Providers during the next 30 days will total approximately $170,000.

### The Proposed Adequate Assurance and Adequate Assurance Procedures

9.      The Debtors intend to pay post-petition obligations to the Utility Providers, and, as applicable to their landlords and other third parties who make such payments directly to the Utility Providers, in a timely manner and in the ordinary course of business on a post-petition basis.  The Debtors believe that they will have sufficient funds to pay amounts described in the Motion by virtue of anticipated access to post-petition financing and cash collateral.

10.     As further described in the procedures set forth below, to provide additional assurance of payment for Utility Services, the Debtors propose to deposit $84,250 (the "Aggregate Adequate Assurance Deposit") into a segregated account (the "Adequate Assurance Account"), within twenty days after the Petition Date.  The amount of the Aggregate Adequate Assurance Deposit is equal to the aggregate of all Individual Utility Monthly Payment Average Amounts.

---

[6]    The average amount is calculated based upon calendar year 2022.

11.     The Debtors will hold the Adequate Assurance Account for the benefit of the Utility Providers during the pendency of these Chapter 11 Cases.  The Debtors respectfully request that the portion of the Aggregate Adequate Assurance Deposit attributable to each Utility Provider will be returned, without further order of the Court to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable non-bankruptcy law following the Debtors' termination of Utility Services from such Utility Provider and (ii) the effective date of any chapter 11 plan confirmed in these Chapter 11 Cases.

**I.**     **Proposed Adequate Assurance Procedures**

12.     The Debtors submit that maintaining the Aggregate Adequate Assurance Deposit in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (together, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance for the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.  Nevertheless, to address the possibility that a Utility Provider may want to request additional adequate assurance of payment, the Debtors propose to establish the following procedures (the "Adequate Assurance Procedures"):

a.  Within five business days after the entry of the Proposed Order, the Debtors will send (by first class mail or electronic mail) a copy of the final order, including the Adequate Assurance Procedures, to the Utility Providers on the Utility Provider List.

b.  Subject to paragraphs (f)–(i) herein, the Debtors will deposit the Aggregate Adequate Assurance Deposit, in the amount of $84,250 in the Adequate Assurance Account within 30 days after the Petition Date.

c.  Each Utility Provider shall be entitled to the funds in the Adequate Assurance Account in the amount specified for its respective Individual Utility Monthly Payment Average Amount.

d.  If an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to: (i) the Debtors, 49 South

6

2nd Street, Brooklyn, NY  11249 (Attn: Maria Krasnikow Harris); (ii) proposed bankruptcy counsel to the Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn: Kyle J. Ortiz); (iii) proposed special counsel to the debtors and debtors in possession Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY  10022 (Attn:  Fredric Sosnick and Ian Roberts); (iv) counsel to the DIP/First Lien Group, Gibson Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn:  David M. Feldman, Michael S. Neumeister, and Tommy Scheffer); (v) counsel for any committee appointed in these Chapter 11 Cases; and (vi) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:  Andrea B. Schwartz) (collectively, the "Request Notice Parties").  The Debtors, with the consent of the DIP/First Lien Group, shall honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors, DIP/First Lien Group, and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court.  To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

e.   The portion of the Aggregate Adequate Assurance Deposit attributable to each Utility Provider will be returned to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable non-bankruptcy law following the Debtors' termination of Utility Services from such Utility Provider and (ii) the effective date of any chapter 11 plan confirmed in these Chapter 11 Cases.

f.   Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Request Notice Parties.

g.   Any Additional Assurance Request must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include information regarding any security deposits paid by the Debtors; (iv) provide evidence that the Debtors have a direct obligation to the Utility Provider; and (v) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

h.   If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate

Assurance. Notwithstanding the foregoing, an Additional Assurance Request may be made at any time.

i. Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall have 21 days from the receipt of the Additional Assurance Request (the "Resolution Period") to negotiate with the Utility Provider, counsel to the DIP/First Lien Group, and counsel to the Committee to resolve the Utility Provider's Additional Assurance Request.

