**TOGUT, SEGAL & SEGAL LLP**
Albert Togut
Kyle J. Ortiz
Brian F. Moore
One Penn Plaza, Suite 3335
New York, NY 10119
Phone: (212) 594-5000
Email: altogut@teamtogut.com
      kortiz@teamtogut.com
      bmoore@teamtogut.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**SHEARMAN & STERLING LLP**
Fredric Sosnick
William S. Holste
Jacob S. Mezei
599 Lexington Avenue
New York, NY 10022
Phone: (212) 848-4000
Email: fsosnick@shearman.com
      william.holste@shearman.com
      jacob.mezei@shearman.com

**SHEARMAN & STERLING LLP**
Ian E. Roberts (*pro hac vice* pending)
2601 Olive Street, 17th Floor
Dallas, TX 75201
Phone: (214) 271-5777
Email: ian.roberts@shearman.com

*Proposed Special Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. 23-10738 (__) |
| Debtors.[1] | (Joint Administration Requested) |

### DEBTORS' APPLICATION SEEKING ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE APPOINTMENT OF STRETTO, INC. AS CLAIMS AND NOTICING AGENT AND (II) GRANTING RELATED RELIEF

Vice Group Holding Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), respectfully represent in support of this application (the "Application") as follows:

---

[1] The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice. The location of the Debtors' service address for purposes of these chapter 11 cases is: 49 South 2nd Street, Brooklyn, NY 11249.

**Relief Requested**

1.      The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing and approving the appointment of Stretto, Inc. ("Stretto") as claims and noticing agent (the "Claims and Noticing Agent") for the Debtors in these Chapter 11 Cases effective as of the Petition Date (as defined herein) including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Chapter 11 Cases, and (ii) granting related relief.

2.      In support of this Application, the Debtors submit the Declaration of Sheryl Betance, Senior Managing Director of Stretto (the "Betance Declaration"), attached hereto as **Exhibit B**.  The Debtors' selection of Stretto to act as the Claims and Noticing Agent has satisfied the Court's Claims Agent Protocol (as defined below), in that the Debtors have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.  The terms of Stretto's retention are set forth in the Engagement Agreement attached hereto as **Exhibit C** (the "Engagement Agreement").

3.      Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of entities to be noticed. Rule 5075-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of the Court, a claims and noticing agent in accordance with the Claims Agent

Protocol." Local Rule 5075-1(a). In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 5075-1(b) and is otherwise in the best interests of both the Debtors' estates and their creditors.

4.  By separate application, the Debtors will seek authorization to retain and employ Stretto as administrative advisor in these Chapter 11 Cases pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") because the administration of these Chapter 11 Cases will require Stretto to perform duties outside the scope of 28 U.S.C. § 156(c).

## Jurisdiction and Venue

5.  The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.) (the "Amended Standing Order"). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are section 156(c) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Local Rules 9013-1(a) and 5075-1(b), and the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (dated June 17, 2013) (the "Claims Agent Protocol").

6.  This Application is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the Court's entry of a final order in connection with this Application to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## Background

7.       On the date hereof (the "Petition Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code with this Court, and

contemporaneously requested joint administration of the Chapter 11 Cases for

procedural purposes only, pursuant to Bankruptcy Rule 1015(b).  The Debtors are

operating their businesses and managing their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the

appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no

official committees have been appointed or designated.

8.       From their humble beginnings as a niche magazine, the Debtors and their

non-Debtor affiliates (collectively, "*VICE*") have grown into a global media company

that focuses on content centered around news and culture, serving a largely global

youth audience.  Today, *VICE* is a global, multiplatform media company that has a

powerful brand, diversified financial profile, premium content, and rich engagement

with its youth-targeted audience.  With production hubs around the world, *VICE*

creates thousands of pieces of content a week globally, including editorial, digital and

social video, experiential events, commercials, music videos, scripted and unscripted

television, feature documentaries, and movies.  Additional facts relating to the Debtors'

businesses and capital structure, and the commencement of these Chapter 11 Cases, are

set forth in the *Declaration of Frank A. Pometti in Support of the Debtors' Chapter 11*

*Petitions and First Day Relief* (the "First Day Declaration"), which was filed on the

Petition Date and is incorporated herein by reference.[2]

---

[2]   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed
to such terms in the First Day Declaration.

### Stretto's Qualifications

9.      Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Stretto's active and former cases include:  *In re Times Square JV LLC*, Case No. 22-11715 (JPM) (Bankr. S.D.N.Y. Dec. 30, 2022); *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 19, 2022); *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 13, 2022); *In re A.B.C. Carpet Co., Inc.*, Case No. 12-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, Case No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, Case No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re Furla (U.S.A.), Inc.*, Case No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); *In re Century 21 Department Stores LLC,* Case No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2020); *In re NTS W. USA Corp.,* Case No. 20-35769 (CGM) (Bankr. S.D.N.Y. July 29, 2020); and *In re Dean & Deluca N.Y., Inc.,* Case No. 20-10916 (MEW) (Bankr. S.D.N.Y. Apr. 7, 2020).[3]

---

[3]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these cited orders are available upon request to the Debtors' proposed counsel.

10.     By appointing Stretto as the Claims and Noticing Agent in

these Chapter 11 Cases, the distribution of notices and the processing of claims will be

expedited, and the Office of the Clerk of the Court (the "Clerk's Office") will be relieved

of the administrative burden of processing what may be an overwhelming number of

claims.

## Services to be Provided

11.     This Application pertains only to the work to be performed by Stretto

under the Clerk's Office's delegation of duties permitted by 28 U.S.C. § 156(c) and

Local Rule 5075-1, and any work to be performed by Stretto outside of this scope is not

covered by this Application or by any order granting approval hereof.  Specifically,

Stretto will perform the following tasks in its role as Claims and Noticing Agent, as well

as all quality control relating thereto:

   a.     prepare and serve required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

   b.     maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

   c.     maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon

request by a party-in-interest or the Clerk;

d.  furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.  maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.  for all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.  process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h.  provide an electronic interface for filing proofs of claim;

i.  maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed:  (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

j.  provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

k.  implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

l.  record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.    relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto, not less than weekly;

n.    upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

o.    monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

p.    identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q.    assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

r.    if these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Stretto of entry of the order converting the cases;

s.    thirty days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Stretto as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

t.    within seven days of notice to Stretto of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases; and

u.    at the close of these Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, or (ii) any other location requested by the Clerk's Office.

## **Professional Compensation**

12.    The Debtors request that the undisputed fees and expenses incurred by

Stretto in the performance of the above services be treated as administrative expenses of

the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of

the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

13.    Prior to the Petition Date, the Debtors provided Stretto an advance in the amount of $10,000. Stretto seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

14.    Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Stretto and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Stretto's bad faith, gross negligence, or willful misconduct or as otherwise provided in the Engagement Agreement or Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these Chapter 11 Cases.

**Disinterestedness**

15.    Although the Debtors do not propose to employ Stretto under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Stretto has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Betance Declaration, Stretto has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

16.    Moreover, in connection with its retention as Claims and Noticing Agent, Stretto represents in the Betance Declaration, among other things, that:

a.    Stretto is not a creditor of the Debtors;

b.    Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

c.    by accepting employment in these Chapter 11 Cases, Stretto waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

d.    in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

e.    Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

f.    Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.    in its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Stretto will not intentionally misrepresent any fact to any person;

h.      Stretto shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

i.      Stretto will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.      none of the services provided by Stretto as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's Office.

17.     Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Compliance with Claims and Noticing Agent Protocol

18.     This Application complies with the Claims Agent Protocol and substantially conforms to the standard section 156(c) application in use in this Court. To the extent that there is any inconsistency between this Application, the Order, and the Engagement Agreement, the Order shall govern.

## Basis for Relief

19.     Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

20.     In addition, Local Rule 5075-1(a) provides:

> The Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

Local Rule 5075-1(a).

21.     The Court has promulgated the Claims Agent Protocol "to ensure the use of competitive process in the selection of claims agents in instances where the Court has authorized such use under 28 U.S.C. § 156(c)." In compliance with the Claims Agent Protocol, the Debtors obtained and reviewed proposals from three court-approved claims and noticing agents, including Stretto. The Debtors provided each court-approved claims and noticing agent the basic facts about these Chapter 11 Cases and asked each claims and noticing agent to submit a written proposal based upon such facts. The Debtors also asked each claims and noticing agent case-specific pricing questions. Ultimately, the Debtors chose Stretto as their claims and noticing agent based on its capability and favorable price terms.

22.     Local Rule 5075-1(b) requires the retention, pursuant to an order of the Court, of an approved claims and noticing agent in a case having 250 or more creditors and/or equity security holders, which is applicable to these Chapter 11 Cases.

23.     Given the number of creditors and other parties in interest involved in these Chapter 11 Cases, which the Debtors estimate to be in excess of 5,000 and many of which are expected to file proofs of claim, the Debtors seek an order appointing Stretto as the claims and noticing agent in these Chapter 11 Cases effective as of the Petition Date pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1 to relieve this Court and the Clerk's Office of administrative burdens.

24.     At the Debtors' request, Stretto has been serving in a Claims and Noticing

Agent capacity since prior to the Petition Date with assurances that the Debtors would

seek approval of its employment and retention effective as of the Petition Date so that

Stretto may be compensated for its pre-application services in these Chapter 11 Cases.

The Debtors believe that no party in interest will be prejudiced by the granting of

the  employment effective as of the Petition Date, as provided herein, because Stretto

has provided and continues to provide valuable services to the Debtors' estates in the

interim period.

25.     Courts in this jurisdiction have routinely approved employment effective

as of the petition date for claims and noticing agents similar to that requested herein.

*See, e.g., In re Times Square JV LLC,* Case No. 22-11715 (JPM) (Bankr. S.D.N.Y. Dec. 30,

2022); *In re Celsius Network LLC,* Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 19, 2022);

*In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 13,

2022);  *In re A.B.C. Carpet Co., Inc.*, Case No. 12-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10,

2021); *In re Kumtor Gold Co. CJSC,* Case No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8,

2021); *In re VTES, Inc.*, Case No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re*

*Furla (U.S.A.), Inc.,* Case No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); *In re*

*Century 21 Department Stores LLC,* Case No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14,

2020); *In re NTS W. USA Corp.,* Case No. 20-35769 (CGM) (Bankr. S.D.N.Y. July 29, 2020);

and *In re Dean & Deluca N.Y., Inc.,* Case No. 20-10916 (MEW) (Bankr. S.D.N.Y. Apr. 7,

2020).

26.     Based on the foregoing, the Debtors submit that they have satisfied

the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

Accordingly, the Debtors request entry of the Order, pursuant to section 156(c) of

the Bankruptcy Code and Local Rule 5075-1, approving this Application to retain and

employ Stretto as the Claims and Noticing Agent in these Chapter 11 Cases, effective as of the Petition Date.

## **Motion Practice**

27.     This Application includes citation to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Application.  Accordingly, the Debtors submit that this Application satisfies Local Rule 9013-1(a).

## **Notice**

28.     Notice of this Application will be provided to:  (i) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:  Andrea B. Schwartz); (ii) the parties identified on the Debtors' consolidated list of 30 largest unsecured creditors; (iii) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn:  David M. Feldman, Michael S. Neumeister, and Tommy Scheffer), counsel to the Prepetition Term Lenders; (iv) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019 (Attn:  Scott K. Charles and Neil M. Snyder), counsel to TPG Virat Holdings 1, L.P., and Sixth Street Virat Holdings 3, LLC; (v) Shipman & Goodwin LLP (Attn:  Marie C. Pollio), counsel to Wilmington Trust, National Association; (vi) the Internal Revenue Service; (vii) the Office of the United States Attorney for the Southern District of New York; (viii) the offices of the attorneys general in the states in which the Debtors operate; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

29.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.