j. Without further order of the Court, the Debtors may, upon notice to the Request Notice Parties and with the consent of the DIP/First Lien Group, enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtors, after notice to the Request Notice Parties, determine that the Additional Assurance Request is reasonable.

k. If the Debtors and the DIP/First Lien Group determine, after notice to the Request Notice Parties, that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, the Debtors, counsel to the DIP/First Lien Group, counsel to the Committee, or the Utility Provider, during or immediately after the Resolution Period, may request a hearing (a "Determination Hearing") before the Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

l. Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider will be prohibited from altering, refusing, or discontinuing service to the Debtors on account of: (i) unpaid charges for prepetition services; (ii) a pending Additional Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

m. If a Foreign Utility Provider wishes to receive Adequate Assurance pursuant to section 366 of the Bankruptcy Code, such Foreign Utility Provider must provide its irrevocable written consent to the jurisdiction of the Court and to the applicability of section 366 of the Bankruptcy Code (in form and substance acceptable to the Debtors and DIP/First Lien Group), so that it is received by the Request Notice Parties. Within seven (7) United States business days of the receipt of such consent or such other period as the Debtors, DIP/First Lien Group, and the relevant Foreign Utility Provider may agree, the Debtors will deposit into the Adequate Assurance Account a sum amounting to 50% of the Debtors' average monthly cost of the services provided by the consenting Foreign Utility Provider over the preceding 12 months (any such provider, a "Consenting Foreign Utility Provider"), or such other amount as agreed to by the Debtors, DIP/First Lien Group, and such Consenting Foreign Utility Provider.

n. All funds deposited into the Adequate Assurance Account shall be released to the Debtors following the date upon which a chapter 11 plan is confirmed in these Chapter 11 Cases. Additionally, any additional adequate assurance of future payment in a form and amount acceptable to the Debtors and DIP/First Lien Group ("Additional Adequate Assurance Security") shall be returned to the Debtors by no later than earlier of five business days following the date upon which (i) a chapter 11 plan is confirmed in these Chapter 11 Cases or (ii) the Debtors provide notice to a Utility Provider or Consenting Foreign Utility Provider that the services it provided to the Debtors no longer will be needed, *provided* that in the case of clause (ii), the Debtors shall have paid such Utility Provider or Consenting Foreign Utility Provider in full for any outstanding post-petition services or such outstanding amounts may be satisfied by reducing the Additional Adequate Assurance Security.

13. The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance while at the same time allowing the Debtors to administer their chapter 11 estates uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance, including Individual Utility Monthly Payment Average Amount with respect to the Utility Provider, by serving an Additional Assurance Request upon the Request Notice Parties. If the Debtors receive an Additional Assurance Request, they may resolve any disputed amounts by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtors may seek Court resolution of the Additional Assurance Request.

14. Absent compliance with the Adequate Assurance Procedures, the Debtors request that the Utility Providers, including subsequently added Utility Providers and Consenting Foreign Utility Providers, be forbidden from altering, refusing, or discontinuing service or requiring additional assurance of payment other than the Proposed Adequate Assurance, pending entry of a final order approving the relief

requested herein.  Moreover, the Debtors request that any landlord that pays directly

for Utility Services for the benefit of the Debtors pursuant to a nonresidential real

property lease must continue paying for such Utility Services in the ordinary course of

business and may not cease, reduce, delay, or otherwise interfere with the payment or

delivery of such Utility Services, regardless of any nonpayment, deferral, or waiver of

rent, or any defaults with respect to the applicable lease; provided that a landlord may

cease payments on account of Utility Services following the effective date of the

rejection of the applicable lease pursuant to section 365 of the Bankruptcy Code, if any.