[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the

Proposed Order granting the relief requested herein and such other and further relief as

the Court deems just and appropriate.

Dated:  May 15, 2023
        New York, New York

VICE GROUP HOLDING INC., *et al.*
*Debtors and Debtors in Possession*
*By Their Proposed Counsel*
TOGUT, SEGAL & SEGAL LLP,
By:

/s/ *Kyle J. Ortiz*
ALBERT TOGUT
KYLE J. ORTIZ
BRIAN F. MOORE
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
altogut@teamtogut.com
kortiz@teamtogut.com
bmoore@teamtogut.com

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. __-_____(__) |
| Debtors.[1] | (Joint Administration Requested) |

### ORDER (I) AUTHORIZING AND APPROVING THE APPOINTMENT OF STRETTO, INC. AS CLAIMS AND NOTICING AGENT TO THE DEBTORS AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), (a) authorizing and approving the appointment of Stretto, Inc. ("Stretto") as the claims and noticing agent (the "Claims and Noticing Agent") to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtor's Chapter 11 Cases, and (iii) provide such other administrative services—as required by the Debtors—that would fall within the purview of services to be provided by the Clerk's Office, and (b) granting related relief, all as more fully set forth in the Application; and upon the Betance Declaration submitted in support of the Application; and upon the First Day Declaration; and the Debtors having estimated that there are in excess of 5,000 creditors in these Chapter 11 Cases, many of which are expected to file proofs of claim, and it

---

[1]  The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

appearing that the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in chapter 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that Claims Noticing Agent has the capability and experience to provide such services and that Claims and Noticing Agent does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged; and good and sufficient notice of the Application having been given under the circumstances; and no other or further notice being required; and it appearing that the employment of Claims and Noticing Agent is in the best interests of the Debtors, the estates and creditors and sufficient cause appearing; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Application is approved as set forth herein.

2

2.      The Debtors are authorized to retain Stretto as Claims and Noticing Agent effective as of the Petition Date under the terms of the Engagement Agreement, and Stretto is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases, and all related tasks, all as described in the Application.

3.      Stretto shall serve as the interim custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim filed in these Chapter 11 Cases unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk who remains the official custodian of court records under 28 U.S.C. § 156(e).

4.      Stretto is authorized and directed to provide an electronic interface for filing proofs of claim—to the extent necessary—and to obtain a post office box or address for the receipt of proofs of claim.

5.      Stretto is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtors are authorized to compensate Stretto in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Stretto shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred. Chapter 11 Cases, Stretto shall serve monthly invoices on the Debtors, the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided, however*, that the parties may seek resolution of the matter from this Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto under this Order shall be an administrative expense of the Debtors' estates.

10.     Stretto may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Stretto may hold its advance under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

12.     All requests by Stretto for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought;

*provided, however,* that in no event shall Stretto be indemnified in the case for its own bad faith, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

13.     In the event that Stretto seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Stretto's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.     In the event Stretto is unable to provide the services set out in this Order, Stretto will immediately notify the Clerk and the Debtors' attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

15.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Stretto but is not specifically authorized by this Order.

16.     Stretto shall not cease providing claims processing services during these Chapter 11 Cases for any reason, including nonpayment, without an order of this Court; *provided, however,* that Stretto may seek such an order on expedited notice by filing a request with this Court with notice of such request to be served on the Debtors, the United States Trustee, and any official committee of creditors appointed in these Chapter 11 Cases by facsimile or overnight delivery; *provided, further,* that except as expressly provided herein, the Debtors and Stretto may otherwise terminate or suspend other services as provided under the Engagement Letter.

17.     After entry of an order terminating Stretto's services as the Claims and Noticing Agent, upon the closing of these Chapter 11 Cases, or for any other reason,

Stretto shall be responsible, upon consultation with the Clerk, for archiving all proofs of claim with the Federal Archives Record Administration, if applicable.

18.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

19.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

21.     The Debtors and Stretto are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

22.     Notwithstanding anything to the contrary contained in the Application or this Order, any payment to be made and any relief or authorization granted hereunder shall be limited by, and shall be subject to, the requirements imposed on the Debtors in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and authorizing the use of cash collateral (any such order, a "DIP Order"), including, for the avoidance of doubt, the debtor-in-possession financing and cash collateral budget. To the extent of any conflict (but solely to the extent of such conflict) between the terms of this Order and the terms of any DIP Order, the terms of the DIP Order will govern.

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

*[Remainder of Page Left Intentionally Blank]*

24.     In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

Dated:_____                    _____
                                             UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Betance Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VICE GROUP HOLDING INC., *et al.* | Case No. __-____(__) |
| Debtors.[1] | (Joint Administration Requested) |

**DECLARATION OF SHERYL BETANCE IN SUPPORT OF DEBTORS'**
**APPLICATION SEEKING ENTRY OF AN ORDER (I) AUTHORIZING AND**
**APPROVING THE APPOINTMENT OF STRETTO, INC. AS CLAIMS**
**AND NOTICING AGENT AND (II) GRANTING RELATED RELIEF**

I, Sheryl Betance, under penalty of perjury, declare as follows:

1.    I am a Senior Managing Director of Corporate Restructuring at Stretto,

Inc. ("Stretto"), a chapter 11 administrative services firm with offices at 410 Exchange,

Ste. 100, Irvine, California 92602.  Except as otherwise noted, I have personal knowledge

of the matters set forth herein, and if called and sworn as a witness, I could and would

testify competently thereto.

2.    This declaration (this "Declaration") is made in support of the *Debtors'*

*Application Seeking Entry of an Order (I) Authorizing and Approving the Appointment of*

*Stretto, Inc. as Claims and Noticing Agent and (II) Granting Related Relief*, filed

contemporaneously herewith (the "Application").[2]

---

[1]    The last four digits of Debtor Vice Group Holding Inc.'s tax identification number are 4250.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/vice.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  49 South 2nd Street, Brooklyn, NY 11249.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

## Qualifications

3.      Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Stretto's cases include: *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 19, 2022); *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 13, 2022); *In re A.B.C. Carpet Co., Inc.*, Case No. 12-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, Case No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, Case No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re Furla (U.S.A.), Inc.*, Case No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); *In re Century 21 Department Stores LLC*, Case No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2020); *In re NTS W. USA Corp.*, Case No. 20-35769 (CGM) (Bankr. S.D.N.Y. July 29, 2020); *In re Dean & Deluca N.Y., Inc.*, Case No. 20-10916 (MEW) (Bankr. S.D.N.Y. Apr. 7, 2020); and *In re Seabras 1 USA, LLC*, Case No. 19-14006 (SMB) (Bankr. S.D.N.Y. Dec. 27, 2019).[3]

---

[3]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration.  Copies of these cited orders are available upon request to the Debtors' proposed counsel.

## Services to be Rendered

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c),

Stretto will perform, at the request of the Office of the Clerk of the Court (the "Clerk's

Office"), the services specified in the Application and the Engagement Agreement, and,

at the Debtors' request, any related administrative, technical, and support services as

specified in the Application and the Engagement Agreement.  In performing such

services, Stretto will charge the Debtors the rates set forth in the Engagement

Agreement, which is attached as **Exhibit C** to the Application.

5.      Stretto represents, among other things, the following:

    a.      Stretto is not a creditor of the Debtors;

    b.      Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

    c.      By accepting employment in these Chapter 11 Cases, Stretto waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

    d.      In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

    e.      Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

    f.      Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

    g.      In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Stretto will not intentionally misrepresent any fact to any person;

    h.      Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

   i.  Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

   j.  None of the services provided by Stretto as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

  6.  Although the Debtors do not propose to retain Stretto under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of potential parties-in-interest (the "Potential Parties in Interest") in these Chapter 11 Cases.  A list of Potential Parties in Interest, attached hereto as **Annex 1**, was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' largest unsecured creditors on a consolidated basis, the United States Trustee and persons employed in the office of the United States Trustee, and other parties.  The Potential Parties in Interest list was compared to an internal database that includes, among others, Stretto's parent entities, affiliates, and subsidiaries. Stretto's internal database also includes Stone Point Capital LLC ("Stone Point"), its funds, and each such fund's respective portfolio companies as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department (the "Stone Point Searched Parties").  The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision.  At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest.  Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to file promptly a supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Stretto, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.

8.      Stretto has and will continue to represent clients in matters unrelated to these Chapter 11 Cases.  In addition, in matters unrelated to these Chapter 11 Cases, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in these Chapter 11 Cases.  Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

9.      To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the Southern District of New York, the United States Trustee for Region 2, or any attorney known by Stretto to be employed in the Office of the United States Trustee serving the Southern District of New York.

10.     Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these Chapter 11 Cases.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these Chapter 11 Cases were filed. To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by firms that are Potential Parties in Interest or that have filed a notice of appearance in these Chapter 11 Cases.

11.     Stretto and its personnel in their individual capacities regularly utilize the

services of law firms, investment banking and advisory firms, accounting firms, and

financial advisors.  Such firms engaged by Stretto or its personnel may appear in

chapter 11 cases representing the Debtors or parties in interest.  To the best of my

knowledge, Stretto does not currently utilize the services of any law firms, investment

banking and advisory firms, accounting firms, or financial advisors who have been

identified as Potential Parties in Interest or who have filed a notice of appearance in

these Chapter 11 Cases.

12.     In April 2017, Stretto was acquired by the Trident VI Funds managed by

private equity firm Stone Point.  Stone Point is a financial services-focused private

equity firm based in Greenwich, Connecticut.  The firm has raised and managed nine

private equity funds – the Trident Funds – with aggregate committed capital of

approximately $40 billion.  Stone Point targets investments in the global financial

services industry and related sectors.

13.     The following disclosure is made out of an abundance of caution in an

effort to comply with the Bankruptcy Code and Bankruptcy Rules.  Stretto has searched

the names of the Debtors and the names of the Potential Parties in Interest against the

Stone Point Searched Parties.  Based solely on the foregoing search, Stretto has

determined that AXIS Capital Holdings, owned by Trident Fund VIII, has been

identified as an insurance provider of the Debtors.  Additionally, Stretto has determined

that Consilio LLC, owned by Trident Fund VIII, has been identified as a business

and/or legal services provider of the Debtors.  However, to the best of Stretto's

knowledge, Stretto's relationship to these entities does not create any adverse interest

against the Debtors' estate that would present a disqualifying conflict of interest, and

there are no other connections that require disclosure.  To the extent Stretto learns of

any material connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtors, Stretto will promptly file a supplemental disclosure. Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

14.    From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Stretto's or its personnel's knowledge. Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

15.    From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtors or their affiliates. Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, subject to the foregoing, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained. Subject to the foregoing, upon information and belief, and upon reasonable inquiry through email

survey of Stretto's employees, Stretto does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

16.     Stretto is no longer party to any agreement with Xclaim Inc., nor does Stretto have any contract with any other party under which Stretto (a) provides or will provide exclusive access to claims data or (b) will be compensated for claims data that is made available by Stretto.