## II.    <u>Subsequently Identified Utility Providers</u>

15.    To the extent the Debtors identify new or additional Utility Providers or

discontinue services from existing Utility Providers, the Debtors seek authority to add

or remove parties from the Utility Provider List.  For any Utility Provider that is

subsequently added to the Utility Provider List, the Debtors will serve such Utility

Provider with a copy of the Court's order regarding Utility Services, including the

Adequate Assurance Procedures, and increase the Aggregate Adequate Assurance

Deposit by an amount equal to one-half of the Debtors' average monthly cost of services

from the subsequently added Utility Provider, net of any prepetition deposits, letters of

credit, or surety bonds already provided to the Utility Provider in the ordinary course

of business.  The Debtors request that the terms of such Utility Services order and the

Adequate Assurance Procedures apply to any subsequently identified Utility Provider

to the same extent as if the Utility Provider was listed on the original Utility Provider

List attached hereto.  For any Utility Provider that is subsequently removed from the

Utility Provider List, the Debtors request the authority to decrease the Aggregate

Adequate Assurance Deposit by an amount equal to one-half of the Debtors' average

monthly cost of services from such removed Utility Provider.

**Basis for Relief**

16.    Section 366 of the Bankruptcy Code, which protects a debtor against the
immediate termination or alteration of utility services after the petition date, provides
the debtor thirty days following the petition date to provide "adequate assurance" of
payment for post-petition services in a form "satisfactory" to the utility provider before
the utility provider may alter, refuse, or discontinue service.  11 U.S.C. § 366(c)(2).  For
purposes of section 366 of the Bankruptcy Code, "assurance of payment" can be
provided in the form of a cash deposit, letter of credit, certificate of deposit, surety
bond, prepayment, or other mutually agreed form of security.  11 U.S.C. § 366(c)(1).
Courts have recognized that "adequate assurance" of payment need not constitute an
absolute guarantee of the debtors' ability to pay.  *See, e.g., In re Great Atl. & Pac. Tea Co.*,
No. 11-CV-1338, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that
"[c]ourts will approve an amount that is adequate enough to insure against
unreasonable risk of nonpayment, but are not required to give the equivalent of a
guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section
366(b) requires . . . 'adequate assurance' of payment.  The statute does not require an
absolute guarantee of payment.") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co.
v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

17.    When considering whether a given assurance of payment is "adequate,"
courts examine the totality of the circumstances to make an informed decision as to
whether the utility provider will be subject to an unreasonable risk of nonpayment.  *See,
e.g., Mass. Elec. Co. v. Keydata Corp.* (*In re Keydata Corp.*), 12 B.R. 156, 158 (B.A.P. 1st Cir.
1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Sols., Inc.*,
280 B.R. 63, 82– 83 (Bankr. S.D.N.Y. 2002).  In determining the level of adequate
assurance, however, "a bankruptcy court must focus upon the need of the utility for

assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. Power & Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also Great Atl. & Pac.*, 2011 WL 5546954, at *5–6 (holding that no additional adequate assurance deposit was necessary where such deposit would impose an unreasonable burden on reorganizing debtors). Accordingly, demands by a utility provider for a guarantee of payment should be refused when a debtor's specific circumstances already afford adequate assurance of payment.

18. The Adequate Assurance Procedures provided here are designed to provide the Utility Providers with adequate assurance against the risk of nonpayment for future services they provide, as the Aggregate Adequate Assurance Deposit and the Debtors' expected ongoing ability to meet obligations as they come due in the ordinary course provide assurance that the Debtors will pay their future obligations to the Utility Providers. In contrast, if Utility Providers were to terminate the Utility Services, it could render the Debtors unable to operate their business to the detriment of all stakeholders. *See In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

19. It is beyond dispute that bankruptcy courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of §366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order"). Absent the establishment of

reasonable procedures, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id*. Here, any rights the Utility Providers believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are fully preserved under the Adequate Assurance Procedures because the Utility Providers may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id*. at *5–6. The framework established by implementation of the Adequate Assurance Procedures, however, will avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id*. at *5.