17.     To the best of my knowledge, Stretto (a) does not hold or represent an interest adverse to the Debtors' estates; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors, and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtors, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

*[Remainder of page left blank intentionally]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 15, 2023
New York, New York

/s/ *Sheryl Betance*

Sheryl Betance
Senior Managing Director
Stretto, Inc.
410 Exchange, Ste. 100
Irvine, California 92602

**Annex 1**

**Potential Parties in Interest**

| Categories | Entities |
|---|---|
| Debtors | Vice Group Holding Inc.<br>Vice Holding Inc. (also d/b/a Viceland.com USA Inc.)<br>Vice Media LLC (also operates as Broadly; Creators Project; Free; Amuse; Motherboard; Noisey; Tonic; Thump; Vice Sports; Garage; Waypoint; Vice Studios)<br>Boy Who Cried Author LLC<br>Carrot Creative LLC<br>Carrot Operations LLC<br>Channel 271 Productions LLC<br>Clifford Benski Inc.<br>Dana Made LLC<br>Inverness Collective LLC<br>JT Leroy Holding LLC<br>PLDM Films LLC<br>Project Change LLC<br>R29 Pride, LLC<br>R29 Productions, LLC<br>Refinery 29 Inc. (also d/b/a R29 Inc.)<br>Valvi LLC<br>Vice Content Development, LLC<br>Vice Distribution LLC<br>Vice Europe Holding Limited<br>Vice Europe Pulse Holding Limited<br>Vice Food LLC<br>Vice Impact Inc.<br>Vice International Holding, Inc.<br>Vice Music Publishing LLC<br>Vice Payroll LLC<br>Vice Productions LLC (also d/b/a Vice News Productions LLC)<br>Vice Project Services LLC<br>Villain LLC<br>Virtue Worldwide, LLC<br>Visur LLC<br>VTV Productions, LLC |
| Non-Debtor Subsidiaries | Change Incorporated UK Limited<br>Edition Worldwide Ltd<br>Golden Heart Films LLC<br>Hanbury Productions LLC<br>Levelprint Limited (also operates as i-D)<br>Paradise Industries Limited<br>Pulse Commercials LLC<br>Pulse Films Limited |

| Categories | Entities |
|---|---|
| | Refinery 29 Corp. |
| | Refinery 29 Limited |
| | SSGM Investments Inc. |
| | Vice France TV Limited |
| | Vice Media Canada Inc. |
| | Vice Media Distribution (Canada) Inc. |
| | Vice Studio Canada Inc. |
| | Vice UK Limited |
| | Vice UK Studios Limited |
| | Vice UK TV Limited |
| | Vice Films LLC |
| | Vice Films LOC LLC |
| | La Reyna Agency, LLC |
| | unTypical Films LLC |
| | Resolution 400 SPV Inc. |
| | Point Sur Content Development LLC |
| | untypical Content Development LLC |
| | De-evolution2020 LLC |
| | Glass Hearts LLC |
| | Greek to Me, LLC |
| | The People's Servant, LLC |
| | Sell Me This Pen (Redux), LLC |
| | Kinfolk Studios LLC |
| | Kinfolk General LLC (94 Wythe) |
| | Starworks, LLC |
| | Avadel LLC |
| | Starworks London Limited |
| | Within Unlimited, Inc. (f/k/a VRSE, Inc.) |
| | Global Thermostat Operations LLC |
| | Goldie Films, Inc. |
| | Vice Media Asia Pacific Pte. Ltd. |
| | Vice Indonesia Holding Pte. Ltd. |
| | PT Vice Indonesia Media |
| | Vice Media Japan K.K. |
| | Vice Japan G.K. |
| | Middle Earth Cultural Company Limited |
| | Wei Wai Chu (Beijing) Technology Co., Ltd. |
| | Vice Media (India) Private Limited |
| | Vice Media Korea Limited |
| | Vice Australia Pty. Ltd. |
| | Vice Studio Pty. Ltd. |
| | Seaside Productions Pty. Ltd. |
| | Vice Australia Unit Trust |
| | Vice Holding do Brasil Ltda. |
| | Virtue Publicidad e Comunicacao Ltda. |
| | Vice Produtora de Video Ltda. |
| | Vice Studios LATAM, S. de R.L. de C.V. |

| Categories | Entities |
|---|---|
| | Vice Colombia S.A.S. En Liquidacion |
| | Vice Media S.A. de C.V. |
| | Paradise y Funciones Creativas, S.A.P.I. de C.V. |
| | Vice Cono Sur S.R.L. En Liquidacion |
| | Vice Television Network, LLC |
| | Pulse A.I. Films Limited |
| | American Honey Limited |
| | Stealth Pulse Limited (Dormant) |
| | American Honey LLC (Dormant) |
| | Jolly Farmer, LLC |
| | Eagle Productions LLC |
| | Sunny Spot Productions LLC |
| | Dance Saves Lives LLC |
| | Truffle Road LLC |
| | International Movie Conglomerate LLC (Dormant) |
| | Vice LOC Limited |
| | Vice France SARL |
| | Vice Media France SARL |
| | Vice Italia S.R.L. |
| | Vice AB |
| | Vice ApS |
| | Vice Poland Sp.z.o.o. |
| | Vice Polska Sp.z.o.o. |
| | Vice DACH GmbH |
| | Virtue Austria GmbH |
| | Vice Media GmbH |
| | Vice Switzerland GmbH |
| | Vice Austria GmbH |
| | Vice Arabia Limited |
| | Vice Arabia FZ LLC |
| | Vice Benelux B.V. |
| | Vice Benelux TV B.V. |
| | Vice Belgium BV |
| | Vice Antenna B.V. |
| | Vice Greece S.A. |
| | VICE MEDIA DOO BEOGRAD |
| | Vice Antenna SRL |
| | Puna B.V. |
| | VICE Creative Services Middle East and North Africa for Media |
| | Vice Guide Productions Inc. |
| | Vice Productions Quebec Inc. |
| | Mode Vice Mtl Inc. (Dormant) |
| | Vice Productions Inc. |
| | Vice Production Services Inc. |
| | Vice Production Services II Inc. |
| | Vice Productions (Abandoned 1) Inc. |

| Categories | Entities |
|---|---|
| | Vice Productions (Captured) Inc.
Vice Productions (CW 2) Inc.
Vice Productions (CZ) Inc.
Vice Productions (Cyber War 1) Inc.
Vice Productions (Death) Inc.
Vice Productions (DSOL 2) Inc.
Vice Productions (FP) Inc.
Vice Productions (Fubar) Inc.
Vice Productions (Genrent) Inc.
Vice Productions (Keep it Canada) Inc.
Vice Productions (Mal 2) Inc.
Vice Productions (Dark Side Talk) Inc.
Vice Productions (Mush Rush) Inc.
Vice Productions (Payday Season 1) Inc.
Vice Productions (Poachers) Inc.
Vice Productions (SD) Inc.
Vice Productions (SF) Inc. (f/k/a "Vice Productions (Homs) Inc.")
Vice Productions (Tach) Inc.
Vice Productions (Terror 1) Inc.
Vice Productions (TV Show Show) Inc.
Vice Productions (The Band) Inc.
Vice Productions (The Band 2) Inc.
Vice Productions (Vice on Film) Inc.
Vice Productions (VGTC) Inc.
Vice Productions (VGTF 2) Inc.
Vice Productions (VIP Canada) Inc.
Vice Productions (Unique) Inc.
Vice Productions (Genrent 2) Inc.
Vice Productions (DYK2) Inc.
Vice Productions (Record Press) Inc.
Vice Productions (Minded) Inc.
Vice Productions (DSOTR3) Inc.
VSC (Radical) Productions Inc.
Vice Productions (Comedy) Inc.
Vice Productions (Territories) Inc.
Vice Productions (DSOTR4) Inc.
Refinery 29 GmbH
Calendar Media Limited
London Tribes Limited
London Tribes, LLC
Faith Healing Limited
MMITB Production Limited
Mughal Mowgli Distribution Limited
Mughal Mowgli Limited
One More Time With Feeling Limited
Lawand Film Limited (previously Prep Film Ltd) |

| Categories | Entities |
|---|---|
|  | Pulse Italia S.R.L.<br>Pulse Films SPV2 Limited<br>Pulse Films Productions Limited<br>Pulse (Fly Away) Limited<br>GOL Production Limited<br>Rude Boy Limited<br>XY Chelsea Limited<br>Pulse Films London 2 Limited<br>Pulse Films LC Productions Limited<br>Marianne Productions Limited<br>Vice New Zealand Holding Ltd.<br>The Old Blue Last Limited |
| Current and Recent Former Directors and Officers | Nancy Dubuc<br>Shane Smith<br>Ramin Arani<br>Hozefa Lokhandwala<br>Lucinda Treat<br>Daisy Auger-Domínguez<br>Hosi Simon<br>Jesse Angelo<br>Nadja Bellan-White<br>David Granville-Smith<br>Jay Hoag<br>James R. Murdoch<br>David Trujillo<br>Austin Bowers<br>Matthew Dillard<br>John Flynn<br>Jeff Palker<br>Gary Knell<br>Mohsin Meghji<br>Rachna Bhasin<br>Andy Doyle<br>David Bessel<br>Jenny Walsh<br>Scott Vogel<br>Jame Donath<br>Jeffrey Serota<br>Frank Pometti<br>Mark Del Prioree |
| Trustees/Agents | Fortress Credit Corp.<br>Wilmington Trust, National Association<br>XXIII Capital F Limited |
| Term Lenders | DBDB Funding LLC<br>Fortress Credit Opportunities VII CLO Limited<br>Fortress Credit Opportunities IX CLO Limited<br>Fortress Credit Opportunities XI CLO Limited |

| Categories | Entities |
|---|---|
| | FLF I Holdings Finance L.P.<br>Fortress Credit Opportunities VI CLO Limited<br>Fortress Credit Opportunities XIII CLO Limited<br>Monroe Capital Corporation<br>Monroe Capital Income Plus Corporation<br>Monroe Capital Private Credit Fund II LP<br>Monroe Capital Private Credit Fund II (Unleveraged) LP<br>Monroe Capital Private Credit Fund III LP<br>Monroe Capital Private Credit Fund III (Unleveraged) LP<br>Monroe Private Credit Fund A LP<br>Monroe Capital Private Credit Fund I LP<br>Monroe Capital Private Credit Fund VT LP<br>Monroe Capital Fund Marsupial (Lux) Financing Holdco LP<br>Monroe Capital Fund SV S.a.r.l. - Marsupial Compartment<br>Monroe (NP) U.S. Private Debt Fund LP<br>Monroe Capital Private Credit Fund III (Lux) Financing Holdco LP<br>Monroe Capital Fund SV S.a.r.l. - Fund III (unleveraged) Compartment<br>Monroe Capital Private Credit Fund II (Unleveraged Offshore) LP<br>Lakestar Finance LLC<br>Monroe Capital Private Credit Fund II-O (Unleveraged Offshore) LP<br>Fortress Lending I Holdings L.P.<br>Drawbridge Special Opportunities Fund LP |
| Shareholders | TPG Virat Holdings 1, L.P.<br>Sixth Street Virat Holdings 2, LLC<br>TCV<br>Lupa Investment Holdings, LP<br>Antenna Internet Ventures<br>Fine Investments Limited<br>Lupa Systems<br>WPP Luxembourg Gamma Three<br>Scripps Networks<br>Turner Broadcasting System<br>Egon Zehnder<br>Eigenvalue<br>First Round Capital III<br>Floodgate Fund III<br>Hearst Magazine Media<br>HLVP Follow On Fund, L.P.; HLVP I, L.P.<br>HT Ventures<br>Lerer Ventures<br>Novel<br>SG Growth Partners II<br>PacWest Bancorp Square 1 Bank<br>Fidelity Puritan Trust |