20.     The Debtors propose to protect their utility service providers further by establishing the Adequate Assurance Procedures described above, by which any Utility Provider can request additional adequate assurance and by which Foreign Utility Providers can receive Adequate Assurance in exchange for consenting to the jurisdiction of this Court. In the event that such a Utility Provider can demonstrate facts and circumstances that merit additional protection beyond the Proposed Adequate Assurance described herein, the Debtors will provide such additional adequate assurance that the Debtors deem reasonable. Although the Debtors do not believe that any Utility Provider should require assurance of payment beyond that afforded by the Proposed Adequate Assurance, the centralized Adequate Assurance Procedures ensure that any Additional Assurance Requests are addressed in a timely fashion by the Debtors without the submission of piecemeal, varied requests to the Court over time.

21.     The establishment of the Adequate Assurance Procedures also fall within the Court's equitable powers under section 105(a) of the Bankruptcy Code. Under

section 105(a), a bankruptcy court has the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366.

22.    The Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, and the Debtors respectfully request that the Court grant the relief requested herein.  Similar procedures have been approved by courts in this district.  *See, e.g.*, *In re Times Square JV LLC*, Case No. 22-11715 (JPM) (Bankr. S.D.N.Y. Jan. 19, 2023) (approving payment of a deposit into a segregated account as adequate assurance to utility providers); *In re Lumileds Holding B.V.*, Case No. 22-11155 (LGB) (Bankr. S.D.N.Y. Sept. 21, 2022) (same); *In re Celsius Networks LLC*, No. 22-10965 (MG) (Bankr. S.D.N.Y. Aug. 17, 2022) (same); *In re GTT Communications, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y. Nov. 30, 2021) (same); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020) (same); *In re Frontier Commc'ns. Corp.*, No. 20-22577 (RDD) (Bankr. S.D.N.Y. May 26, 2020) (same); *In re Deluxe Entm't Servs Grp. Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019); *In re Barneys New York Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y., Aug. 22, 2019) (same).

23.    For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and enter the Proposed Order.

**Reservation of Rights**

24.    Nothing contained herein is or should be construed as:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to

14

dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an admission that any particular claim is of a type specified or defined hereunder; (v) a request to assume any executory contract or unexpired lease; or (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

25.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  As set forth in this Motion, the Debtors believe that an immediate and orderly transition into chapter 11 is critical to the viability of their operations and any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' chapter 11 process.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## Request for Waiver of Bankruptcy Rules 6004(a) and 6004(h)

26.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any delay in providing the Adequate Assurance, setting up the Assurance Procedures and obtaining the other relief requested herein could disrupt Utility Services and would be detrimental to the Debtors, their estates, and their creditors.  For this reason and those set forth above, the

Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Order.

27.    To implement the foregoing relief requested in this Motion immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) and the Local Rules, to the extent they are deemed applicable to the Proposed Order.

## Motion Practice

28.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion.  Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

29.    Notice of this Motion will be provided to:  (i) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:  Andrea B. Schwartz); (ii) the parties identified on the Debtors' consolidated list of 30 largest unsecured creditors; (iii) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn:  David M. Feldman, Michael S. Neumeister, and Tommy Scheffer), counsel to the DIP/First Lien Group; (iv) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019 (Attn:  Scott K. Charles and Neil M. Snyder), counsel to TPG Virat Holdings 1, L.P., and Sixth Street Virat Holdings 3, LLC; (v) Shipman & Goodwin LLP (Attn:  Marie C. Pollio), counsel to Wilmington Trust, National Association; (vi) the Internal Revenue Service; (vii) the Office of the United States Attorney for the Southern District of New York; (viii) the offices of the attorneys general in the states in which the Debtors operate; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the

"<u>Notice Parties</u>").  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

**<u>No Previous Request</u>**

30.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and such other and further relief as the Court deems just and appropriate.