| Categories | Entities |
|---|---|
| | TWDC Investment Enterprises |
| | Star Europe Holding BV |
| | Thomas Benski |
| | Dan Bowen |
| | Marisa Clifford |
| | Lucas Ochoa |
| | Sam Sniderman |
| | James Sorton |
| | Shane Smith |
| | Andrew Creighton |
| | Edoardo Moretti |
| | Adam Katzenback |
| | Ryan Mack |
| | Benjamin Ruth |
| | Matthew Elek |
| | Michael Slonim |
| | Raine Viking |
| | A&E Television Networks |
| | Patrick Vien |
| Noteholders | TPG Virat Holdings 1, L.P. |
| | Sixth Street Virat Holdings 3, LLC |
| | Sixth Street Virat Holdings 2, LLC |
| Major Unsecured Creditors | Green 16 LLC |
| | Shearman & Sterling LLP |
| | Ernst & Young US |
| | CNN Productions Inc. |
| | Horizon Media Inc |
| | RANKER INC |
| | A&E TELEVISION NETWORKS, LLC |
| | TPG CAPITAL - FO, LLC |
| | Canada Los Angeles Inc |
| | Facebook Inc. |
| | WORKDAY INC |
| | ANTENNA TV A.E. |
| | AlixPartners, LLP |
| | FTI Consulting, Inc. |
| | WILD BUZZ AGENCY |
| | Cast & Crew Payroll, LLC |
| | Bailey Duquette P.C. |
| | Paul Hastings Europe LLP |
| | Two Twenty Five Broadway Company |
| | TATA Communications |
| | DELOITTE CONSULTING LLP |
| | CARTEL LLC |
| | Con Edison |
| | Getty Images Inc. |
| | Web Holdings LLC |
| | XWP.Co Pty Ltd |
| | Home Box Office |

| Categories | Entities |
|---|---|
| | Agosto Inc |
| | Partizan Entertainment, LLC |
| | Unit9 Films Inc. |
| | JPMORGAN CHASE NA |
| | E+H Rechtsanwälte GmbH |
| | NYS Dept. of Taxation & Finance |
| | Piano Software Inc |
| | Amazon Web Services, Inc. |
| | Presidio Networked Solutions Group, LLC |
| | The Mayda Creative Company, Inc. |
| | EFC KUGEL PRODUCTIONS INC. |
| | OKTA, INC |
| | Wolftech Broadcast Solutions |
| | Computer Design and Integration LLC (NJ) |
| | Deloitte LLP |
| | SEGMENT.IO, INC. |
| | MORGAN, LEWIS & BOCKIUS LLP |
| | LANZILLOTTA LAW FIRM, PLLC |
| | MarketCast |
| | Yi Shi Yi Se (Beijing) Wen Hua C |
| | State of Washington Department of Revenue |
| | REVOLT MEDIA & TV LLC |
| | DAVIS WRIGHT TREMAINE LLP |
| | DBA Media, LLC |
| | Degree, Inc. |
| | World Economic Forum LLC |
| | American Express (@ Work) |
| | American Broadcasting Company Inc (RENT) |
| | Shearman & Sterling (London) LLP |
| | Facebook UK Ltd |
| | Digby Road Limited |
| | Locosquad GmbH |
| | James Goldston |
| | Attention Strategies LLC |
| | eMazzanti Technologies |
| | TUBULAR LABS INC |
| | CFGI LLC |
| | WORK EDITORIAL NY LLC |
| | SELECT MANAGEMENT GROUP LLC |
| | Tiktok Inc. |
| | MCH Messe Schweiz (Basel) AG |
| | 24i Unit Media Inc |
| | Gian Rooks GbR |
| | PROSKAUER ROSE LLP |
| | Scheme Engine LLC |
| | ALLIED UNIVERSAL SECURITY SERVICES |
| | Amex Bank of Canada |
| | Trint Limited |

| Categories | Entities |
|---|---|
| | Diamond View Studios LLC |
| | JAMF Software, LLC |
| Contract Counterparties | Advanced Systems Group, LLC |
| | Axess Accounting Office |
| | Corrado Contri |
| | HFP Steuerberater |
| | Novacoast Inc |
| | Redpill Linpro AS |
| | Salesforce.com Inc. |
| | Sourcepoint |
| | MM Muscato Micaludi – Chartered Accountants |
| | TechAID Solutions LLC |
| | Venturi Group Inc |
| | IMG Worldwide, LLC |
| | Ideon Media Inc. |
| | Two Four Seven Limited |
| | ARA International Production Co. Ltd. |
| | Everywear Holdings, Inc. |
| | Rank and File Limited |
| | AKA Films Limited |
| | Wild Rose Films |
| | Final Cut for Real ApS |
| | Screen Australia |
| | Create NSW |
| | Fintage Collection Account Management B.V. |
| | Cornerstone Films Limited |
| | Film Finances Inc |
| | Endeavor Content, LLC |
| | Film Victoria |
| | Mirrah Foulkes |
| | Nash Edgerton |
| | Jean Elia |
| | Neon Rated, LLC |
| | Beach Bum Film Holdings, LLC |
| | Riverstone Pictures (Beach Bum) Limited |
| | Ajax Pictures Limited |
| | Beach Bum Productions, Inc. |
| | Ingenious Project Finance Limited |
| | SPK Pictures AG |
| | Rocket Science Industries Limited |
| | Ottessa Moshfegh |
| | Screen Actors Guild-American Federation of Television and Radio Artists |
| | Kwesi Dickson |
| | Jonathan Barnwell |
| | Insurgent Media LLC |
| | Dennis Magnusson |
| | CTS 1976 LLC |
| | Chimney Pot Sverige AB |

| Categories | Entities |
|---|---|
| | Denise Marte p/k/a Denise Mercedes<br>Sony Pictures Television Inc.<br>Adam Woodhall<br>Edward Berger<br>Jennifer Lunn<br>Clare McQuillan<br>Daniel Fajemisin-Duncan & Marlon Smith<br>Ishy Din<br>Jiwon Lee<br>First Look Productions, Inc.<br>William Langewiesche<br>Lawrence Millar<br>Iron Mountain Intellectual Property Management, Inc.<br>B & C 3, LLC |
| JV Counterparties | GMN Cayman Ltd<br>GMN Cayman Holdco LLC<br>Antenna TV S.A.<br>Vice Antenna B.V.<br>Global News<br>Antenna Group B.V.<br>Antenna Internet Ventures B.V.<br>Autonomous M1 Company |
| Insurers | United Healthcare<br>WageWorks<br>Cigna Health and Life Insurance Company<br>Guardian<br>RxBenefits<br>Express Scripts<br>Unum<br>Pets Best Insurance<br>Great-West Life Group<br>Manulife<br>Royal London<br>Vitality Health<br>ProSight Specialty Management Company, Inc.<br>Gotham Insurance Company<br>Canada Life<br>Vision Service Plan<br>Sentinel Benefits Group, Inc.<br>First Reliance Standard Life Insurance Company<br>Aegon<br>Great Divide Insurance Co.<br>Riverport Insurance Co.<br>Tri-state Insurance Co. of Minnesota<br>Generali U.S. Branch<br>Navigators Insurance Co.<br>HDI Global Specialty<br>Lloyd's of London<br>Endurance Assurance Co. |

| Categories | Entities |
|---|---|
| | QBE Insurance Corporation |
| | Bowhead (Midvale Indemnity Co) |
| | Skyward (Houston Specialty Insurance Company) |
| | Berkshire Hathaway |
| | Axis |
| | Lloyds |
| | Hudson Insurance Company |
| | Berkley Insurance Company |
| | Zurich American Insurance Company |
| | Allianz Global Corporate & Specialty |
| | American Alternative Ins. Corp Global Aerospace Inc |
| | Chubb |
| | QBE Insurance Corporation |
| | Federal Insurance Company |
| | National Union Fire Company of Pittsburgh, PA |
| | Samphire |
| | RSA |
| Landlords | Irwansyah |
| | Equinox Business Parks Pvt. Ltd. |
| | ReBITA Inc. |
| | Lee Hiok Kee (Private) Limited |
| | WeWork |
| | twofour54 FZ-LLC |
| | Hausverwaltung Schönburg |
| | Wariwoda & Richter Immobilientreuhand GmbH |
| | Maderstrasse 1 Immobilien GmbH & Co KG |
| | Thalhof Immobilien GmbH |
| | Dr. Angelika Taschen |
| | L'Antenne SAS |
| | Kimonas Karageorgiou |
| | Heaven Music Joint Stock Music Company d/b/a Heaven Music S.A. |
| | Argyrios Yannakis |
| | Antenna T.V. S.A. |
| | Store S.r.l. |
| | Reguliers Vastgoed CV |
| | De Speld BV |
| | Chapter Friday |
| | Mediamaatjes B.V. |
| | Shark Capital S.A. |
| | Commons Lounge S.R.L. |
| | Ogranak Crane Invests Anstalt |
| | Ogranak Crane Invests Anstalt Beograd (Vračar) |
| | Stamfordham Road (IOM) Limited |
| | Workspace 12 Limited |
| | Digby Road Limited |
| | Wellington Pub Company PLC |
| | Crestwave Ltd |
| | Ministry of Culture (Kingdom of Saudi Arabia) |

| Categories | Entities |
|---|---|
|  | KABD, LLC<br>Mississippi & Westgate Properties, LLC<br>49 South Second Street LLC<br>Web Holdings, LLC<br>Cal Realty Holdings, Limited Partnership<br>SCCM Financial<br>The Slayton Revocable Living Trust – Survivor's Trust<br>Electric Pointe, LP<br>American Broadcasting Companies, Inc.<br>1717 DeSales Street Limited Partnership<br>225 Broadway Company LP<br>Hugh Haynes Gallagher |
| Litigation Counterparties | MediaPlus Inteligencia em Midia Ltda. (Brazil)<br>Micaely Dos Santos Queiroz<br>Bingo Sato<br>Contrarede<br>Denise Kramer (class action)<br>WIPRO<br>Fantic Dimur<br>Starworks LLC<br>Lamar Brown (class action)<br>Amin Massoudi<br>Amico's Pizza |
| Professionals | Guggenheim Securities LLC<br>Shearman & Sterling LLP<br>AP Services, LLC<br>PJT Partners LP<br>LionTree<br>Young Conaway Stargatt & Taylor |
| Banks | JP Morgan Chase<br>Scotia Bank<br>Bancolombia<br>Santander Bank<br>Banco Itau S.A.<br>Royal Bank of Canada<br>Banco Nacional de Mexico SA<br>Grupo Financiero BBVA Bancomer, SA de CV<br>Wells Fargo Bank, N.A. |
| Customers | The Coca-Cola Company<br>The Vanguard Group, Inc.<br>Logitech Europe S.A.<br>MDL Beast LLC<br>Diageo plc<br>Diageo Germany GmbH<br>Civic Entertainment Group, LLC<br>Samsung Corporation Co., Ltd.<br>Ministry of Culture (Kingdom of Saudi Arabia) |

| Categories | Entities |
|---|---|
| | The Public Investment Fund (Kingdom of Saudi Arabia) |
| | Royal Commission for Riyadh City |
| | Saudi Coffee Company |
| | Planned Parenthood Inc |
| | Flair Airlines Ltd |
| | Reckitt Benckiser plc |
| | Philips Electronics Nederland B.V. |
| | Philips Domestic Appliances Nederland B.V. |
| | The Estee Lauder Companies Inc |
| | Estee Lauder Inc. |
| | STAAR Surgical Company |
| | Target Corporation |
| | Target Enterprise, Inc. |
| | Amazon Studios, Inc. |
| | Amazon Content Services LLC |
| | NEOM Company |
| | Google LLC |
| | Philip Morris International Inc. |
| | Philip Morris International Management SA |
| | Philip Morris Products SA |
| | adidas AG |
| | Geico Corporation |
| | Hyundai Group |
| | Pernod Ricard |
| | Pernod Ricard France |
| | William Grant & Sons Enterprises Limited |
| | William Grant & Sons Brands Limited |
| | Macy's, Inc. |
| | Viacom Inc. |
| | Levi Strauss & Co. |
| | Zalando SE |
| | Sommerhaus Serien GmbH |
| | Daimler AG |
| | Kering |
| | Unilever PLC |
| | Conopco, Inc. d/b/a Unilever |
| | Unilever United States, LLC |
| | Unilever United States, Inc. |
| | Hewlett-Packard Enterprises, LLC |
| | LVMH Moet Hennesy Louis Vuitton |
| | L'OREAL Paris |
| | L'Oreal USA, Inc. |
| | Ulta Salon, Cosmetics & Fragrance, Inc. |
| | Ulta Inc. |
| | Nike, Inc. |
| | Nike Retail B.V. |
| | Converse Inc. |
| | Apple Inc. |
| | New Balance, Inc. |