Dated:  May 15, 2023
        New York, New York

<div style="margin-left:45%">

VICE GROUP HOLDING INC., *et al.*,
*Debtors and Debtors in Possession*
*By Their Proposed Counsel*
TOGUT, SEGAL & SEGAL LLP,
By:

*/s/ Kyle J. Ortiz*
ALBERT TOGUT
KYLE J. ORTIZ
BRIAN F. MOORE
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
altogut@teamtogut.com
kortiz@teamtogut.com
bmoore@teamtogut.com

</div>

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. 23-10738 (__) |
| Debtors.[1] | (Joint Administration Requested) |

**ORDER (I) PROHIBITING UTILITY PROVIDERS FROM DISCONTINUING,
ALTERING, OR REFUSING SERVICE, (II) APPROVING PROPOSED FORM OF
ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS, (III)
ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS
FOR ADDITIONAL ASSURANCE, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this

"Order"), pursuant to sections 105(a) and 366 of the Bankruptcy Code, (i) prohibiting

the Utility Providers and Consenting Foreign Utility Providers (as defined herein) from

discontinuing, altering, or refusing service, (ii) approving the proposed form of

adequate assurance of payment to the Utility Providers and Consenting Foreign Utility

Providers, (iii) establishing procedures for resolving requests for additional adequate

assurance of payment, and (iv) granting related relief, all as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing

Order; and consideration of the Motion and the requested relief being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28

---

[1]    The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

U.S.C. §§ 1408 and 1409; and it appearing that this Court may enter a final order

consistent with Article III of the United States Constitution; and due and proper notice

of the Motion having been provided to the Notice Parties, and such notice having been

adequate and appropriate under the circumstances, and it appearing that no other or

further notice need be provided; and this Court having held a hearing to consider the

relief requested in the Motion; and upon the First Day Declaration; and the Court

having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and it appearing that the relief requested in the

Motion is in the best interests of the Debtors, their estates, creditors, and all parties in

interest; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized to cause the Aggregate Adequate Assurance

Deposit to be held in a segregated account during the pendency of these Chapter 11

Cases.

3.      The Aggregate Adequate Assurance Deposit, together with the Debtors'

ability to pay for future Utility Services in the ordinary course of business subject to the

Adequate Assurance Procedures, shall constitute adequate assurance of future payment

as required by section 366 of the Bankruptcy Code.

4.      Subject to the Adequate Assurance Procedures set forth below, all Utility

Providers and Consenting Foreign Utility Providers are prohibited from altering,

refusing, or discontinuing services to, or discriminating against, the Debtors on account

of the commencement of these Chapter 11 Cases or any unpaid prepetition charges.

5.      The following Adequate Assurance Procedures hereby are approved:

a. Within five business days after the entry of the Order, the Debtors will send (by first class mail or electronic mail) a copy of the Order, including the Adequate Assurance Procedures, to the Utility Providers on the Utility Provider List.

b. Subject to paragraphs (f)–(i) herein, the Debtors will deposit the Aggregate Adequate Assurance Deposit, in the amount of $84,250 in the Adequate Assurance Account within 30 days after the Petition Date.

c. Each Utility Provider shall be entitled to the funds in the Adequate Assurance Account in the amount specified for its respective Individual Utility Monthly Payment Average Amount.

d. If an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to: (i) the Debtors, 49 South 2nd Street, Brooklyn, NY 11249 (Attn: Maria Krasnikow Harris); (ii) proposed bankruptcy counsel to the Debtors, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn: Kyle J. Ortiz); (iii) proposed special counsel to the debtors and debtors in possession Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022 (Attn: Fredric Sosnick and Ian Roberts); (iv) counsel for any committee appointed in these Chapter 11 Cases; ); (v) counsel for any committee appointed in these Chapter 11 Cases; (vi) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Andrea B. Schwartz) (collectively, the "Request Notice Parties"). The Debtors, with the consent of the DIP/First Lien Group, shall honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors, DIP/First Lien Group, and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court. To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

e. The portion of the Aggregate Adequate Assurance Deposit attributable to each Utility Provider will be returned to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable non-bankruptcy law following the Debtors' termination of Utility Services from such Utility Provider and (ii) the effective date of any chapter 11 plan confirmed in these Chapter 11 Cases.

f. Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Request Notice Parties.