| Categories | Entities |
|---|---|
| | New Balance Athletic Shoes U.K. Ltd. |
| | Heineken International B.V. |
| | Amazon |
| | Facebook, Inc. |
| | Tracfone Wireless, Inc. |
| | Volkswagen AG |
| | AT&T Inc. |
| | The Saudi Tourism Authority |
| | Canada Goose, Inc. |
| | Canada Goose International AG |
| | MDL Beast LLC |
| | The Procter & Gamble Company |
| | Diriyah Gate Development Authority |
| | Red Bull GmbH |
| | McDonald's Corporation |
| | BALLY SCHUHFABRIKEN AG |
| | The Saudi Falcon Club |
| | IDS Borjomi Georgia |
| | Lovehoney Limited |
| | Ikea B.V. |
| | Deutsche Telekom AG |
| | Acura |
| | Bacardi U.S.A., Inc. |
| | Clorox Services Company |
| | Cuddl Duds |
| | Mercedes Benz, USA LLC |
| | Ford Motor Company |
| | Genesis Motor America |
| | Hilton Domestic Operating Company, Inc. |
| | H&M Hennes & Mauritz L.P. |
| | H & M Hennes & Mauritz GBC AB |
| | Bottega Veneta S.R.L. |
| | Gucci Swiss Timepieces SA |
| | Guccio Gucci S.p.A. |
| | Puma SE |
| | Levi Strauss & Co. |
| | Logitech Inc. |
| | Golin |
| | Advertex Communications, Inc. d/b/a Macy's Corporate Marketing |
| | The Rocket Science Group LLC d/b/a Mailchimp |
| | Marriott International, Inc. |
| | Microsoft Corporation |
| | Cole Haan LLC |
| | PayPal, Inc. |
| | Sage Global Services Limited |
| | TikTok Inc. |
| | Porsche Cars North America, Inc. |
| | Wheelhouse Labs LLC |

| Categories | Entities |
|---|---|
| | Weedmaps |
| | Zalando SE |
| | Faraway Films, LLC |
| | Raising Destiny, LLC |
| | Home Box Office, Inc. |
| | Fremantlemedia Limited |
| | A&E Television Networks, LLC |
| | Netflix Entertainment, LLC |
| | Netflix Worldwide Entertainment, LLC |
| | Channel 5 Broadcasting Limited (trading as Paramount +) |
| | Showtime Pictures Development Company |
| | Showtime Networks Inc. |
| | WarnerMedia Direct, LLC |
| | BV Family Productions, Inc. |
| | Discovery Communications, LLC |
| | Bacardi Martini BV |
| | Anheuser Busch Inbev India Limited |
| | BandLab Singapore Pte. Ltd. |
| | Shiseido Co. Ltd. |
| | Epidemic Sound |
| | Harman International Industries, Incorporated |
| | Ikea Svenska Forsaljnings AB |
| | AlMadina Heritage Company (a/k/a Al Madinah Heritage Company) |
| | Kayanee Company |
| | MDL Beast LLC |
| | Sharjah Government Media Bureau |
| | All Nippon Airways Co., Ltd. |
| | ANAX, Inc. |
| Significant Vendors | Centro Inc. |
| | Facebook Inc. |
| | ANTENNA TV A.E. |
| | Web Holdings LLC |
| | Google Inc. |
| | LONDON BOROUGH OF HACKNEY |
| | Cal Realty Holdings |
| | 55 Washington Street LLC |
| | Iconoclast Content, Inc |
| | Two Twenty Five Broadway Company |
| | Picture Farm II LLC |
| | Freedome Productions |
| | Picture Farm Productions |
| | Sony Pictures Television Inc |
| | Sony Interactive Entertainment Europe Ltd |
| | CDW DIRECT LLC |
| | TATA Communications |
| | RMCP DEL CENTRO SA D E CV |
| | RANKER INC |
| | EXIT 105 PRODUCTIONS LLC |

| Categories | Entities |
|---|---|
| | A&E TELEVISION NETWORKS, LLC |
| | Religion of Sports Media, Inc. |
| | YA Studio LLC d/b/a Inner City |
| | Tool of North America, LLC |
| | Jungle Media Inc. |
| | Horizon Media Inc |
| | 49 South 2nd St LLC |
| | Zandland Ltd |
| | Zandland Limited, LLC |
| | Carat Global |
| | Getty Images Inc. |
| | Getty Images (US), Inc. |
| | Icon Films |
| | Facebook UK Ltd |
| | Mississippi & Westgate Properties, LLC |
| | 307 KENT ASSOCIATES |
| | Home Box Office |
| | Meta Platform Ireland Ltd |
| | KENETH PETERS ASSET MANAGEMENT LTD |
| | TPG Architecture, LLP |
| | SHI International Corp. |
| | C.F.GROUP SRL - Collateral Films |
| | Noted Collective LLC. |
| | Con Edison |
| | COBBLESTONE FILMPRODUKTION GMBH |
| | DBA Media,LLC |
| | NextSource Inc |
| | Reckitt Benckiser plc |
| | RB Health (US) LLC |
| | Volkswagen AG |
| | Google, Inc. |
| | Pythian Services USA |
| | Agosto, LLC |
| | TATA Communications (America) Inc. |
| | Cal Realty Holdings, LP |
| | KABD, LC |
| | 31 Mile |
| | The Corner Shop, Inc. |
| | Rich Mnisi |
| | Buoy Studio LLC |
| | Candy Banners |
| | Christopher Steinberger |
| | More Dress, Inc. d/b/a DressX |
| | Alex Russell LLC |
| | KX Production Limited |
| | Waterloo Bridge Entertainment, Inc. |
| | Wild Rose Films |
| | Eight Films LLC |
| | Scott Free Films Limited |

| Categories | Entities |
|---|---|
| | Proton Projekt KFT |
| | JA Sweden AB |
| | 4 ½ Fiksjon AS |
| | EIC Dragonslayer Inc. |
| | Seven Bucks Productions, LLC |
| | Mustache LLC |
| | Mustache TV LLC |
| | Condé Nast Entertainment LLC |
| | Insight Dark Side 2 Ltd. |
| | 123 Reg |
| | Singapore Computer Guys Pte Ltd |
| | Era Ltd |
| | Acknowledge Digital Marketing LLC |
| | ADVANCED SYSTEMS GROUP, LLC |
| | Amazon Web Services, Inc. |
| | Associated Press |
| | BOOMI INC. |
| | CDW DIRECT LLC |
| | Chartbeat Inc. |
| | Concur Technologies, Inc. |
| | CULTURE AMP INC |
| | DATABRICKS, INC. |
| | DOMO INC |
| | FASTLY INC |
| | FRAME IO INC |
| | General Audit Tool LTD |
| | GRASS VALLEY USA LLC |
| | CINE DESIGN GROUP, LLC |
| | IMAGINE COMMUNICATIONS CORP |
| | Include Security LLC |
| | JAMF Software, LLC |
| | JPMORGAN CHASE NA |
| | LongTail ad Solutions DBA JW Player |
| | LAWO INC |
| | LINKEDIN CORPORTATION |
| | Microsoft Corporation |
| | ACNielsen Corporation (NetRatings) |
| | New Relic, Inc |
| | OCTOPUS NEWSROOM AMERICAS, INC |
| | OKTA, INC |
| | ORACLE AMERICA INC |
| | ORACLE CORPORATION UK LTD |
| | PHISHME INC dba COFENSE INC |
| | Presidio Networked Solutions Group, LLC |
| | QUALYS INC |
| | QUANTCAST CORPORATION |
| | SALESFORCE.COM INC |
| | SCALYR INC |
| | SEGMENT.IO, INC. |

| Categories | Entities |
|---|---|
| | SKAE POWER SOLUTIONS LLC |
| | SLACK TECHNOLOGIES, INC |
| | SNOWFLAKE COMPUTING INC |
| | SOLIUM PLAN MANAGERS LLC |
| | SquareWorks, LLC |
| | TEAMVIEWER GMBH |
| | Trint Limited |
| | TUBULAR LABS INC |
| | Wolftech Broadcast Solutions |
| | WORKDAY INC |
| | Company Barclaycard Corporate |
| | Captionhub |
| | Commercial Creative Systems Ltd |
| | BPM Broadcast & Professional Media GmbH |
| | Horn&Görwitz GmbH |
| | Mountain Technology Group LLC |
| | BOX, INC. |
| | REDPILL LINPRO AS |
| | Floris Oostendorp |
| | MetaCDN Pty Ltd |
| | BIAGRT-ECOSYSTEMS LLC |
| | IMACCHINISTI SRL |
| | CM-CIC LEASING SOLUTIONS (DD) |
| | DOCUMENT STORE OUEST |
| | IZOTOPE INC |
| | FRESHWORKS INC |
| | Pilot Fiber, INC |
| | BrowserStack Inc |
| | CDW UK |
| | Shift Media Holdings, Inc |
| | Zoom Video Communications, Inc. |
| | Strongpoint LLC |
| | Novacoast Inc. |
| | Signiant, Inc.(US) |
| | GitHub, Inc. |
| | Computer Design and Integration LLC |
| | CentricsIT, LLC |
| | Agosto Inc |
| | Bitly Inc |
| | Pantheon Systems, Inc. |
| | APPLE SOUTH ASIA PTE LTD |
| | Diffbot Technologies Corp |
| | Maxon Computer Inc |
| | BeyondTrust Corporation |
| | User Zoom Inc |
| | CDW Netherlands IT Solutions BV |
| | ABMCARE Computer Services LLC |
| | Envoy Inc |
| | eSSENTIAL Accessibility inc. |

| Categories | Entities |
|---|---|
| | SHI Corporation UK Limited |
| | ProsperOps Inc |
| | Las Pampas Holdings LLC |
| | Progress Software Corporation |
| | Belinda Murray |
| | Reliance Standard Life Company |
| | AMERICAN EXPRESS |
| | REX INDUSTRIES SRLS |
| | ALLIED UNIVERSAL SECURITY SERVICES |
| | PPMNEXT FILM GmbH |
| | Warm And Fuzzy LLC |
| | The Garage |
| | A-FARNUM LLC |
| | Park Communications Limited |
| | Round Hill Music Royalty Fund II LP |
| | Concord Music Group Inc. |
| | SAS L'Antenne Coworking |
| | Abel Cine Group LLC |
| | PrettyBird LLC |
| | KK Sana |
| | Mirmade, Inc. |
| | Mathematic |
| | CEJ Ejendomsadministration A/S |
| | CARTEL LLC |
| | HV Pigl |
| | 24i Unit Media |
| | Lowe & Helzer |
| | Grapeshot Limited |
| | XWP.co Pty Ltd. |
| | KIHM Limited |
| | VibeLab B.V. |
| | Exile Edit |
| | Walker Music (We are Walker) |
| | Raven Public Relations LLC |
| | UNIT9 Films Inc. |
| | Gray Streak Production Inc |
| | Territory Studio Limited |
| Significant Distributors | Roku FAST Channel |
| | Facebook, Inc. |
| | Snap Inc. f/k/a Snapchat, Inc. |
| | A&E (History Channel) |
| | e.tv (Pty) Ltd. |
| | Samsung Electronics America, Inc. |
| | Hulu, LLC |
| | Viaplay (Nent) |
| | SBS_VICELAND Content Partnership |
| | Australian Broadcasting Corporation |
| | Multicanal Iberia, S.L.U. |