3

g.  Any Additional Assurance Request must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include information regarding any security deposits paid by the Debtors; (iv) provide evidence that the Debtors have a direct obligation to the Utility Provider; and (v) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment

h.  If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.  Notwithstanding the foregoing, an Additional Assurance Request may be made at any time.

i.  Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall have 21 days from the receipt of the Additional Assurance Request (the "Resolution Period") to negotiate with the Utility Provider, counsel to the DIP/First Lien Group, and counsel to the Committee to resolve the Utility Provider's Additional Assurance Request.

j.  Without further order of the Court, the Debtors may, upon notice to the Request Notice Parties and with the consent of the DIP/First Lien Group, enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtors, after notice to the Request Notice Parties, determine that the Additional Assurance Request is reasonable.

k.  If the Debtors and the DIP/First Lien Group determine, after notice to the Request Notice Parties, that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, the Debtors, counsel to the DIP/First Lien Group, counsel to the Committee, or the Utility Provider, during or immediately after the Resolution Period, may request a hearing (a "Determination Hearing") before the Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

l.  Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider will be prohibited from altering, refusing, or discontinuing service to the Debtors on account of: (i) unpaid charges for prepetition services; (ii) a pending Additional Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

m. If a Foreign Utility Provider wishes to receive Adequate Assurance pursuant to section 366 of the Bankruptcy Code, such Foreign Utility

Provider must provide its irrevocable written consent to the jurisdiction of the Court and to the applicability of section 366 of the Bankruptcy Code (in form and substance acceptable to the Debtors and DIP/First Lien Group), so that it is received by the Request Notice Parties. Within seven (7) United States business days of the receipt of such consent or such other period as the Debtors, DIP/First Lien Group, and the relevant Foreign Utility Provider may agree, the Debtors will deposit into the Adequate Assurance Account a sum amounting to 50% of the Debtors' average monthly cost of the services provided by the consenting Foreign Utility Provider over the preceding 12 months (any such provider, a "Consenting Foreign Utility Provider"), or such other amount as agreed to by the Debtors and such Consenting Foreign Utility Provider.

n.  All funds deposited into the Adequate Assurance Account shall be released to the Debtors following the date upon which a chapter 11 plan is confirmed in these Chapter 11 Cases. Additionally, any additional adequate assurance of future payment in a form and amount acceptable to the Debtors and DIP/First Lien Group ("Additional Adequate Assurance Security") shall be returned to the Debtors by no later than earlier of five business days following the date upon which (i) a chapter 11 plan is confirmed in these Chapter 11 Cases or (ii) the Debtors provide notice to a Utility Provider or Consenting Foreign Utility Provider that the services it provided to the Debtors no longer will be needed, *provided* that in the case of clause (ii), the Debtors shall have paid such Utility Provider or Consenting Foreign Utility Provider in full for any outstanding post-petition services or such outstanding amounts may be satisfied by reducing the Additional Adequate Assurance Security.

6.      The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

7.      The Debtors are authorized to add or remove parties from the Utility Provider List; provided, however, that the Debtors shall provide notice of any such addition or removal to the Request Notice Parties; *provided, further*, that, if a Utility Provider is removed from the Utility Provider List, the Debtors shall provide the applicable Utility Provider with seven days' notice thereof and the opportunity to respond to such removal. To the extent that there is any dispute as to the post-petition amounts owed to a Utility Provider, such Utility Provider shall not be removed from the Utility Provider List, and no funds shall be removed from the Adequate Assurance Account, until such dispute has been resolved. For any Utility Provider that is

subsequently added to the Utility Provider List, the Debtors shall serve such Utility

Provider a copy of this Order, including the Adequate Assurance Procedures, and

provide such Utility Provider two weeks' notice to object to the inclusion of such Utility

Provider on the Utility Provider List.  The terms of this Order and the Adequate

Assurance Procedures shall apply to any subsequently identified Utility Provider.