| Categories | Entities |
|---|---|
| | Channel Four Television Corporation |
| | DBS Satellite Services (1998) Ltd, trading as yes |
| | Discovery Networks Asia-Pacific Pte Ltd |
| | LG Electronics Inc. |
| | Plex GmbH |
| | Tubi, Inc. |
| | M6 Distribution Digital |
| | Beyn Danismanlik A.S. |
| | Globo Comunicacao e Participacoes S/A |
| | HJ Holdings, Inc. |
| | Athletes on Demand LLC |
| | The Criterion Collection |
| | Discovery.com LLC |
| | Documentary+, LLC |
| | Pluto Inc. |
| | Special Broadcasting Service Corporation |
| | RTL Netherlands |
| | The Norwegian Broadcasting Corporation (NRK) |
| | Sveriges Television AB |
| | TV 2 Danmark |
| | DR Denmark |
| | NENT-Viaplay Scandinavia |
| | Sky Network Television Limited |
| | Air Media, Inc. |
| | Madman Entertainment Pty Ltd |
| | Samuel Goldwyn Films, LLC |
| | Utopia Select LLC |
| | Kino Lorber, Inc. |
| | A24 Distribution, LLC |
| | IAC Films |
| | Gunpowder & Sky Distribution, LLC |
| | Showtime Networks Inc. |
| | Alomq Altasmimi Advertising Company – TTP |
| | Joinery Inc |
| | Future plc |
| Taxing Authorities | London Borough of Hackney |
| | Employee Development Department – State of California |
| | The City of New York (Department of Finance Collection Branch) |
| | NYC Dept. of Taxation & Finance |
| | State of Washington Department of Revenue |
| | New York State Tax & Finance State Income Tax |
| | NYC Dept. of Finance |
| | CA Dept. of Tax & Finance |
| | CT State Tax |
| | Washington State Tax |
| | NY State Tax & Finance |
| | CA Dept. of Tax & Finance |
| | LA City Tax |

| Categories | Entities |
|---|---|
| | IL Dept of Finance |
| | HMRC |
| | Agence du Revenu du Canada |
| | HM Revenue & Customs |
| | Texas Dept. of Revenue |
| | District of Columbia Office of Tax and Revenue |
| | Federal Communications Commission |
| | Ministerie van Financiën |
| | New York Tax Commission |
| | Office of Communications |
| | Alabama Department of Revenue |
| | Alaska Department of Revenue |
| | Arizona Department of Revenue |
| | Arkansas Department of Finance and Administration |
| | California State Board of Equalization |
| | Colorado Department of Revenue |
| | Connecticut Department of Revenue Services |
| | Delaware Division of Revenue |
| | Florida General Department of Revenue |
| | Georgia Department of Revenue |
| | Hawaii State Department of Taxation |
| | Idaho State Tax Commission |
| | Illinois Department of Revenue |
| | Indiana Department of Revenue |
| | Iowa Department of Revenue |
| | Kansas Department of Revenue |
| | Kentucky Department of Revenue |
| | Louisiana Department of Revenue |
| | Maine Revenue Services |
| | Maryland Revenue Administration Division |
| | Massachusetts Department of Revenue |
| | Michigan Department of Treasury |
| | Minnesota Department of Revenue |
| | Mississippi Department of Revenue |
| | Missouri Department of Revenue |
| | Montana Department of Revenue |
| | Nebraska Department of Revenue |
| | Nevada Department of Taxation |
| | New Hampshire Department of Revenue Administration |
| | New Jersey Division of Taxation |
| | New Mexico Tax and Revenue Department |
| | North Carolina Department of Revenue |
| | North Dakota Office of State Tax |
| | Ohio Department of Taxation |
| | Oklahoma Tax Commission |
| | Oregon Department of Revenue |
| | Pennsylvania Department of Revenue |

| Categories | Entities |
|---|---|
| | Pennsylvania Department of Revenue<br>Rhode Island Division of Taxation<br>South Carolina Department of Revenue<br>South Dakota Department of Revenue<br>Tennessee Department of Revenue<br>Texas Comptroller of Public Accounts<br>Utah State Tax Commission<br>Vermont Department of Taxes<br>Virginia Department of Taxation<br>Washington Department of Revenue<br>West Virginia Department of Revenue<br>Wisconsin Department of Revenue<br>Wyoming Department of Revenue<br>Treasurer and Tax Collector for the County of Los Angeles<br>Washington Real Property Tax<br>Washington State Tax |
| Region 2 US Trustee and Personnel | Linda A. Riffkin<br>Victor Abriano<br>Susan Arbeit<br>Mark Bruh<br>Shara Cornell<br>Benjamin J. Higgins<br>Nadkarni Joseph<br>Brian S. Masumoto<br>Ercilia A. Mendoza<br>Mary V. Moroney<br>Richard C. Morrissey<br>Alaba Ogunleye<br>Ilusion Rodriguez<br>Andrea B. Schwartz<br>Paul K. Schwartzberg<br>Shannon Scott<br>Sylvester Sharp<br>Tara Tiantian<br>Andy Velez-Rivera<br>Daniel Rudewicz<br>Madeleine Vescovacci<br>Valentina Vlasova<br>Annie Wells<br>Greg M. Zipes<br>Amanda D. Cassara |
| Southern District of New York Bankruptcy Judges | Chief Judge Martin Glenn<br>Judge Lisa G. Beckerman<br>Judge Philip Bentley<br>Judge James L. Garrity, Jr.<br>Judge David S. Jones<br>Judge Sean H. Lane |

| Categories | Entities |
|---|---|
| | Judge John P. Mastando III<br>Judge Cecelia G. Morris<br>Judge Michael E. Wiles |

## Exhibit C

**Engagement Agreement**

DocuSign Envelope ID: AA91DAAE-20C2-40AD-9D71-491B25297E3...

## Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of January 12, 2023 between Stretto, Inc. ("**Stretto**") and Vice Group Holding Inc. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  **Services**

    (a) Stretto agrees to provide the Company with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("**Claims Administration, Noticing, and Solicitation Services**"); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "**Services**").

    (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals specifically identified to Stretto as such (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

    (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2.  **Rates, Expenses and Payment**

    (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "**Preferred Rate Structure**"). The Company agrees that the Preferred Rate Structure shall not be applicable to Services provided to the entity or entities (including the Company) responsible for implementing a confirmed and effective chapter 11 plan and that such Services will be provided at Stretto's then prevailing rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder provided, however, any expense in excess of $10,000 will not be charged to the Company without the Company's prior approval.

    (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment

---

[1]     The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.

DocuSign Envelope ID: 1A91DAAE-20C2-40AD-9D71-491B252937E3

from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 60 days.

(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance of $10,000. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses.  Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount.  Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on a periodic basis. If any such increase represents an increase greater than 10% from the previously effective level, Stretto shall provide 30 days' notice to the Company of such increase.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Bankruptcy Management Solutions, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

**3.    Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

4. **Confidentiality**

(a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

5. **Property Rights**

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

6. **Bank Accounts**

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

7. **Term and Termination**

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

## 8. No Representations or Warranties

Stretto agrees to provide the Services in a professional and workmanlike manner, at least equivalent to industry standard. Apart from that, Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9. Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct or breaches of Section 4, 11 or 12 (the "**Exceptions**"), shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss. Other than the Exceptions, in no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs**

**and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d) Stretto and the Company agree that this Agreement is subject to the terms set forth in the addendums attached hereto as Exhibit A, which are incorporated herein by reference.

(e) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**12. California Consumer Privacy Act.**

(a) Definitions.  In this Section,
  (i) "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
  (ii) "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and
  (iii) "**Commercial Purposes**," "**Sell**," "**Business**," and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

**13. Non-Solicitation**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto that worked directly with the Company during the course of this engagement during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.  Notwithstanding the foregoing, (i) general solicitations, not targeted at Stretto personnel will not be deemed a

solicitation in violation of this Section 13, (ii) the Company will not be restricted from hiring any such employee who responds to any such general solicitation or who first contacts the Company or its affiliates regarding employment without any solicitation in violation of this Section 13, and/or (iii) the Company shall not be restricted from hiring any such persons whose employment has first been terminated by Stretto.

### 14. Force Majeure

Whenever performance by either party of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond such party's reasonable control, then such performance shall be excused.

### 15. Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### 16. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

### 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

### 18. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to

STRETTO

the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

### 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:           Stretto
                     410 Exchange, Ste. 100
                     Irvine, CA 92602
                     Attn: Sheryl Betance
                     Tel: 714.716.1872
                     Email: sheryl.betance@stretto.com

If to the Company:    Vice Group Holding Inc.
                     49 South 2nd St.
                     Brooklyn NY 11249
                     Attn: Maria Harris, Chief Legal Officer
                     maria.harris@vice.com

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.

Stretto

_____

By:   Sheryl Betance

Title:  Senior Managing Director

Vice Group Holding Inc.

_____

By: Maria Harris

Title: Chief Legal Officer

7

DocuSign Envelope ID: AA91DAAE-20C2-40AD-9D71-491B3E393753

**Exhibit A**

## VICE GLOBAL DATA PROCESSING ADDENDUM

**THIS AGREEMENT** is made on January 12, 2023

# BETWEEN

(1)     **VICE GROUP HOLDING INC.**  ("**Vice**"); and

(2)     **Stretto, Inc.** (the "**Supplier**").

1.     # INTRODUCTION

1.1     Pursuant to an agreement (the "**Contract for Services** "), the Supplier has agreed to provide certain services (the "**Services**") to Vice.

1.2     To the extent that the Supplier is processing Vice Personal Data as part of the Services (or in preparation for supplying the Services), the terms contained in this Agreement shall apply. If there is any conflict or inconsistency between this Agreement and the Contract for Services, this Agreement will take precedence and apply to the extent of the conflict or inconsistency.

2.     # DEFINITIONS

2.1     For the purposes of this Agreement, capitalized terms shall have the meanings given below:

"**Applicable Law** " means: (i) any and all laws, statutes, regulations, by-laws, orders,  ordinances and court decrees that apply to the performance and supply of the Services or the processing of Vice Personal Data; and (ii) the terms and conditions of any applicable approvals, consents, exemptions, filings, licenses, authorities, permits, registrations or waivers issued or granted by, or any binding requirement, instruction, direction or order of, any applicable government department, authority or agency having jurisdiction in respect of that matter;

"**Appropriate Safeguard**" means such mechanism(s) as are recognized under Data Protection Legislation as enabling the transfer of personal data from inside the European Union to a country outside the European Economic Area, including adequacy decisions, standard contractual clauses and binding corporate rules;

"**Complaint**" means a complaint relating (directly or indirectly) to the processing of Vice Personal Data or to either party's obligations under Data Protection Legislation relevant to this Agreement;

"**Data Protection Legislation** " means all Applicable Laws and codes of practice applicable to the processing of personal data including the GDPR and applicable United States privacy or data security laws;

"**DP Losses**" means all liabilities, including all:

(a)     costs (including legal costs, attorney's fees, and costs associated with any Security Incident), claims, demands, actions, settlements, ex-gratia payments, charges, procedures, expenses, losses and damages (including relating to material and non-material damage); and

(b)     to the extent permitted by Applicable Law:

(i)     administrative fines, penalties, sanctions, liabilities or other remedies imposed by a regulatory authority, a court or other tribunal of competent jurisdiction;

(ii)     compensation to a data subject ordered by regulatory authority, a court or other tribunal of competent jurisdiction; and

(iii)     the costs of compliance with investigations by a regulatory authority;

"**GDPR**" means the General Data Protection Regulation (EU) 2016/679;

"**Processing Instructions** " has the meaning set out in clause 3.4.2 of this Agreement;

"**Request**" means a request from or on behalf of a data subject of Vice Personal Data to exercise any rights of data subjects under Data Protection Legislation;

"**Security Incident**" means an incident, action or inaction, which resulted in the accidental, unlawful, or unauthorized destruction, loss, alteration or unauthorized disclosure of, or access to, Vice Personal Data;

"**Sub-Processor**" means another processor engaged by the Supplier for carrying out processing activities in respect of Vice Personal Data on behalf of Vice;

"**Vice Personal Data**" means personal data provided or made available to the Supplier, or collected or created for Vice, in connection with the Contract for Services;

"**controller**", "**data subject**", "**personal data**", "**processing**" and "**processor**" have the meanings set out in the GDPR (and related terms such as "**process**" have corresponding meanings).