8.     Any landlord that pays directly for Utility Services for the benefit of the

Debtors pursuant to a nonresidential real property lease must continue paying for such

Utility Services in the ordinary course of business and may not cease, reduce, delay, or

otherwise interfere with the payment or delivery of such Utility Services, regardless of

any nonpayment, deferral, or waiver of rent, or any defaults with respect to the

applicable lease; provided that a landlord may cease payments on account of Utility

Services following the effective date of the rejection of the applicable lease pursuant to

section 365 of the Bankruptcy Code, if any.

9.     Nothing in this Order (i) is intended or shall be deemed to constitute an

assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an

admission as to the validity of any claim against the Debtors and their estates, (ii) shall

impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates

with respect to the validity, priority, or amount of any claim against the Debtors and

their estates, (iii) shall impair, prejudice, waive, or otherwise affect the rights of the

Debtors and their estate with respect to any and all claims or causes of action against

any Utility Provider or Consenting Foreign Utility Provider, (iv) shall impair any Utility

Provider's or Consenting Foreign Utility Provider's rights with regard to any claims, or

(v) shall be construed as a promise to pay a claim.

10.    Nothing in this Order is intended or shall be deemed to constitute a

finding that any entity is or is not a Utility Provider hereunder or under section 366 of

the Bankruptcy Code, whether or not such entity is listed on the Utility Provider List or is served with a copy of this Order or the Motion.

11.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

12.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

13.     Notice of the Motion, as provided therein, is deemed good and sufficient under the circumstances, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

15.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order, and the Debtors may, in their discretion and without further delay, take any action and perform any act necessary to implement the relief granted in this Order.

16.     Notwithstanding anything to the contrary contained in the Motion or this Order, any payment to be made and any relief or authorization granted hereunder shall be limited by, and shall be subject to, the requirements imposed on the Debtors in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and authorizing the use of cash collateral (any such order, a "DIP Order"), including, for the avoidance of doubt, the debtor-in-possession financing and cash collateral budget. To the extent of any conflict (but solely to the extent of such conflict) between the terms of this Order and the terms of any DIP Order, the terms of the DIP Order will govern.

17.     This Court shall retain jurisdiction over any and all matters arising from

or relating to the interpretation or implementation of this Order.


Dated:_____          _____

                                 UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**Utility Provider List**

| Utility Provider | Address | Service Provided | Account Number(s) | Average Monthly[1] Invoice Amount | Amount of Prepetition Security Deposit Held | Proposed Adequate Assurance |
|---|---|---|---|---|---|---|
| Con Edison | PO Box 1702 New York, NY 10116 | Electric | 622022004005023 622026110900001 622026002750068 | $66,400 | $92,554 | $33,200 |
| National Grid | PO Box 11741 Newark, NJ 07101 | Gas | 0042013437 0042013500 0043500734 0042013423 0048902007 | $6,900 | $9,770 | $3,450 |
| Los Angeles Department of Water & Power | 111 North Hope Street Los Angeles, CA 90012 | Electric, Water, Sewer | 8433151000 6978268938 5263433922 1985428992 | $7,700 | $27,300 | $4,350 |
| Tata Communications Americas Inc. | 2355 Dulles Corner Boulevard, Suite 700, Herndon VA 20171 | Internet | Various | $74,500 | N/A | $37,250 |
| AT&T | PO Box 6463 Carol Stream IL 60197-6463 United States | Telephone | 287243046360 | $6,000 | N/A | $3,000 |
| Verizon | P.O. Box 408 Newark NJ 07101-0408 United States | Telephone | 442128912-00001 | $5,000 | N/A | $2,500 |
| T-Mobile | PO Box 79004 St Louis MO 63179-0047 United States | Telephone | 952387593 | $1,000 | N/A | $500 |

---

[1]    The average amount is calculated based on calendar year 2022.