2.2     To the extent that a term of this Agreement requires the performance by a party of an obligation "in accordance with Data Protection Legislation" (or similar), this requires performance in accordance with the relevant requirements of such Data Protection Legislation as are in force and applicable at the time of performance (if any).

## 3.  DATA PROCESSING PROVISIONS

3.1     In respect of all processing of Vice Personal Data carried out pursuant to the Contract for Services, the parties agree that Vice is the controller and that the Supplier is the processor.

3.2     Supplier shall comply with and process all Vice Personal Data in accordance with Data Protection Legislation and applicable industry standards and best practices.

3.3     A description of the scope and purpose and duration of the processing permitted in connection with the Contract for Services (including the type of Vice Personal Data and categories of data subject involved) is set out in the Annex.

3.4     The Supplier shall (in addition to any obligations under standard contractual clauses entered into pursuant to clauses 3.4.11 and 3.4.12):

3.4.1     comply with all Applicable Law in connection with the performance of its obligations under this Agreement;

3.4.2     only process Vice Personal Data in accordance with Vice's documented instructions as set out in this Agreement (in particular, in the Annex) or as otherwise provided by Vice to the Supplier in writing from time to time ("**Processing Instructions**");

3.4.3     notify Vice if: (i) Applicable Law requires it to process Vice Personal Data other than in accordance with Vice's documented instructions (such notification to be made before such processing takes place unless prohibited by Applicable Law); and (ii) it believes an instruction of Vice infringes Data Protection Legislation (such notification to be made without undue delay and in any case before the Supplier processes any Vice Personal Data in accordance with such instruction);

3.4.4     implement and maintain appropriate technical and organizational measures (which shall at all times be of at least the minimum standard required by Data Protection Legislation) to ensure the security of Vice Personal Data, to prevent the accidental, unauthorized or unlawful access, disclosure, alteration, loss, damage or destruction of Vice Personal Data;

3.4.5     The measures referred to in clause 3.4.4 shall at all times:be of at least the minimum standard required by Data Protection Legislation;

   •     be of a standard no less than the standards compliant with good industry practice for the protection of personal data; and

   •     be compliant with any minimum standards and/or requirements that Vice may provide to the Supplier from time to time in writing. Without limiting Supplier's other obligations in clause 3.4.3 Supplier agrees that, at a minimum, its security measures shall include the following:

        •     Administrative safeguards: documented security policies

> and procedures, training programs, management of access rights, background checks and security clearances.

- • Technical safeguards: logging and monitoring of system activity and access, intrusion detection, vulnerability assessments, mobile device management, access controls, firewalls, change management controls, malware protection and appropriate use of encryption of data in transit and at rest.

- • Physical safeguards: facility access controls, secure disposal of records and electronic media, reasonable workstation security, and privacy screens and clean desk policies where appropriate.

3.4.6    notify Vice if it becomes aware of or receives a notification regarding a Security Incident (such notification to be made without undue delay and in any event within 12 hours of becoming aware / receiving a notification) and provide Vice with such information, assistance and cooperation as Vice reasonably requires in dealing with and responding to the Security Incident (including in relation to notifying any relevant regulatory authority and/or data subject of the Security Incident);

3.4.7    without undue delay and in any event within seventy two (72) hours of receipt, forward to Vice any Request or Complaint received by the Supplier and provide Vice with such information, cooperation and assistance as it reasonably requires in relation to the Request or Complaint. The Supplier shall not respond to the Request or Complaint without Vice's prior written approval unless required to do so by Applicable Law;

3.4.8    ensure that its personnel are obligated to maintain the security and confidentiality of any Vice Personal Data to which they have access;

3.4.9    be permitted to use a Sub-Processor in connection with the performance of the Services provided that the Supplier: (i) notifies Vice, in accordance with the terms of this Agreement, of any Sub-Processor (whether a new or replacement Sub-Processor) so that it has the opportunity to object (such notification having already been made in relation to those Sub-Processors listed in the Annex); (ii) ensures the Sub-Processor is contractually bound to substantially similar obligations with respect to the processing of Vice Personal Data as to which the Supplier bound by this Agreement; and (iii) remains fully liable to Vice for the Sub-Processor's performance;

3.4.10    The Supplier shall not (and shall procure that any Sub-Processor shall not) transfer Vice Personal Data to a country outside the European Economic Area, Switzerland, or the United Kingdom without the prior written approval of Vice. Those transfers approved by Vice as at the date of this Agreement are set out in Annex 1 (Data Processing Details).

3.4.11    To the extent that Vice is transferring Vice Personal Data to the Supplier in a country outside the European Economic Area or Switzerland, then the parties shall each comply with their respective obligations as set out in module two of the standard contractual clauses for the transfer of personal data to third countries pursuant to Regulation (EU) 2016/679 of the European Parliament and of the Council adopted by European Commission decision of 4 June 2021 and published under document number C/2021/3972 (the **"EU C2P Standard Contractual Clauses"**) and incorporated herein by reference. Should the EU C2P Standard Contractual Clauses be superseded, the parties shall amend this DP Agreement to incorporate such updated clauses. For the purposes of Annex I of the EU C2P Standard Contractual Clauses, Vice will be the data exporter and the Supplier will be the data importer. The parties agree to the following provisions for the EU C2P Standard Contractual Clauses:

- • the optional clause set out at Clause 7 of the EU C2P Standard Contractual Clauses ('Docking clause') shall not apply;

- • Clause 9(a) of the EU C2P Standard Contractual Clauses ('Use of sub-processors') shall be amended to: "The data importer shall not sub-contract any of its processing activities performed on behalf of

DocuSign Envelope ID: AA91DAAE-20C2-40AD-9D71-491B252937E3

the data exporter under these Clauses to a sub-processor without the data exporter's prior specific written authorisation. The data importer shall submit the request for specific authorisation at least thirty (30) days prior to the engagement of the sub-processor, together with the information necessary to enable the data exporter to decide on the authorisation. The list of sub-processors already authorised by the data exporter can be found in Annex 1 (Data Processing Details) of this Agreement. The Parties shall keep Annex 1 (Data Processing Details) of this Agreement up to date.";

- the optional clause set out at Clause 11(a) of the EU C2P Standard Contractual Clauses ('Redress') shall not apply;

- Clause 13(a) of the EU C2P Standard Contractual Clauses ('Supervision') shall be amended to: "The supervisory authority with responsibility for ensuring compliance by the data exporter with Regulation (EU) 2016/679 as regards the data transfer, as indicated in this Agreement, shall act as competent supervisory authority.";

- Clause 17 of the EU C2P Standard Contractual Clauses ('Governing law') shall be amended to: "These Clauses shall be governed by the law of one of the EU Member States, provided such law allows for third-party beneficiary rights. The Parties agree that this shall be the law of Ireland.";

- Clause 18(b) of the EU C2P Standard Contractual Clauses ('Choice of forum and jurisdiction') shall be amended to: "The Parties agree that those shall be the courts of Ireland.";

- for the purposes of Paragraph C of Annex I to the EU C2P Standard Contractual Clauses, the competent supervisory authority shall be whichever is the competent authority for the relevant data subject or Vice under Data Protection Legislation; and

- the details of the annexes applicable to the EU C2P Standard Contractual Clauses are set out in Annex 1 to this Agreement.

3.4.12 To the extent that Vice is transferring Vice Personal Data to the Supplier in a country outside of the United Kingdom, then the parties shall each comply with their respective obligations as set out in module two of the standard contractual clauses for the transfer of personal data to third countries pursuant to Regulation (EU) 2016/679 of the European Parliament and of the Council adopted by European Commission decision of 4 June 2021 and published under document number C/2021/3972, as amended by the UK Addendum to the EU Commission Standard Contractual Clauses issued by the UK Information Commissioner under section 119A(1) Data Protection Act 2018 (the **"UK C2P Standard Contractual Clauses** ") and incorporated herein by reference. Should the UK C2P Standard Contractual Clauses be superseded, the parties shall amend this Agreement to incorporate such updated clauses. For the purposes of Annex I of the UK C2P Standard Contractual Clauses, Vice will be the data exporter and the Supplier will be the data importer. The parties agree to the following provisions for the UK C2P Standard Contractual Clauses:

- the optional clause set out at Clause 7 of the UK C2P Standard Contractual Clauses ('Docking clause') shall not apply;

- Clause 9(a) of the UK C2P Standard Contractual Clauses ('Use of sub-processors') shall be amended to: "The data importer shall not sub-contract any of its processing activities performed on behalf of the data exporter under these Clauses to a sub-processor without the data exporter's prior specific written authorisation. The data importer shall submit the request for specific authorisation at least thirty (30) days prior to the engagement of the sub-processor,

together with the information necessary to enable the data exporter to decide on the authorisation. The list of sub-processors already authorised by the data exporter can be found in Annex 1 (Data Processing Details) of this Agreement. The Parties shall keep Annex 1 (Data Processing Details) of this Agreement up to date.";

- the optional clause set out at Clause 11(a) of the UK C2P Standard Contractual Clauses ('Redress') shall not apply; and

- the details of the annexes applicable to the UK C2P Standard Contractual Clauses are set out in Annex 1 (Data Processing Details) of this Agreement;

3.4.13   provide reasonable assistance, information  and cooperation to Vice to ensure compliance with Vice's obligations under Data Protection Legislation and to demonstrate the Supplier's full compliance with its obligations under Data Protection Legislation and this Agreement;

3.4.14   subject to reasonable advance written notice, permit Vice and/or its employees or a qualified representative to conduct audits and inspections of the Supplier's systems and processes in relation to the processing of Vice Personal Data and contribute to the same; and

3.4.15   at Vice's option, either securely delete or return all Vice Personal Data (including copies of the same) and cease processing such Vice Personal Data after the business purposes for which Vice Personal Data was processed have been fulfilled, or earlier upon Vice's written request;

3.4.16   co-operate and assist Vice with any data protection impact assessments and consultations with (or notifications to) relevant regulatory authorities and/or data subjects that Vice reasonably considers are relevant pursuant to Data Protection Legislation in relation to Vice Personal Data and the Services;

3.4.17   indemnify and keep indemnified Vice in respect of, and reimburse Vice for, all DP Losses suffered or incurred by, awarded against or agreed to be paid by, Vice arising from or in connection with:

- any breach by the Supplier of its obligations under this Agreement or Data Protection Legislation;

- investigating, responding to, notifying of, or mitigating the effects of  any Security Incident; or

- the Supplier (or any person acting on its behalf, including its employees) acting outside or contrary to the Processing Instructions of Vice in respect of the processing of Vice Personal Data;

3.4.18   maintain in full force and effect, comprehensive insurance policies which provide coverage and compensation for a Security Incident.

4.   LIABILITY

4.1   Any limitation of liability set forth in the Contract for Services will not apply to this Agreement.

5.   GENERAL

5.1   Either party (the "**terminating party**") shall be entitled to immediately terminate this Agreement by notice in writing to the other if:

5.1.1   the other is in a material or persistent breach of this Agreement or the Contract for Services which, in the case of a breach capable of remedy, shall not have been remedied within twenty one (21) calendar days from the date of receipt of a written notice from the terminating party identifying the breach and requiring its remedy; or

5.1.2   the other becomes insolvent, has a receiver, administrator, or administrative receiver appointed over the whole or any part of its assets, enters into any compound with creditors, or has an order made or resolution passed for it to be wound up (otherwise

than in furtherance of a scheme for solvent amalgamation or reconstruction).

5.2    This Agreement shall commence when signed by the last party and shall continue until:

5.2.1    terminated by either party in accordance with clause 4.1; or

5.2.2    terminated by either party giving the other thirty (30) calendar days' written notice.

5.3    This Agreement will be governed by English law, and the parties submit to the exclusive jurisdiction of the courts of England and Wales for all purposes connected with this Agreement, including the enforcement of any award or judgement made under or in connection with it.

5.4    Failure by either party to exercise or enforce any rights available to that party or the giving of any forbearance, delay or indulgence shall not be construed as a waiver of that party's rights under this Agreement.

5.5    If any term or provision of this Agreement shall be held to be illegal or unenforceable, in whole or in part, under any enactment or rule of law, such term or provision or part shall to that extent be deemed not to form part of this Agreement but the enforceability of the remainder of this Agreement shall not be affected.

5.6    This Agreement and the documents attached to or referred to in this Agreement shall constitute the entire understanding between the parties as to its subject matter and shall supersede all prior arrangements and understandings (whether written or oral) in respect of the same subject matter. In particular the parties warrant and represent to each other that in  entering into this Agreement they have not relied upon any statement of fact or opinion made by the other, its officers, servants or agents which has not been included expressly in this Agreement.

5.7    A person who is not a party to this Agreement has no right under the Contracts (Rights of Third Parties) Act 1999 to rely upon or enforce any term of this Agreement. This does not affect any right or remedy of a third party which exists or is available apart from under that Act.

5.8    No modification or variation of this Agreement shall be valid unless it is in writing and signed by or on behalf of each of the parties to this Agreement.

The parties have signed this Agreement on the date set out above.

**SIGNED** for and on behalf of
**VICE GROUP HOLDING INC.**

*Maria Harris*  ..........................
E8DEF3EB9B964EE...

**SIGNED** for and on behalf of
**SUPPLIER**

*Sheryl Betance*  ..........................

**Data Processing Addendum**

# ANNEX 1

### DATA PROCESSING DETAILS

| | |
|---|---|
| Subject Matter, Nature and Purpose of the transfer and further processing (including in relation to Sub-Processors where relevant) | Providing the Services and as otherwise directed by Vice. |
| Duration and Deletion Period | For so long as the Services are provided under the Contract for Services with deletion at the end of the term in accordance with clause 3.4.15. |
| Personal Data/Special Category Data | Individuals' Contact Information and Other Personal Identifiers Notwithstanding any contrary provision, Supplier will not process any of the special categories of personal data described in Article 9 of the GDPR. |
| Data Subjects | Vice employees and contractors, consumers, Vice customers, and Creditors. |
| Frequency of any transfer out of EEA/UK/Switzerland if applicable | Continuous during the provision of the Services. |
| Specific Restrictions | Supplier shall not reverse engineer or combine anonymized/pseudonymized data with other data in order to create personal data. |
| Technical and organisational measures including technical and organisational measures to ensure the security of the data | All measures set forth in the Contract for Services, including any relevant addendum, exhibit, or documentation incorporated by reference, and this Agreement, including those required under clause 4, above. |
| Data Transfers | Further to clauses 3.4.11 and 3.4.12, Supplier confirms that: [X] Clause 3.4.11 applies to Processing of Vice Personal Data under this Agreement, and Supplier confirms that it shall rely upon EU C2P Standard Contractual Clauses. [X] Clause 3.4.12 applies to Processing of Vice Personal Data under this Agreement, and Supplier confirms that it shall rely upon UK C2P Standard Contractual Clauses. [ ] No, no relevant data transfers take place. |

DocuSign Envelope ID: A491DAAE-20C2-40AD-9D74-491B26293753

| Permitted Sub-Processors | | |
|---|---|---|
| None. | | |
| Name, address and contact details<br><br>(Set out here the name and registered address of the Sub-Processor) | Services<br><br>(Set out here the permitted services that they will undertake in relation to Vice Personal Data, and a description of the processing taking place)) | Location/Transfers<br><br>(Set out here the location in which the entity will process Vice Personal Data, indicating where and from whom this has been transferred where relevant) |
|  |  |  |

This Data Processing Addendum ("**DPA**") sets forth the terms and conditions relating to the privacy and protection of Personal Information (as defined below) associated with services rendered by Stretto, Inc. ("**Service Provider**") to Vice Group Holding Inc. ("**Client**") pursuant to any agreement or order for Service Provider's products or services (the "**Agreement**").  Except as modified below, the terms of the Agreement shall remain in full force and effect.

In consideration of the mutual obligations set out herein, the parties hereby agree that the terms and conditions set forth below shall be added as an addendum to the Agreement. Except where the context requires otherwise, references in this DPA to the Agreement are to the Agreement as amended by, and including, this DPA.

**1.**      **Definitions**.

The following definitions are for purposes of this DPA:

1.1      "**Applicable Law**" shall mean all laws and regulations that pertain to the protection of Personal Information, in so far as those laws and regulations apply to the processing of Personal Information in connection with this DPA, which may include the California Consumer Privacy Act of 2018 ("**CCPA**"), Cal. Civ. Code § 1798.100 et seq.

1.2      "**Data Security Breach**" means any accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, access to, acquisition of or use of Personal Information.

1.3      "**Personal Information**" means any information identifying, relating to, describing, reasonably capable of being associated with, or that could reasonably be linked, directly or indirectly, with an identified or identifiable person or household ("**Data Subject**").

1.4      "**Process,**" "**Processed**" or "**Processing**" means any operation or set of operations that is performed on Personal Information, or on sets of Personal Information, whether or not by automated means.

**2.**      **Ownership**.

As between the parties, Client is the owner of all Client Personal Information that Service Provider processes on behalf of Client under the Agreement.

**3.**      **Data Privacy**.

3.1      Notwithstanding anything to the contrary, Client Personal Information is the Personal Information that Service Provider processes on behalf of Client under the Agreement.  Service

Provider may Process Client Personal Information for the sole purpose of performing its obligations under the Agreement and shall not use Client Personal Information for any other purpose without the express written consent of Client.  In particular, Service Provider shall not: (i) sell, as it is defined in the CCPA, Client Personal Information or share Client Personal Information with any third party without Client's permission; (ii) retain, use or disclose Client Personal Information for any purpose other than the purposes specified in this Agreement, including retaining, using or disclosing Client Personal Information for a commercial purpose other than to provide its services to Client; and (iii) retain, use or disclose Client Personal Information outside of Service Provider's business relationship with Client.

2.2    Service Provider certifies that it understands and will comply with the requirements and restrictions set forth in this DPA.

2.3    Service Provider agrees to provide reasonable assistance to Client to allow Client to satisfy Client's obligations to respond to and fulfill any requests from Data Subjects to exercise rights granted to such Data Subjects under Applicable Law. In the event Service Provider receives a Data Subject's request, it shall forward such request to Client without delay and in any event no later than within forty-eight (48) hours from receipt.

2.4    Service Provider shall comply with all reasonable requests or directions by Client to enable it to verify and/or procure that Service Provider is in full compliance with its obligations under this DPA.

2.5    Upon termination of its provision of services, Service Provider shall delete or return (as Client so requests) all Client Personal Information to Client and delete any existing copies of Client Personal Information, save where Applicable Law requires Service Provider to retain copies of such data. Service Provider shall provide written certification that it and each of its subprocessors have fully complied with this section 2.5 within sixty (60) days of the termination of the provision of services.

4.    **Subprocessors.**

4.1    Client acknowledges and agrees that Service Provider may engage subprocessors to assist with the processing or Client Personal Information in connection the performance of this DPA and the Agreement.  Service Provider shall ensure that each subprocessor is subject to a written agreement which imposes on the subprocessor obligations that are materially similar to those imposed on Service Provider under this DPA. Service Provider shall remain liable to Client for any acts or omissions of subprocessors.

5.    **Security.**

DocuSign Envelope ID: AA91DAAE-20C2-40AD-9D7A-491B262097E3

5.1    Service Provider shall comply with all applicable requirements of the CCPA in the performance of its obligations under the Agreement, including implementing and maintaining reasonable security measures appropriate to the nature of the Personal Information, in order to protect Client Personal Information from unauthorized access, destruction, use, modification, or disclosure.  Service Provider undertakes to repair any harm any person may suffer due to Processing performed in violation of its legal, regulatory and contractual obligations, except if Service Provider proves that it is not liable for such harm.

5.2    Service Provider shall immediately notify Client if Service Provider knows, discovers, or reasonably believes that there has been a Data Security Breach involving Client Personal Information.

5.3    Upon becoming aware of a Data Security Breach involving Client Personal Information, Service Provider shall: (i) immediately investigate, correct, mitigate, remediate and otherwise handle the Data Security Breach, including without limitation, by identifying the Client Personal Information affected by the Data Security Breach and taking sufficient steps to prevent the continuation and recurrence of the Data Security Breach; and (ii) provide information and assistance needed to enable Client to evaluate the Data Security Breach and, as applicable, to comply with any obligations to provide timely notice to affected individuals or information about the Data Security Breach to relevant regulators. Service Provider shall reimburse Client for all reasonable expenses that Client may incur as a result of such Data Security Breach caused by Service Provider's acts or omissions, or those of any of Service Provider's subprocessors, including but not limited to, the expenses incurred in investigating the Data Security Breach and notifying affected individuals, and providing these individuals with the support necessary under the circumstances, such as credit monitoring.

**6.**    <u>**Indemnification**</u>**.**

Service Provider agrees to indemnify and hold harmless Client and its affiliates, officers, directors, employees and agents from and against any third-party claims, liabilities, damages, losses, obligations, costs and expenses, including without limitation reasonable legal and accounting fees, arising out of or in any way related to: (i) any breach of Service Provider's obligations under this DPA; (ii) any gross negligence, willful misconduct or fraud; (iii) Service Provider's violation of Applicable Law; or (iv) a Data Security Breach involving Client Personal Information in Service Provider's possession, custody or control, or for which Service Provider is otherwise responsible.

**7.**    <u>**Limitation of Liability**</u>**.**

Service Provider's liability, including any liability for subprocessors, under or in connection with this DPA, shall not be subject to any limitation of liability provision in the Agreement.

IN WITNESS WHEREOF, this DPA is entered into and becomes a binding part of the Agreement with effect from the date signed below.

**Vice Group Holding Inc.**

Name     Maria Harris

Signature     Maria Harris

Title     Chief Legal Officer

Date Signed     1/13/2023

**Service Provider**

Name     Sheryl Betance

Signature     Sheryl Betance

Title     Senior Managing Director

Date Signed     1/13/2023

DocuSign Envelope ID: AA91DAAE-20C2-40AD-9D7A-491B26289753